Miscellaneous Docket No. ___

IN THE
# United States Court of Appeals for the Federal Circuit

IN RE APPLE INC.,

*Petitioner.*

On Petition for Writ of Mandamus to the
United States District Court for the
Western District of Texas
No. 6:21-cv-01071-ADA, Hon. Alan D Albright

## APPLE INC.'S PETITION FOR
## WRIT OF MANDAMUS

Steven D. Moore
KILPATRICK TOWNSEND &
  STOCKTON LLP
Two Embarcadero Center
Suite 1900
San Francisco, CA 94111

Mansi Shah
KILPATRICK TOWNSEND &
  STOCKTON LLP
1302 El Camino Real, Suite 175
Menlo Park, CA 94025

Alton L. Absher III
KILPATRICK TOWNSEND &
  STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC 27101

Melanie L. Bostwick
Jonas Q. Wang
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
1152 15th Street NW
Washington, DC 20005
(202) 339-8400

*Counsel for Petitioner*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | |
| **Short Case Caption** | In re Apple Inc. |
| **Filing Party/Entity** | Apple Inc. |

> **Instructions:** Complete each section of the form.  In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.  **Please enter only one item per box; attach additional pages as needed and check the relevant box**.  Counsel must immediately file an amended Certificate of Interest if information changes.  Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 09/08/2022

Signature: /s/ Melanie L. Bostwick

Name: Melanie L. Bostwick

i

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

☑ None/Not Applicable |
| Apple Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐  Additional pages attached

FORM 9. Certificate of Interest

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Kelly Hart & Hallman LLP | J. Stephen Ravel | Rishi Gupta |
| Andrew W. Rinehart | Amanda N. Brouillette | Kasey E. Koballa |
| Christopher P. Schaffer | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| In re Apple Inc., No. 22-162 (Fed. Cir.) | In re Apple Inc., No. 22-163 (Fed. Cir.) | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ................................................................. i

TABLE OF AUTHORITIES .................................................................. vi

STATEMENT OF RELATED CASES ....................................................... 1

INTRODUCTION ................................................................................ 2

RELIEF SOUGHT ............................................................................... 4

ISSUE PRESENTED ............................................................................ 5

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................ 5

    Scramoge sues Apple for patent infringement in the Western
        District of Texas despite having no connection to that
        district ............................................................................. 5

    Apple moves to transfer the suit to the Northern District of
        California, and venue discovery proceeds ............................. 7

    The district court sua sponte orders the parties to complete
        fact discovery and "re-brief" Apple's transfer motion
        before it will consider whether to transfer venue ............... 14

REASONS FOR ISSUING THE WRIT ................................................ 16

    I.    Apple Has A Clear And Indisputable Right To The
        Writ ............................................................................. 17

        A.    The district court clearly abused its discretion by
            violating binding precedent requiring courts to
            prioritize transfer motions. .......................................... 17

        B.    The district court's stated reasons for its
            extraordinary order cannot justify its departure
            from precedent. .......................................................... 23

    II.    Apple Has No Other Adequate Means To Obtain Relief ...... 29

    III.    Mandamus Is Appropriate Here Because Apple Has A
        Strong Case For Transfer And The Equities Heavily
        Favor Apple. ................................................................. 32

A.    The clearly superior convenience of the Northern
District of California makes the court-mandated
delay especially unjustified..........................................32

1.    The private-interest factors strongly favor
transfer.................................................................33

2.    The public-interest factors also favor transfer...37

B.    The equities heavily favor Apple. ...............................38

CONCLUSION .........................................................................42

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Acer Am. Corp.*,
  626 F.3d 1252 (Fed. Cir. 2010) .......................................................... 34

*In re Apple Inc.*,
  979 F.3d 1332 (Fed. Cir. 2020) ............ 18, 20, 21, 30, 31, 34, 38, 39, 40

*In re Apple Inc.*,
  No. 2021-181, 2021 WL 5291804 (Fed. Cir. Nov. 15, 2021) ............... 35

*Cheney v. U.S. Dist. Ct.*,
  542 U.S. 367 (2004) ...................................................................... 16, 32

*Cont'l Grain Co. v. The Barge FBL-585*,
  364 U.S. 19 (1960) .............................................................................. 17

*In re EMC Corp.*,
  501 F. App'x 973 (Fed. Cir. 2013) ................................................ 18, 21

*In re Fusion-IO, Inc.*,
  489 F. App'x 465 (Fed. Cir. 2012) ...................................................... 21

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009) ............................................... 34, 35, 36

*In re Google Inc.*,
  No. 2015-138, 2015 WL 5294800 (Fed. Cir. July
  16, 2015) ........................................................ 19, 20, 21, 22, 23, 30, 39

*In re Hoffman-La Roche, Inc.*,
  587 F.3d 1333 (Fed. Cir. 2009) .......................................................... 35

*In re Horseshoe Ent.*,
  337 F.3d 429 (5th Cir. 2003) ........................................................ 19, 22

*In re Juniper Networks, Inc.*,
  14 F. 4th 1313 (Fed. Cir. 2021) ........................................ 25, 34, 36, 38

*McDonnell Douglas Corp. v. Polin,*
    429 F.2d 30 (3d Cir. 1970) ................................................ 18, 21, 25, 40

*In re Netflix, Inc.,*
    No. 2021-190, 2021 WL 4944826 (Fed. Cir. Oct. 25, 2021)................ 19

*In re Nintendo Co.,*
    544 F. App'x 934 (Fed. Cir. 2013) ................................................ 18, 21

*In re Nintendo Co.,*
    589 F.3d 1194 (Fed. Cir. 2009) .................................................... 33, 36

*In re Samsung Elecs. Co.,*
    2 F.4th 1371 (Fed. Cir. 2021)........................................................ 36, 38

*In re SK hynix Inc.,*
    835 F. App'x 600 (Fed. Cir. 2021) .............................. 19, 20, 22, 30, 31

*In re TracFone Wireless, Inc.,*
    848 F. App'x 899 (Fed. Cir. 2021) ........................................ 19, 22, 31

*Van Dusen v. Barrack,*
    376 U.S. 612 (1964)................................................................... 30, 39

*In re Volkswagen of Am., Inc.,*
    545 F.3d 304 (5th Cir. 2008)............................... 16, 32, 33, 37, 39, 41

*In re Wyeth,*
    406 F. App'x 475 (Fed. Cir. 2010) ...................................................... 18

## Statutes

28 U.S.C. § 1404(a) ............................................2, 3, 19, 20, 30, 32, 37, 39

## Rules and Regulations

Fed. R. Civ. P. 30(b)(6) ................................................................................ 8

## Other Authorities

Apple's Response to Petition for Rehearing En Banc, *In re*
    *Apple Inc.*, No. 20-135, Dkt. 70 (Fed. Cir. Dec. 29, 2020) .................. 28

Discovery and Scheduling Order, *Aire Tech. Ltd. v. Apple Inc.*, 6:21-cv-01101-ADA, Dkt. No. 54 (W.D. Tex. Aug. 22, 2022) .............................................................................. 16

Discovery and Scheduling Order, *XR Commc'ns LLC v. Apple, Inc.*, No. 6:21-cv-00620-ADA, Dkt. No. 68 (W.D. Tex. Aug. 25, 2022) ............................................................ 16

Discovery and Scheduling Order, *XR Commc'ns v. Asustek Comput. Inc.*, No. 6:21-cv-00622-ADA, Dkt. 55 (W.D. Tex. Aug. 25, 2022) ................................................................. 16

Joint Stipulation of Dismissal, *Koss Corp. v. Apple Inc.*, No. 6:20-cv-00665-ADA, Dkt. 303 (W.D. Tex. July 23, 2022) .................. 26

Order of Dismissal, *Koss Corp. v. Apple Inc.*, No. 6:20-cv-00665-ADA, Dkt. 304 (W.D. Tex. July 23, 2022) ................................. 26

## STATEMENT OF RELATED CASES

No other appeal in or from the same proceeding the Waco Division of the Western District of Texas was previously before this or any other appellate court.

Apple is aware of two cases that may directly affect or be directly affected by the Court's resolution of this mandamus petition. Those cases involve similar facts as this one, and the district court entered substantively identical orders to the one at issue in this petition. Apple previously filed petitions for a writ of mandamus in each of those cases; those petitions are pending before this Court as *In re Apple Inc.*, No. 22-162 (Fed. Cir.), and *In re Apple Inc.*, No. 22-163 (Fed. Cir.).

# INTRODUCTION

This Court has held that motions to transfer venue under 28 U.S.C. § 1404(a) must be decided promptly, at the outset of litigation, before the case has progressed substantially on the merits. Indeed, the purpose of § 1404(a) transfer is to ensure that litigation takes place in a convenient forum with some meaningful connection to the dispute. Delaying a transfer ruling beyond decisions that affect the substantive issues in the litigation undermines that purpose by forcing litigants and a district court to spend time and resources proceeding in a forum that may not ultimately try the case. Thus, this Court has granted mandamus relief to order district courts to decide a transfer motion that has lingered on the docket while the case matures into substantive steps like discovery, claim construction, and other merits matters.

Here, without ruling on Apple's fully briefed transfer motion, the district court affirmatively ordered the parties to complete fact discovery and otherwise press forward on the merits, after which they must "renew" briefing on the transfer issue. Only then will the district court take up transfer. At that point, eleven months will have passed since Apple first filed its transfer motion—and since the transfer of

another case involving the same parties and similar accused features to the Northern District of California.  The parties will not only have completed fact discovery (with the district court resolving all discovery disputes), they will also have served final infringement and invalidity contentions, narrowed the asserted claims and prior art, and even exchanged their preliminary exhibit and witness lists for trial—all in a forum that this district court has already determined to be inconvenient in a case involving the same parties and a nearly identical § 1404(a) analysis.

The district court entered the same scheduling order in two other cases, in which Apple has already sought this Court's mandamus review.  *See In re Apple Inc.*, No. 22-162 (Fed. Cir. Sept. 1, 2022); *In re Apple Inc.*, No. 22-163 (Fed. Cir. Sept. 6, 2022).  Here, as in those cases, mandamus relief is warranted.  Indeed, the district court's substantial change in the schedule, and its violation of precedent, is even more perplexing in this case.  Unlike in Apple's two co-pending mandamus petitions, neither party sought to supplement the venue record here. The district court had even denied an unopposed request for a two-day extension on Apple's transfer reply, citing the impending *Markman*

3

hearing.  Yet in its unprompted scheduling order issued just two weeks later, the court postponed the *Markman* hearing for nearly a year.

The impetus for that about-face was plaintiff Scramoge's motion to strike certain evidence from Apple's transfer reply.  But that evidence was responsive to new assertions by Scramoge in its transfer opposition brief.  Moreover, Scramoge did not seek a delay in the resolution of transfer, and there was no basis to impose it.  Indeed, that delay is particularly problematic here, since the parties' related litigation will continue proceeding in the Northern District of California while this case proceeds in parallel, at least for the time being, in Texas.

Mandamus is urgently needed to address the district court's unlawful scheduling order, which has now been entered in at least four cases—three of them involving Apple.  The Court should grant mandamus to ensure that transfer motions receive the priority they deserve.

## RELIEF SOUGHT

Apple respectfully requests that the Court issue a writ of mandamus directing the district court to vacate its scheduling order,

promptly rule on Apple's pending transfer motion, and stay all district-court proceedings on the merits until transfer has been resolved.

## ISSUE PRESENTED

Whether Apple is entitled to a writ of mandamus to correct the district court's clear abuse of discretion in requiring the parties to complete full fact discovery and otherwise move the litigation forward on the merits for another eight months before the district court will consider whether to transfer this case.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### *Scramoge sues Apple for patent infringement in the Western District of Texas despite having no connection to that district*

Scramoge is an Irish patent-holding company headquartered in Dublin.  Appx16-17.  Scramoge has no ties to the Western District of Texas.  *See* Appx52; Appx58.

Nonetheless, in June and October 2021, Scramoge filed two patent lawsuits against Apple in the Waco Division of the Western District of Texas.  *See* Appx16-28; Appx53; Appx173-183.  In the first, *Scramoge Technology Ltd. v. Apple Inc.*, No. 6:21-cv-00579-ADA (W.D. Tex. June 7, 2021) (*Scramoge I*), Scramoge accused various models of Apple's iPhone and AirPods products of infringing its patents covering aspects

of wireless charging technology.  Appx228.  Because there was no meaningful connection to the Western District of Texas, Apple filed a motion to transfer on November 12, 2021. Appx184-206.  The district court granted Apple's motion on May 17, 2022, and transferred the case to the Northern District of California. Appx228-252.

In the second suit—the case giving rise to this appeal—*Scramoge Technology Ltd. v. Apple Inc.*, No. 6:21-cv-01071-ADA (W.D. Tex. Oct. 14, 2021) (*Scramoge II*), Scramoge accused various models of Apple's MagSafe Chargers and Apple Watch products of infringing its patents by virtue of their wireless inductive charging features.  Appx16; Appx18-20; Appx24-25.  As with *Scramoge I*, nothing about this litigation has any meaningful connection to Texas, much less the Waco Division of the Western District of Texas.  Apple's research, design, development, marketing, and finance operations for the accused features primarily take place in the Northern District of California, where Apple is headquartered.  Appx75; Appx77.  Apple's likely trial witnesses are in California, including Apple employees who can explain the accused features to the jury and Apple engineers who participated in or are knowledgeable about the research, design, and development of

the accused features.  Appx76-78; Appx80-81.  Indeed, two of the Apple

employees identified as likely trial witnesses in this case were

previously identified in Apple's successful motion to transfer in

*Scramoge I*—and the overlap of likely trial witnesses in *Scramoge I* and

*II* is unsurprising, since the accused features in both cases concern

wireless charging.  Appx210-211; Appx77-78.  Additionally, Apple has

identified five prior art references in this case, for which the inventor or

assignees are located in the Northern District of California.  Appx108.

### Apple moves to transfer the suit to the Northern District of California, and venue discovery proceeds

Because this case lacks any connection to the Western District of

Texas, on May 11, 2022, Apple filed a motion to transfer the case to the

Northern District of California.  *See* Appx47-73.  Venue discovery

started shortly thereafter.  *See* Appx33.

Apple's transfer motion explained that relevant documents and

likely witnesses are located in the Northern District of California,

where the accused technology was developed, and that neither

Scramoge nor this litigation has any connection to the Western District

of Texas.  Appx53-58.  The Northern District of California is where

Apple is headquartered, where Apple's management and primary

research and development facilities are located, where Apple's primary

operation, marketing, sales, and finance decisions take place, and where

more than 35,000 Apple employees work, including nearly all of Apple's

engineers who are knowledgeable about the accused features. Appx75-

81. In contrast, Apple is unaware of any relevant documents or

anticipated Apple witnesses in the Western District of Texas. Appx80.

In support of its transfer motion, Apple relied on the declaration of

Mark Rollins, a finance manager at Apple, to establish certain facts,

such as the relevance, role, and locations of witnesses and their teams,

as well as the relevance and locations of various categories of

documents. Appx54-57. Mr. Rollins provided this information on behalf

of Apple as a corporation—akin to a Rule 30(b)(6) deponent. *See*

Appx75.

In its opposition to Apple's transfer motion, Scramoge made little

attempt to show any connection to, or convenience in, the Texas forum

it chose. Instead, Scramoge principally attacked the credibility of Apple

and its corporate declarant, Mr. Rollins. Scramoge's attacks relied

heavily on an order the same district court entered in *Scramoge I* just

days after Apple filed its transfer motion in this case. In the *Scramoge*

*I* order, the district court granted Apple's motion to transfer to the Northern District of California. Appx228-252. In doing so, the district court sua sponte ruled on the "credibility" of Mr. Rollins, who had provided a similar declaration this case. Appx228; Appx230-236.

Apple has elsewhere demonstrated that the district court's ruling in *Scramoge I* identified no misstatements or other credibility deficiencies in the testimony given by Mr. Rollins. *See* Appx253-262 (Apple's motion to seal portions of the *Scramoge I* transfer order); Appx264-281 (Apple's motion to vacate portions of the *Scramoge I* transfer order). Instead, the district court faulted Mr. Rollins for doing exactly what corporate witnesses are obligated to do: gathering information from individuals within Apple and relaying that information on behalf of the company. *See generally* Appx228-252.

Seeking to capitalize on the *Scramoge I* order, however, Scramoge requested in its transfer opposition in this case that the district court draw adverse inferences against Apple in light of Apple's reliance on a corporate declaration provided by Mr. Rollins. Appx92-95. Scramoge also raised a number of new factual speculations regarding the location of (i) potential third-party witnesses employed by Apple suppliers Texas

Instruments and STMicroelectronics and (ii) a handful of Austin-based
Apple employees that Scramoge asserted had relevant knowledge.
Appx92; Appx95-100.

To rebut Scramoge's misplaced reliance on the *Scramoge I* order
and to correct Scramoge's newly raised factual assertions and
arguments, Apple acted promptly to investigate and obtain declarations
from Apple employees whom Scramoge put at issue in its opposition.
Appx118-120; Appx124-126. For example, in its motion to transfer and
in Mr. Rollins's declaration, Apple explained that Rohan Dayal, who is a
Hardware Development Manager in the Wireless Charging Technology
Group responsible for the wireless charging circuitry for the Apple
Watch, does not work in the Western District of Texas, and that his
workplace is instead located in the Northern District of California.
Appx77. Apple also provided evidence regarding the responsibilities of
Mr. Dayal and his team and the location of relevant team members—
including the fact that none are in Texas. Appx77-78. In its opposition,
Scramoge raised a number of unfounded suppositions, including that
"Mr. Rollins's investigation was incomplete" regarding the venue
convenience for witnesses like Mr. Dayal. Appx97. Accordingly, in

reply, instead of submitting a second declaration from Mr. Rollins, Apple obtained a declaration directly from Mr. Dayal confirming Mr. Rollins's attestations that the Northern District of California was a more convenient venue. Among other things, and contrary to Scramoge's arguments, Mr. Dayal averred that his "workplace is in the Northern District of California," that he does "not work in the Western District of Texas," and that the "design and development work on the Accused Features takes place in Apple's physical labs located in Cupertino, California." Appx119.

Apple also provided declarations from additional Apple employees whom Scramoge had first identified in its transfer opposition, asserting that Apple had "inexplicably omit[ted] mention of" them. Appx98. But those employees, Apple explained, "have no relevance to this case." Appx110-111. Each of these new witness declarations likewise relied on the declarant's personal knowledge. Appx114-126. In other words, each piece of Apple's reply evidence directly responded to an argument or factual assertion Scramoge put at issue in its opposition. Because Scramoge introduced a number of arguments and evidentiary issues in

its opposition that it had not previously raised during venue discovery, Apple could not have anticipated those issues in its opening motion.

On August 17, 2022, Apple served these additional declarations on Scramoge and filed them as exhibits to Apple's reply brief in support of its transfer motion.[1]  Appx113.  Apple's reply explained how the declarations were directly responsive to arguments and assertions that Scramoge had raised for the first time in its transfer opposition. Apple further explained that, during the three months of venue discovery, Scramoge had declined to take the deposition of Mr. Rollins or any witness identified in his declaration.  Appx163.

Scramoge responded to Apple's transfer reply by insisting that this "new" evidence was improper, and stating its intention to move to strike under the view that it lacked an opportunity to respond to Apple's reply.  Appx134-135; Appx152.  Apple demonstrated how all of

---

[1] Limited to five pages and 14 days to respond to Scramoge's 20-page opposition, which had exhibits numbering nearly 300 pages, Apple sought a one-week extension of time and five additional pages to reply. Appx142-145.  Scramoge agreed to a two-day, two-page extension. Appx144-145.  But the district court allowed only the two additional pages and denied any additional time, citing the upcoming *Markman* hearing that it later postponed, Appx142, inhibiting a full airing of the record and legal arguments.

the evidence was proper rebuttal, but nonetheless offered Scramoge the opportunity to file a sur-reply. Appx164.

Scramoge, however, did not take Apple up on its offer. Instead, Scramoge moved to strike what it alleged to be improper evidence in Apple's transfer reply brief. Appx130. Scramoge asserted that Apple had "unilateral[ly] deci[ded] to inject new Apple evidence," in "contraven[tion of] the Court's procedures for deciding transfer and claim construction in fair, orderly, and expedient fashion." Appx130. But Scramoge did not identify a single piece of evidence Apple provided in its reply that did not directly respond to an argument Scramoge introduced for the first time in its opposition. Appx163; Appx108-109. And notably absent from Scramoge's motion to strike was any request for additional venue discovery, let alone any delay in resolving transfer. *See* Appx127-138.

In opposing Scramoge's motion to strike, Apple again demonstrated that the evidence Scramoge sought to strike responded directly to arguments raised by Scramoge in its response. Appx166. This included Scramoge's unfounded speculation as to the location of potential witnesses, along with unverified and cherry-picked LinkedIn

13

profiles of Apple employees provided in the voluminous exhibits attached to Scramoge's opposition—all of which necessitated an evidentiary response.  Appx163; Appx167.

### *The district court sua sponte orders the parties to complete fact discovery and "re-brief" Apple's transfer motion before it will consider whether to transfer venue*

On August 26, 2022, the district court granted in part Scramoge's motion to strike.  Appx1-3.  The district court ruled that, "in lieu of striking" Apple's evidence and argument, it would "give Scramoge" "an opportunity to investigate and respond to the new facts and arguments" in Apple's reply.  Appx1; Appx3.  In doing so, however, the district court also postponed ruling on Apple's transfer motion—which at that point was fully briefed—until after the completion of fact discovery on the merits.  The district court stated that "[f]ull fact discovery will allow the parties to provide the Court with the best evidence for ruling on a motion to transfer."  Appx2.  Although neither party had asked for a revised schedule, the district court sua sponte issued a new discovery and scheduling order, which requires the parties to "re-brief the motion to transfer … after the parties conduct fact discovery and determine which witnesses and evidence they intend to call at trial."  Appx2.

14

The order provides for 30 weeks of fact discovery, to be followed by six weeks of additional briefing on the transfer motion. Appx6-7. In other words, the district court ordered the parties to engage in more than *eight months* of fact discovery and briefing before it will even consider whether to transfer venue. During this time, the parties also will be required to take other substantive steps in the litigation, all according to the district court's particular rules and limitations (even if those rules differ from the ones in force in the ultimate transferee forum). These include: litigating discovery disputes; adding parties before the district court's deadline passes; serving final infringement and invalidity contentions; amending pleadings; narrowing the asserted claims and prior art; litigating any dispute over that narrowing; and exchanging preliminary exhibit and witness lists for trial. *See* Appx4-6.

Moreover, although the order states that the district court "finds it prudent to have the parties … re-brief the motion to transfer," Appx2, it does not allow Apple to file a new motion to transfer accounting for any additional information gleaned in months of discovery. It instead allows Scramoge to file a new opposition and Apple to file a new reply, and permits Scramoge to file a sur-reply for the first time. Appx6-7.

While unusual, the discovery and scheduling order in this case is not a one-off.  Indeed, in the span of a week, the district court has entered nearly identical orders in at least three other patent-infringement cases (two against Apple) with pending motions to transfer venue.  *See, e.g.*, *XR Commc'ns LLC v. Apple, Inc.*, No. 6:21-cv-00620-ADA, Dkt. No. 68 (W.D. Tex. Aug. 25, 2022), Appx384-386; *XR Commc'ns v. Asustek Comput. Inc.*, No. 6:21-cv-00622-ADA, Dkt. 55 (W.D. Tex. Aug. 25, 2022), Appx388-390; *Aire Tech. Ltd. v. Apple Inc.*, 6:21-cv-01101-ADA, Dkt. No. 54 (W.D. Tex. Aug. 22, 2022), Appx282-288.  Each of these orders requires the parties to complete fact discovery and additional briefing, again over the course of more than several months, before the district court will consider whether to transfer venue.

## REASONS FOR ISSUING THE WRIT

A petitioner seeking mandamus relief must (1) show a "clear and indisputable" right to the writ; (2) have "no other adequate means to attain the relief [it] desires"; and (3) demonstrate that "the writ is appropriate under the circumstances."  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (en banc) (*Volkswagen II*) (quoting

*Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380-81 (2004)). All three requirements are met here. First, mandamus is necessary to correct the district court's clear abuse of discretion in deferring resolution of Apple's transfer motion until fact discovery is complete and the case has progressed substantially on the merits. The Fifth Circuit and this Court have made clear that such delay is unlawful and warrants mandamus relief. Second, there is no other form of relief that would allow Apple to vindicate its right to seek transfer before the significant inconvenience of proceeding in the original forum occurs. Finally, the unreasonableness of the measure the district court took, and the strong merits of Apple's transfer motion, make mandamus eminently appropriate here.

## I.    Apple Has A Clear And Indisputable Right To The Writ.

### A.    The district court clearly abused its discretion by violating binding precedent requiring courts to prioritize transfer motions.

A request for transfer is a threshold matter that a district court must address at the outset of litigation. The transfer statute is designed "to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Cont'l Grain Co. v. The Barge*

17

*FBL-585*, 364 U.S. 19, 27 (1960). But that goal is "thwarted" when defendants must participate in protracted litigation before transfer is resolved. *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013). Indeed, "[t]o undertake a consideration of the merits of the action is to assume, even temporarily, that there will be no transfer before the transfer issue is decided." *McDonnell Douglas Corp. v. Polin*, 429 F.2d 30, 30 (3d Cir. 1970). For that reason, this Court has stressed "the importance of addressing motions to transfer at the outset of litigation." *EMC*, 501 F. App'x at 975; *see also In re Apple Inc.*, 979 F.3d 1332, 1338 (Fed. Cir. 2020) (faulting district court for "barrel[ing] ahead on the merits in significant respects," including overseeing discovery disputes and claim construction, before issuing a transfer decision); *In re Nintendo Co.*, 544 F. App'x 934, 941 (Fed. Cir. 2013) ("[A] trial court must first address whether it is a proper and convenient venue before addressing any substantive portion of the case."). Just as defendants must file transfer motions promptly, *see In re Wyeth*, 406 F. App'x 475, 477 (Fed. Cir. 2010), district courts must rule on them promptly, *see Apple*, 979 F.3d at 1337-38.

The Fifth Circuit has likewise decreed that transfer motions must take "top priority" in litigation. *In re Horseshoe Ent.*, 337 F.3d 429, 433 (5th Cir. 2003). When district courts fail to afford that priority to transfer motions, this Court has repeatedly used its mandamus authority to ensure that those courts do not "frustrate 28 U.S.C. § 1404(a)'s intent" by forcing litigants "to expend resources litigating substantive matters in an inconvenient venue while a motion to transfer lingers unnecessarily on the docket." *In re Google Inc.*, No. 2015-138, 2015 WL 5294800, at *1 (Fed. Cir. July 16, 2015); *see also In re SK hynix Inc.*, 835 F. App'x 600, 600-01 (Fed. Cir. 2021); *In re TracFone Wireless, Inc.*, 848 F. App'x 899, 901 (Fed. Cir. 2021); *cf. In re Netflix, Inc.*, No. 2021-190, 2021 WL 4944826, at *1 (Fed. Cir. Oct. 25, 2021) ("Delays in resolving transfer motions, coupled with ongoing discovery, claim construction, and other proceedings, frustrate the purpose of § 1404(a).") (denying mandamus because magistrate had ruled on venue motion after petition was filed).

The district court's scheduling order here is directly contrary to this precedent. While it defers the *Markman* hearing and claim-construction order "until the Court resolves the transfer motion,"

Appx6, those are only "two of the most important and time-intensive

substantive tasks a district court undertakes," *Apple*, 979 F.3d at 1338.

They are not the *only* important substantive tasks. The scheduling

order here guarantees that the district court will undertake many other

important substantive steps in this case before determining whether it

is the venue where trial will ultimately take place.

Most notably, the order ensures that the district court will oversee

all of fact discovery, including resolving any discovery disputes. But

this Court has specifically identified these steps as ones that should

await a transfer decision. *See id.* (faulting district court for holding "a

discovery hearing and issu[ing] a corresponding discovery order"); *SK*

*hynix*, 835 F. App'x at 600-01 (faulting district court for "order[ing] the

parties to engage in extensive discovery"; staying "all discovery" until

transfer was resolved); *Google*, 2015 WL 5294800, at *1 (faulting

district court for "proceeding through to the close of discovery" and

conducting "a hearing related to several discovery disputes").

Moreover, this Court has repeatedly endorsed the Third Circuit's

precedent holding that "it is not proper to postpone consideration of the

application for transfer under § 1404(a) until discovery on the merits is

completed, since it is irrelevant to the determination of the preliminary question of transfer." *McDonnell Douglas*, 429 F.2d at 30-31.[2]  The district court's order here does exactly what the Third Circuit deemed improper.  *Id.* at 31 (vacating order that required all merits discovery to be completed before district court would resolve transfer motion).

In addition, the order ensures that the parties must complete multiple other substantive steps in the Western District of Texas before the district court will even consider whether this case should be transferred to the Northern District of California.  Claim construction briefing already has been completed; the deadline to add parties will pass; the parties will serve final infringement and invalidity contentions under the local patent rules of the Texas forum; the deadline to amend pleadings will pass; the parties will narrow the asserted claims and prior art (again, according to the Texas court's particular rules and limitations); the district court will resolve any dispute over that narrowing; and the parties will exchange preliminary exhibit and witness lists for trial.  *See* Appx4-5.  All of this will take

---

[2] *See Apple*, 979 F.3d at 1337; *Google*, 2015 WL 5294800, at *1; *Nintendo*, 544 F. App'x at 941; *EMC*, 501 F. App'x at 975 n.1; *In re Fusion-IO, Inc.*, 489 F. App'x 465, 466 (Fed. Cir. 2012).

place before the parties are even permitted to resume briefing on Apple's transfer motion.  In short, the district court's order guarantees that the parties will expend significant resources and the case will substantially progress on the merits, all in a forum that ultimately should not preside over the case.

Furthermore, this substantive progress will take significant time. Apple filed its motion to transfer in May 2022.  Appx47-73.  Under the district court's scheduling order, that motion will not be fully briefed until nearly a year later, when Scramoge files a sur-reply in April 2023. *See* Appx7 (setting sur-reply deadline for 36 weeks after originally scheduled *Markman* hearing in August 2022).  That is a significantly longer delay than the type this Court has previously found to be unacceptable in the transfer context and to warrant mandamus relief. *See Google*, 2015 WL 5294800, at *1 (delay of 8 months from filing of motion); *TracFone Wireless*, 848 F. App'x at 900 (same); *SK hynix*, 835 F. App'x at 600-01 (same); *cf. Horseshoe Ent.*, 337 F.3d at 433 (Fifth Circuit faulting district court for "wait[ing] some 13 months" to rule on transfer).

A district court is not allowed to perpetuate this kind of delay by merely letting a transfer motion linger on its docket. *Google*, 2015 WL 5294800, at *1. It certainly cannot be allowed to achieve the same delay by ordering it to occur.

## B. The district court's stated reasons for its extraordinary order cannot justify its departure from precedent.

The district court did not address any of this precedent in issuing its scheduling order. Nor did it attempt to reconcile its built-in delay with the repeated admonishments of this Court and the Fifth Circuit to resolve transfer motions before proceeding with the merits, including merits discovery. And the district court's stated reasons for entering this scheduling order do not justify the clear violation of precedent.

1. The district court entered this order in the course of granting in part Scramoge's motion to strike. The district court stated that, "[i]n fairness, if one party raises new evidence or arguments in a motion, the Court will give the other party a fair opportunity to respond." Appx1. But giving Scramoge that opportunity would require, at most, a sur-reply, as Apple suggested. Appx172. It does not, as the district court

ordered, require the parties to entirely "re-brief" the transfer motion following full fact discovery. Appx2.

Furthermore, the district court's stated reason for its order is unsupported by the record of proceedings. Apple's reply did not raise "new evidence or arguments." Apple's reply declarations either covered information that was already in Scramoge's possession (because they confirmed information provided in Apple's transfer motion) or responded to new assertions Scramoge had introduced in its transfer opposition. Appx105-111. Any new information provided in the declarations—which simply explained that the Apple and third-party employees Scramoge speculated could be relevant did not in fact work on the accused features—was a direct result of the factual conjectures Scramoge raised for the first time in its opposition. Appx105; Appx108-109.

Notably, Scramoge did not ask for the "opportunity" the district court provided. During the three months of venue discovery, Scramoge declined to take the deposition of Mr. Rollins or any witnesses Apple listed as relevant. Appx163. Even if Scramoge had expressed a need to depose any witnesses—or to take any other venue-related discovery—

after receiving Apple's transfer reply, there is no reason why a short continuance would not have sufficed, instead of the extreme option the district court chose.[3]

    **2.**  The district court's second rationale fares no better.  The district court opined that, in its experience, "speculation and incomplete[] discovery often plagues early transfer motions."  Appx2.  It asserted that "transfer-driven speculation about the witnesses and evidence fails to align with reality," and that parties end up relying on different witnesses and evidence at trial "from what they identify in their transfer briefs."  Appx2.  Notably, the district court did not cite any examples of this supposed mismatch.  Nor did it attempt to square its position with the authority making clear that, despite the fact that litigation will evolve over time, merits discovery "is irrelevant to the determination of the preliminary question of transfer."  *McDonnell Douglas*, 429 F.2d at 30-31; *see also In re Juniper Networks, Inc.*, 14 F. 4th 1313, 1319 (Fed. Cir. 2021) (rejecting "the district court's categorical

---

[3] The district court noted Apple's representation "[i]n other similarly situated cases" that "it would not oppose a continuance."  Appx2.  That representation related to a "short continuance," Appx397, not an eight-month delay.

assumption that defendants are likely to call few if any of the proposed party witnesses or prior-art witnesses that are identified for purposes of supporting transfer motions").

Regardless, the real-world evidence tells a different story from what the district court suggested.  In fact, the district court had available to it a recent example showing exactly the opposite of what it described.  A patent case involving Apple, in which the district court had previously denied interdistrict transfer, recently settled just days before trial was set to begin.  *See Koss Corp. v. Apple Inc.*, No. 6:20-cv-00665-ADA, Dkts. 303-304 (W.D. Tex. July 23, 2022).  At the transfer stage, Apple identified 13 California-based Apple employees who would be likely trial witnesses, with none in Texas.  Appx294-296.  Koss, in contrast, argued that two relevant non-party witnesses were in Texas; that two Austin-based Apple employees were also likely witnesses; and that information it found on the Internet contradicted Apple's sworn testimony.  Appx337-340.  Despite Apple's showing that its Austin-based employees had no relevant information, the district court relied in part on Koss's unsupported speculation in denying transfer.  Appx347-375.

The parties' witness lists, filed with the pretrial order shortly before trial was set to begin, bear out Apple's predictions at the transfer stage. Apple's "will-call" trial list included only four Apple employees: Each was a California-based witness identified in Apple's original transfer motion. *Compare* Appx314-326 *with* Appx382 (identifying David Shaw, Aarti Kumar, Ariane Cotte, and Linda Frager as will-call trial witnesses). Apple's "may-call" list also included two Apple employees—again, each was a California-based witness identified in Apple's original transfer motion. *Compare* Appx314-326 *with* Appx383 (identifying Jeffrey Lasker and Baptiste Paquier as may-call trial witnesses). Plainly, Apple's transfer motion did not "identify witnesses and evidence based on location rather than relevance," as the district court charged here. Appx2. Rather, Apple undertook a good-faith investigation to identify the witnesses who would likely be relevant— and Apple's predictions were correct.

But the Koss side of the story is even more telling. Koss's trial witness lists did not include either of the Austin-based Apple employees whom Koss had featured in opposing transfer. *Compare* Appx327-345

*with* Appx377-378.[4]  Nor did Koss list the Texas-based third-party

individual who had worked on Koss's own accused products, despite

relying heavily on him at the transfer stage.  *Compare* Appx327-345

*with* Appx377-378 (Hytham Alihassan identified at transfer but not at

trial).[5]  But Koss did indicate its intent to call *nine* of the California-

based Apple employees that *Apple* had identified at the transfer stage—

listing a tenth as a "may-call" witness—despite vigorously opposing the

idea that many California-based Apple witnesses would be forced to

travel for trial.  *Compare* Appx377-378 *with* Appx327-345.

In other words, just as Apple predicted more than a year before

trial, a significant number of Apple employees would be required to

travel from their homes in Northern California to Waco, Texas, to

participate in this trial.  And this is not unusual: as Apple has

previously explained, its witnesses in patent trials—in any venue—

overwhelmingly come from Northern California.  *See In re Apple Inc.*,

---

[4] Koss did indicate its intent to call an Austin-based Apple employee who supports Apple Care functions, but only by playing a portion of his deposition.  Appx327-328.

[5] The other Austin-based non-party witness Koss had cited to oppose transfer was listed as one of 25 "may-call" witnesses—with only 10 hours of trial time available to Koss.  *See* Appx327-328.

No. 20-135, Dkt. 70, at 20 (Fed. Cir. Dec. 29, 2020) (noting that 87% of the 71 Apple employees who had testified live in patent trials since 2013 came from Northern California, with none coming from Texas).[6]

In short, to the extent the district court is concerned that parties are engaging in "transfer-driven speculation" that "fails to align with reality," experience demonstrates that the most reliable information is provided by a party's sworn testimony and assertions that are tested through the venue-discovery process, not by geography-driven speculation.

## II.    Apple Has No Other Adequate Means To Obtain Relief.

Mandamus is the only way for Apple to obtain relief here. Without this Court's intervention, the district court will not consider the transfer motion for more than eight additional months while forcing Apple to litigate the merits of this case.  No appeal from final judgment could remedy the inconvenience and expense of litigating for almost a year in a venue with no connection to this dispute.

---

[6] According to Apple's records, this statistic for patent trials through August 2022 is now approximately 92% from Northern California, and none from Texas.

Time and again, this Court has explained that transfer motions "should unquestionably take top priority" in a case. *Apple*, 979 F.3d at 1337; *supra* 19. This Court has also made clear that mandamus relief is appropriate to resolve "a lengthy delay in ruling on a request for [transfer]," which "can amount to a denial of the right to have that request meaningfully considered." *Google*, 2015 WL 5294800, at *1. Such delays "frustrate … § 1404(a)'s intent to 'prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Id.* (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).

In other words, a party whose transfer motion sits on the docket for months gathering dust suffers the same harm—unfixable on appeal—as a party whose transfer motion is improperly denied. Both face the hassle and expense of litigating in an inconvenient venue that has little-to-no connection to the dispute. Compare *id.* at *2 (granting mandamus and ordering the district court to decide the transfer motion within 30 days while staying all other proceedings), and *SK hynix*, 835 F. App'x at 601 (the district court's "refusal to give priority to deciding the transfer issues demonstrates that SK hynix has no alternative

means by which to obtain [relief]"), *with Apple*, 979 F.3d at 1337 ("the possibility of an appeal in the transferee forum following a final judgment … is not an adequate alternative" (citation omitted)).

Here, absent this Court's intervention, and despite a fully briefed transfer motion and a related case proceeding in the Northern District of California, Apple will spend more than eight additional months litigating "[f]ull fact discovery," Appx2, in a district court that almost certainly will not rule on the merits of the case, *see infra* Part III.A (explaining the especially strong case for transfer here).  And even if the district court ultimately grants Apple's motion to transfer this case, Apple cannot recover the time and resources that it will have spent litigating fact discovery and moving forward on the merits in the Western District of Texas.  Eight months is an "egregious delay" that demonstrates "blatant disregard for precedent," and Apple "has no alternative means" besides mandamus to avoid that delay.  *SK hynix*, 835 F. App'x at 600-01; *see TracFone Wireless*, 848 F. App'x at 900-01.

## III.   Mandamus Is Appropriate Here Because Apple Has A Strong Case For Transfer And The Equities Heavily Favor Apple.

Given the clear merits of Apple's underlying transfer motion, the equities surrounding the district court's sua sponte scheduling order, and the stark incongruity of this case remaining in the Western District of Texas while *Scramoge I* proceeds in the Northern District of California, mandamus is especially "appropriate under the circumstances" here.  *See Volkswagen II*, 545 F.3d at 311 (quoting *Cheney*, 542 U.S. at 381).  The district court's approach fundamentally undermines the purpose of § 1404(a) while giving Scramoge a mulligan after it twice chose not to seek any depositions from Apple.  Only a writ of mandamus directing the district court to promptly rule on Apple's pending transfer motion can prevent this harm.

### A.    The clearly superior convenience of the Northern District of California makes the court-mandated delay especially unjustified.

As explained above (at 17), the purpose of resolving a § 1404(a) motion is to prevent the parties from having to expend resources litigating in an inconvenient venue—and one that may not ultimately be the setting for trial.  Here, as Apple's fully briefed transfer motion in

this case and the successful motion to transfer in *Scramoge I*
demonstrate, this case has no connection to the Western District of
Texas, while the evidence, witnesses, third parties, and local interest
are overwhelmingly concentrated in the Northern District of California.
In short, this case involves the type of "stark contrast in relevance,
convenience, and fairness between the two venues" that compels
transfer. *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009).
Mandamus is therefore warranted to ensure that Apple is not forced to
litigate in a clearly inconvenient forum for another eight months before
its transfer motion is decided.

> ### 1.  The private-interest factors strongly favor transfer.

The private-interest factors include: (1) "the relative ease of access
to sources of proof"; (2) "the availability of compulsory process to secure
the attendance of witnesses"; (3) "the cost of attendance for willing
witnesses"; and (4) "all other practical problems that make trial of a
case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at
315.  These factors strongly favor transfer here.

*Sources of Proof*.  The sources-of-proof factor "relates to the ease of
access to non-witness evidence, such as documents and other physical

evidence." *Apple*, 979 F.3d at 1339. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer," and therefore the location of the defendant's documentation tends to be the more convenient venue. *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). Here, the majority of Apple's relevant documents and business records are either in or more easily accessed from the Northern District of California, where Apple is headquartered. Appx54-58; Appx75; Appx77.

Meanwhile, there appear to be no sources of proof in or more easily accessed from the Western District of Texas. Scramoge, an Irish company, has no operations in that district. And despite ten weeks of venue discovery, Scramoge has otherwise identified no sources of proof in Texas. Scramoge's opposition on this factor depended almost entirely on leveling baseless attacks against Mr. Rollins's credibility. Appx89-95. This factor thus weighs heavily in favor of transfer. *See, e.g.*, *Juniper Networks*, 14 F.4th at 1321; *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010).

*Availability of Compulsory Process*. The availability of compulsory process weighs heavily in favor of transfer because there appears to be

"a substantial number of witnesses within the subpoena power of the Northern District of California and no witness who can be compelled to appear in the [Western] District of Texas." *Genentech*, 566 F.3d at 1345; *see also In re Hoffman-La Roche, Inc.*, 587 F.3d 1333, 1337-38 (Fed. Cir. 2009). Apple has identified highly relevant third-party witnesses who could be compelled to appear in the Northern District of California, including at least five prior-art references, for which the inventor or assignees are located in the Northern District of California. Appx63-64.

By contrast, there do not appear to be any relevant third-party witnesses who would be subject to compulsory process in the Western District of Texas. Scramoge's assertion otherwise ignored the record evidence and cited only third-party employees who do not work with the relevant team at Apple and thus have no information relevant to this litigation. Appx108-109; Appx122. The compulsory process factor thus weighs strongly in favor of transfer. *See In re Apple Inc.*, No. 2021-181, 2021 WL 5291804, at *3 (Fed. Cir. Nov. 15, 2021).

*Witness Convenience.* As this Court has explained, "the relative convenience for and cost of attendance of witnesses between the two

forums is 'probably the single most important factor in [the] transfer analysis.'" *Juniper Networks*, 14 F.4th at 1318 (quoting *Genentech*, 566 F.3d at 1343); *see also Nintendo*, 589 F.3d at 1198-99. And here, that most important factor appears to weigh entirely in favor of transfer. *See, e.g.*, *Juniper Networks*, 14 F.4th at 1319; *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1379 (Fed. Cir. 2021).

Apple provided sworn testimony specifically identifying its technical and likely trial witnesses, including Apple engineers familiar with the accused technology and Apple employees knowledgeable about Apple's financial records, marketing initiatives, and patent licensing. All are in the Northern District of California, and no relevant team members are in Texas. *See* Appx54-57; Appx64-68; Appx77-81. Witness convenience in the Northern District of California is further underscored by the overlap of relevant witnesses between this case and *Scramoge I*, which has been proceeding in the California forum since it was transferred there in May. Appx210-211; Appx77-78.

Scramoge's opposition strategy was to scour LinkedIn for the profiles of Texas-based Apple employees. Appx109-110. Scramoge did not identify any of these individuals during venue discovery. Appx163.

Nor did Scramoge seek to depose any of these witnesses, or any other Apple witness, to find out if they actually had relevant information. And they do not, as Apple's transfer reply and its response to Scramoge's motion to strike thoroughly demonstrated. Appx104-112; Appx162-169.

### 2. The public-interest factors also favor transfer.

The § 1404(a) public-interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Volkswagen II*, 545 F.3d at 315 (alteration in original). Here, each of the public-interest factors that is not neutral favors transfer.

*Local Interests.* Because of its "significant connections" with "the events that gave rise to [the] suit," the Northern District of California has a strong local interest. *Apple*, 979 F.3d at 1344-45; *see also Juniper Networks*, 14 F.4th at 1319-20. And since Scramoge has no known connections to the Western District of Texas, the local interest factor

strongly favors transfer. *Apple*, 979 F.3d at 1345. Scramoge's only response was to insist that certain unrelated, third-party employees from STM and TI that it had identified, despite having no demonstrated relevance, made the Western District of Texas the locus of local interest. Appx100-101.

*Court Congestion*. The relative congestion of the two courts—the Western District of Texas and Northern District of California—has at worst a neutral effect on the transfer analysis. This Court has repeatedly "noted that the Western District of Texas and the Northern District of California show no significant differences in caseload or time-to-trial statistics." *Juniper Networks*, 14 F.4th at 1322; *see also, e.g.*, *Samsung*, 2 F.4th at 1380-81. Scramoge's opposition ignored this precedent in arguing otherwise. Appx100.

## B. The equities heavily favor Apple.

The simple fact that the district court ignored clear precedent and guaranteed months of delay before it will address Apple's transfer motion is enough to warrant mandamus relief. "[A] court must exercise its discretion within the bounds set by relevant statutes and relevant, binding precedents," and "mandamus is entirely appropriate to review

for an abuse of discretion that clearly exceeds the bounds of judicial discretion." *Volkswagen II*, 545 F.3d at 310. But here, mandamus is especially warranted in view of how the district court's order came about and the effects it will have if permitted to stand.

To start, the district court's sua sponte scheduling order fundamentally undermines § 1404(a)'s purpose: "to 'prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Google*, 2015 WL 5294800, at *1 (quoting *Van Dusen*, 376 U.S. at 616). Section 1404(a) serves that purpose only when district courts give transfer motions "top priority." *Apple*, 979 F.3d at 1337. Here, if the district court's order stands, the parties will have done almost everything short of preparing for the pretrial conference before the district court rules on the transfer motion. *Supra* 20-21.

Likewise, the district court will have expended considerable resources familiarizing itself with the case to, among other things, resolve disputes over discovery and the asserted claims and prior art. *Id.* But judicial efficiency requires that the "district court should not burden itself with the merits of the action until [the transfer motion] is

decided." *McDonnell Douglas*, 429 F.2d at 30.  If Apple's motion is ultimately granted—as it should be, *see* Part III.A—another district judge will receive a brand-new case that is well into litigation, in which many issues have been resolved, and in which trial preparation is underway according to another court's rules and preferences.  There is no reason to burden a judge with that outcome.

There is particularly no reason to do so when no party has asked for that result.  The district court denied Apple's unopposed request for a two-day extension for its reply, citing the upcoming *Markman* hearing—the same hearing that it rescheduled in its sua sponte scheduling order for nearly a year later, a postponement neither party requested.  And in moving to strike supposedly "new" evidence in Apple's reply, Scramoge did not ask for more time to test the facts contained in the new declarations.  On the contrary, the reply declarations largely supplied the same information already in Scramoge's possession, and which Scramoge had elected not to test through the venue-discovery process, and what additional new information was provided in the declarations were directly responsive to the unfounded speculations Scramoge raised for the first time in its

response, instead of during the venue discovery process.  Scramoge does not seem to be interested in taking any additional steps to ensure "an accurate identification of the witnesses, parties, and evidence relevant to this case," Appx1.  Instead, like Koss and many other patent plaintiffs before it, Scramoge has asked the district court to resolve transfer by weighing Apple's sworn evidence against Scramoge's unsupported characterizations of Apple employees.  *Supra* 13, 26.  There is no reason to delay the transfer analysis while litigation continues in an inconvenient forum.

Finally, "writs of mandamus are supervisory in nature and are particularly appropriate when the issues also have an importance beyond the immediate case." *Volkswagen II*, 545 F.3d at 319.  That is true here.  In the span of just a week, the district court issued the same merits-before-transfer scheduling order in at least four separate patent-infringement cases, including this one.  *Supra* 16.  This Court should weigh in before the district court adopts that unlawful scheduling order as its standard practice.

41

## CONCLUSION

The Court should issue a writ of mandamus directing the district court to vacate its scheduling order, rule on Apple's pending transfer motion, and stay all proceedings on the merits until transfer has been resolved.

Respectfully submitted,

*/s/ Melanie L. Bostwick*

Steven D. Moore
KILPATRICK TOWNSEND &
  STOCKTON LLP
Two Embarcadero Center
Suite 1900
San Francisco, CA  94111

Mansi Shah
KILPATRICK TOWNSEND &
  STOCKTON LLP
1302 El Camino Real, Suite 175
Menlo Park, CA  94025

Alton L. Absher III
KILPATRICK TOWNSEND &
  STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC  27101

Melanie L. Bostwick
Jonas Q. Wang
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
1152 15th Street NW
Washington, DC  20005
(202) 339-8400

*Counsel for Petitioner*

42

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the

Clerk of the Court for the United States Court of Appeals for the

Federal Circuit by using the appellate CM/ECF system on September 8,

2022.

A copy of the foregoing was served upon the following counsel of

record and the district court via email and FedEx:

Andrea L. Fair
WARD, SMITH & HILL, PLLC
PO Box 1231
Longview, TX 75606
Tel: (903) 757-6400
andrea@wsfirm.com

Brett E. Cooper
Seth R. Hasenour
Drew B. Hollander
BC Law Group, P.C.
200 Madison Avenue, 24th Floor
New York, NY 10016
Telephone: (516) 359-9668
bcooper@b-clg.com
shasenour@b-clg.com
dhollander@b-clg.com

Hon. Alan D Albright
United States District Court for the Western District of Texas
800 Franklin Avenue, Room 301,
Waco, Texas 76701
Telephone: (254) 750-1501

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ Melanie L. Bostwick*
Melanie L. Bostwick
*Counsel for Petitioner*

# CERTIFICATE OF COMPLIANCE

The petition complies with the type-volume limitation of Fed. R. App. P. 21(d)(1) because this petition contains 7722 words.

This petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this petition has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in Century Schoolbook 14-point font.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ Melanie L. Bostwick*
Melanie L. Bostwick
*Counsel for Petitioner*