Miscellaneous Docket No. 22-164

IN THE

# United States Court of Appeals for the Federal Circuit

IN RE APPLE INC.,

*Petitioner.*

On Petition for Writ of Mandamus to the
United States District Court for the
Western District of Texas
No. 6:21-cv-01071-ADA, Hon. Alan D Albright

## APPLE INC.'S EMERGENCY MOTION FOR A STAY OF PROCEEDINGS IN THE DISTRICT COURT PENDING RESOLUTION OF APPLE'S MANDAMUS PETITION

Steven D. Moore
KILPATRICK TOWNSEND &
  STOCKTON LLP
Two Embarcadero Center
Suite 1900
San Francisco, CA  94111

Mansi Shah
KILPATRICK TOWNSEND &
  STOCKTON LLP
1302 El Camino Real, Suite 175
Menlo Park, CA  94025

Alton L. Absher III
KILPATRICK TOWNSEND &
  STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC  27101

Melanie L. Bostwick
Jonas Q. Wang
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
1152 15th Street NW
Washington, DC  20005
(202) 339-8400

*Counsel for Petitioner*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. ii

LIST OF EXHIBITS ........................................................................ iv

RULE 27(A)(2) STATEMENT .............................................................. v

INTRODUCTION ............................................................................ 1

BACKGROUND ............................................................................. 4

    Apple promptly moves to transfer this case pursuant to
    § 1404(a), leading to venue discovery ....................................... 4

    The district court sua sponte orders the parties to complete
    fact discovery and "re-brief" Apple's transfer motion
    before it will consider whether to transfer venue ................. 9

    Apple files a petition for writ of mandamus and moves in the
    district court to stay proceedings pending this Court's
    decision on the mandamus petition ...................................... 11

LEGAL STANDARD ....................................................................... 11

ARGUMENT ................................................................................ 12

    I.    Apple's Petition Makes A Compelling Case For
        Mandamus. ...................................................................... 13

    II.   Absent A Stay, Apple Would Be Irreparably Harmed
        By Participating In Substantive Proceedings In Texas. ...... 16

    III.  A Brief Stay Would Not Harm Scramoge. ........................... 18

    IV.  The Public Interest Favors A Stay. .................................... 19

CONCLUSION .............................................................................. 20

CERTIFICATE OF INTEREST

EXHIBITS

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Dredging Co. v. Miller*,
   510 U.S. 443 (1994) ............................................................... 20

*In re Apple Inc.*,
   979 F.3d 1332 (Fed. Cir. 2020) ...................................... 1, 14

*Cont'l Grain Co. v. The Barge FBL-585*,
   364 U.S. 19 (1960) ................................................................ 14

*E-Watch, Inc. v. Lorex Can., Inc.*,
   No. H-12-3314, 2013 WL 5425298 (S.D. Tex. Sept. 26, 2013) ........... 18

*In re EMC Corp.*,
   501 F. App'x 973 (Fed. Cir. 2013) ...................................... 14

*In re Google Inc.*,
   No. 2015-138, 2015 WL 5294800 (Fed. Cir. July 16, 2015) ... 14, 16, 18

*Hilton v. Braunskill*,
   481 U.S. 770 (1987) ............................................. 12, 16, 18

*In re Horseshoe Ent.*,
   337 F.3d 429 (5th Cir. 2003) ........................................ 14, 16

*In re Lloyd's Register N. Am., Inc.*,
   780 F.3d 283 (5th Cir. 2015) .............................................. 17

*In re Morgan Stanley*,
   417 F. App'x 947 (Fed. Cir. 2011) ...................................... 19

*In re Nintendo Co.*,
   544 F. App'x 934 (Fed. Cir. 2013) ...................................... 14

*Nken v. Holder*,
   556 U.S. 418 (2009) ......................................... 12, 16, 18, 19

*In re SK hynix Inc.*,
    835 F. App'x 600 (Fed. Cir. 2021) ...................................... 2, 14, 17, 18

*Standard Havens Prods., Inc. v. Gencor Indus., Inc.*,
    897 F.2d 511 (Fed. Cir. 1990) ...................................................... 12, 13

*In re TracFone Wireless, Inc.*,
    848 F. App'x 899 (Fed. Cir. 2021) ................................. 2, 14, 16, 17, 18

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
    759 F.3d 1307 (Fed. Cir. 2014) .......................................................... 19

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) .............................................................. 17

*Weingarten Realty Inv'rs v. Miller*,
    661 F.3d 904 (5th Cir. 2011) .............................................................. 20

*In re WMS Gaming Inc.*,
    564 F. App'x 579 (Fed. Cir. 2014) ...................................................... 19

**Statutes**

28 U.S.C. § 1404(a) ............................................................................. 5, 14

**Rules and Regulations**

Fed. R. Civ. P. 30(b)(6) ............................................................................ 5

**Other Authorities**

Discovery and Scheduling Order, *Aire Tech. Ltd. v. Apple, Inc.*, No. 6:21-cv-01101-ADA, Dkt. 54 (W.D. Tex. Aug. 22, 2022) .............................................................................................. 11

Discovery and Scheduling Order, *XR Commc'ns v. Apple Inc.*, No. 6:21-cv-00620-ADA, Dkt. 72-1 (W.D. Tex. Sept. 9, 2022) .............................................................................................. 10

Discovery and Scheduling Order, *XR Commc'ns v. Asustek Comput. Inc.*, No. 6:21-cv-00622-ADA, Dkt. 55 (W.D. Tex. Aug. 25, 2022) ...................................................................................... 11

# LIST OF EXHIBITS

**Exhibit 1:**    Petition for Writ of Mandamus, *In re Apple Inc.*, No. 22-164, Dkt. 2-1 (Fed. Cir. Sept. 8, 2022)

**Exhibit 2:**    Discovery and Scheduling Order, *Scramoge v. Apple Inc.*, No. 6:21-cv-01071-ADA, Dkt. 56 (W.D. Tex. Aug. 26, 2022)

**Exhibit 3:**    Apple's Opposed Motion to Stay Proceeding[s] Pending Mandamus Review, *Scramoge v. Apple Inc.*, No. 6:21-cv-01071-ADA, Dkt. 58 (W.D. Tex. Sept. 8, 2022)

**Exhibit 4:**    Discovery and Scheduling Order, *XR Commc'ns LLC v. Apple, Inc.*, No. 6:21-cv-00620-ADA, Dkt. 72-1 (W.D. Tex. Sept. 9, 2022)

## **RULE 27(A)(2) STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 8 and Federal Circuit Rule 8, Apple states that it notified Scramoge of its intent to file this motion for a stay.  Scramoge opposes the motion.

## INTRODUCTION

On September 8, 2022, Petitioner Apple Inc. filed a petition for writ of mandamus asking this Court to: (1) vacate the district court's order requiring the parties to complete fact discovery and other merits steps before the district court will rule on Apple's fully briefed motion to transfer this case to the Northern District of California; (2) direct the district court to rule on Apple's pending transfer motion; and (3) stay all other district-court proceedings until the district court decides the transfer motion. The same day, after receiving Scramoge's indication that it would oppose a stay, Apple also moved in the district court for a temporary stay pending this Court's review of the mandamus petition.

The district court has not acted on Apple's request for a temporary stay. Apple therefore respectfully requests that this Court stay the district-court proceedings until mandamus proceedings are resolved. Because the district court is moving "ahead on the merits in significant respects," *In re Apple Inc.*, 979 F.3d 1332, 1338 (Fed. Cir. 2020), it is no longer practicable for Apple to await the district court's ruling on its request for a temporary stay.

The governing four-factor standard overwhelmingly favors a stay in this case.  First, Apple respectfully submits that its petition makes a strong showing that mandamus relief is appropriate.  The district court clearly abused its discretion by ordering the parties to complete fact discovery and otherwise advance this case on the merits for an additional eight months before it will resolve Apple's promptly filed transfer motion.  This Court has held that such delays in ruling on transfer motions merit mandamus relief because transfer motions must take priority on a district court's docket.  *E.g.*, *In re TracFone Wireless, Inc.*, 848 F. App'x 899, 901 (Fed. Cir. 2021); *In re SK hynix Inc.*, 835 F. App'x 600, 600-01 (Fed. Cir. 2021).  Indeed, that delay is particularly problematic here, since another case involving the same parties and similar accused features will continue proceeding in the Northern District of California while this case proceeds in parallel, at least for the time being, in Texas.

Second, Apple will suffer irreparable harm absent a stay.  If no stay is entered, the parties will continue proceeding through fact discovery and other substantive aspects of this case.  But if Apple is right that mandamus is warranted, the district court will have

improperly proceeded to address the merits of the case—such as hearing discovery disputes—in an inconvenient venue. This Court has deemed that to be the kind of harm that warrants a stay.

Third, Scramoge would not suffer any prejudice from a stay. This Court resolves mandamus proceedings quickly, so any delay would be brief. And Scramoge is a non-practicing entity, so it can be made whole for any delay with money damages if it eventually prevails here. Moreover, there is no reason why a brief stay would delay the eventual trial, which is not set to begin for more than a year.

Finally, the public interest favors a stay. Awaiting this Court's mandamus decision before proceeding would protect the strong local interest held by the Northern District of California in this case. It would also ensure that judicial resources are not wasted on a case that likely will not go to trial in the Western District of Texas.

In sum, the governing factors all point in one direction: This Court should stay the district-court proceedings so that no substantive review takes place in the Western District of Texas until this Court determines whether the district court must resolve Apple's transfer motion before the case moves forward on the merits.

# BACKGROUND

## *Apple promptly moves to transfer this case pursuant to § 1404(a), leading to venue discovery*

As explained more fully in Apple's mandamus petition, Scramoge is an Irish patent-holding company headquartered in Dublin.  Pet. 5. Scramoge has no ties to the Western District of Texas.  *Id.*

Nonetheless, in June and October 2021, Scramoge filed two patent lawsuits against Apple in the Waco Division of the Western District of Texas.  *Id.*  In the first, *Scramoge Technology Ltd. v. Apple Inc.*, No. 6:21-cv-00579-ADA (W.D. Tex. June 7, 2021) (*Scramoge I*), Scramoge accused various models of Apple's iPhone and AirPods products of infringing its patents covering aspects of wireless charging technology. Pet. 5.  Because there was no meaningful connection to the Western District of Texas, Apple filed a motion to transfer on November 12, 2021.  Pet. 5-6.  The district court granted Apple's motion on May 17, 2022, and transferred the case to the Northern District of California. Pet. 6.

In the second suit—the case giving rise to Apple's present mandamus  petition—*Scramoge Technology Ltd. v. Apple Inc.*, No. 6:21-cv-01071-ADA (W.D. Tex. Oct. 14, 2021) (*Scramoge II*), Scramoge

4

accused various models of Apple's MagSafe Chargers and Apple Watch products of infringing its patents by virtue of their wireless inductive charging features. Pet. 6. As with *Scramoge I*, nothing about this litigation has any meaningful connection to Texas, much less the Waco Division of the Western District of Texas. Pet. 6. Because this case has no connection to Texas and because party and non-party witnesses, documentation, and localized interests are concentrated in Northern California, Apple promptly moved in May 2022 to transfer the case to the Northern District of California under 28 U.S.C. § 1404(a). Pet. 7.

To support its transfer motion, Apple relied on the declaration of Mark Rollins, a finance manager at Apple, to establish certain facts, such as the relevance, role, and locations of witnesses and their teams and various categories of documents. Pet. 8. Mr. Rollins provided this information on behalf of Apple as a corporation—akin to a Rule 30(b)(6) deponent. *See* Appx75.

In its opposition to Apple's transfer motion, Scramoge made little attempt to show any connection to, or convenience in, the Texas forum it chose. Instead, Scramoge principally attacked the credibility of Apple and its corporate declarant, Mr. Rollins. Scramoge's attacks relied

heavily on an order the same district court entered in *Scramoge I* just days after Apple filed its transfer motion in this case. In the *Scramoge I* order, the district court granted Apple's motion to transfer to the Northern District of California. Pet. 8. In doing so, the district court sua sponte ruled on the "credibility" of Mr. Rollins, who had provided a similar declaration this case. Pet. 9; Appx228; Appx230-236.

Apple has elsewhere demonstrated that the district court's ruling in *Scramoge I* identified no misstatements or other credibility deficiencies in the testimony given by Mr. Rollins. *See* Pet. 9 (citing Apple's motion to seal portions of the *Scramoge I* transfer order, Appx253-262, and to vacate portions of that order, Appx264-281). Instead, the district court faulted Mr. Rollins for doing exactly what corporate witnesses are obligated to do: gathering information from individuals within Apple and relaying that information on behalf of the company. *Id.*

Seeking to capitalize on the *Scramoge I* order, however, Scramoge requested in its transfer opposition in this case that the district court draw adverse inferences against Apple in light of Apple's reliance on a corporate declaration provided by Mr. Rollins. *Id.*; Appx92-100.

Scramoge also raised a number of new factual speculations regarding the location of (i) potential third-party witnesses employed by Apple suppliers Texas Instruments and STMicroelectronics and (ii) a handful of Austin-based Apple employees that Scramoge asserted had relevant knowledge. Pet. 9-10; Appx92; Appx95-100.

To rebut Scramoge's misplaced reliance on the *Scramoge I* order and to correct Scramoge's newly raised factual assertions and arguments, Apple acted promptly to investigate and obtain declarations from Apple employees whom Scramoge put at issue in its opposition. Pet. 10; Appx118-120; Appx124-126. Apple also provided declarations from additional Apple employees whom Scramoge had first identified in its transfer opposition, asserting that Apple had "inexplicably omit[ted] mention of" them. Pet. 11; Appx98. But those employees, Apple explained, "have no relevance to this case." Pet. 11; Appx110-111. In other words, each piece of Apple's reply evidence directly responded to an argument or factual assertion Scramoge put at issue in its opposition. Because Scramoge introduced a number of arguments and evidentiary issues in its opposition that it had not previously raised

during venue discovery, Apple could not have anticipated those issues in its opening motion. *See* Pet. 11.

On August 17, 2022, Apple served these additional declarations on Scramoge and filed them as exhibits to Apple's reply brief in support of its transfer motion. Pet. 12; Appx113. Apple's reply explained how the declarations were directly responsive to arguments and assertions that Scramoge had raised for the first time in its transfer opposition. Apple further explained that, during the three months of venue discovery, Scramoge had declined to take the deposition of Mr. Rollins or any witness identified in his declaration. Pet. 12; Appx163.

Scramoge responded to Apple's transfer reply by insisting that this "new" evidence was improper, and stating its intention to move to strike under the view that it lacked an opportunity to respond to Apple's reply. Pet. 12; Appx134-135; Appx152. Apple demonstrated how all of the evidence was proper rebuttal, but nonetheless offered Scramoge the opportunity to file a sur-reply. Pet. 12; Appx164.

Instead of filing a sur-reply, Scramoge moved to strike what it alleged to be improper evidence in Apple's transfer reply brief. Pet. 13; Appx130. But Scramoge did not identify a single piece of evidence

Apple provided in its reply that did not directly respond to an argument

Scramoge introduced for the first time in its opposition. Pet. 13;

Appx163; Appx108-109. And notably absent from Scramoge's motion to

strike was any request for additional venue discovery, let alone any

delay in resolving transfer. *See* Pet. 13; Appx127-138.

In opposing Scramoge's motion to strike, Apple again

demonstrated that the evidence Scramoge sought to strike responded

directly to arguments raised by Scramoge in its response. Pet. 13;

Appx166.

### *The district court sua sponte orders the parties to complete fact discovery and "re-brief" Apple's transfer motion before it will consider whether to transfer venue*

On August 26, 2022, the district court granted in part Scramoge's

motion to strike. Appx1-3. The district court ruled that, "in lieu of

striking" Apple's evidence and argument, it would "give Scramoge" "an

opportunity to investigate and respond to the new facts and arguments"

in Apple's reply. Appx1; Appx3. In doing so, however, the district court

also postponed ruling on Apple's transfer motion—which at that point

was fully briefed—until after the completion of fact discovery on the

merits. The district court stated that "[f]ull fact discovery will allow the

9

parties to provide the Court with the best evidence for ruling on a motion to transfer." Appx2. Although neither party had asked for a revised schedule, the district court sua sponte issued a new discovery and scheduling order, which requires the parties to "re-brief the motion to transfer … after the parties conduct fact discovery and determine which witnesses and evidence they intend to call at trial." Appx2.

The order provides for 30 weeks of fact discovery, to be followed by six weeks of additional briefing on the transfer motion. Appx6-7. In other words, the district court ordered the parties to engage in more than *eight months* of fact discovery and briefing before it will even consider whether to transfer venue. During this time, the parties also will be required to take other substantive steps in the litigation, all according to the district court's particular rules and limitations (even if those rules differ from the ones in force in the ultimate transferee forum).

The district court has entered nearly identical orders in at least three other patent-infringement cases (two against Apple) with pending motions to transfer venue. *See, e.g.*, *XR Commc'ns LLC v. Apple, Inc.*, No. 6:21-cv-00620-ADA, Dkt. 72-1 (W.D. Tex. Sept. 9, 2022) (Exhibit 4);

*XR Commc'ns v. Asustek Comput. Inc.*, No. 6:21-cv-00622-ADA, Dkt. 55 (W.D. Tex. Aug. 25, 2022), Appx388-390; *Aire Tech Ltd. v. Apple, Inc.*, No. 6:21-cv-01101-ADA, Dkt. 54 (W.D. Tex. Aug. 22, 2022), Appx282-288.  Each order requires the parties to complete fact discovery and additional briefing, again over the course of many months, before the district court will consider whether to transfer venue.

### Apple files a petition for writ of mandamus and moves in the district court to stay proceedings pending this Court's decision on the mandamus petition

On September 8, 2022, Apple filed a petition for a writ of mandamus directing the district court to vacate its scheduling order and stay all other proceedings until it rules on Apple's transfer motion. Dkt. 2.  The same day, Apple asked the district court to temporarily stay proceedings pending this Court's resolution of the mandamus petition.  Dist. Ct. Dkt. 58.  The district court has not acted on that motion.

## LEGAL STANDARD

Four factors govern stay requests: "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay;

(3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 425-26 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)); *see Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 512 (Fed. Cir. 1990) (explaining that these four factors "always guide our discretion to issue a stay pending appeal"). As this Court has explained, "likelihood of success in the appeal is not a rigid concept." *Standard Havens*, 897 F.2d at 512. A "substantial case" on the merits suffices where "the other factors militate in [the] movant's favor." *Id.* at 513 (quoting *Hilton*, 481 U.S. at 778) (emphasis omitted).

## ARGUMENT

The governing standard overwhelmingly favors a stay. Apple's petition makes a compelling showing that mandamus is appropriate because the district court's order is contrary to precedent from this Court and the Fifth Circuit. Absent a stay, Apple will suffer irreparable harm as the case proceeds on the merits, including with the progression of fact discovery and other substantive steps in the litigation. Scramoge, in contrast, will suffer no appreciable harm from a brief

12

delay. And finally, the public interest favors a stay, which would protect local interests and judicial resources alike.

## I.     Apple's Petition Makes A Compelling Case For Mandamus.

Apple respectfully suggests that it will likely prevail on the merits of its mandamus petition, which asks this Court to address whether a district court can, through a sua sponte scheduling order, decline to rule on a transfer motion until after the parties complete full fact discovery and otherwise move the litigation forward on the merits for nearly a year. Pet. 3-4. That delay is particularly problematic here, since the parties' related litigation will continue proceeding in the Northern District of California while this case proceeds in parallel, at least for the time being, in Texas. Pet. 4. Because the district court clearly abused its discretion by refusing to address Apple's transfer motion until the litigation has significantly progressed on the merits, Apple has, at the very least, presented a "substantial case on the merits," *Standard Havens*, 897 F.2d at 513 (emphasis omitted), warranting a brief stay pending this Court's resolution of Apple's mandamus petition.

The district court's scheduling order here is contrary to binding precedent requiring courts to prioritize transfer motions. Because the

transfer statute is designed "to protect litigants, witnesses and the public against unnecessary inconvenience and expense," *Cont'l Grain Co. v. The Barge FBL-585*, 364 U.S. 19, 27 (1960), this Court has stressed "the importance of addressing motions to transfer at the outset of litigation," *In re EMC Corp.*, 501 F. App'x 973, 975 (Fed. Cir. 2013); *see also Apple*, 979 F.3d at 1337-38; *In re Nintendo Co.*, 544 F. App'x 934, 941 (Fed. Cir. 2013).

The Fifth Circuit has likewise stated that transfer motions must take "top priority" in litigation. *In re Horseshoe Ent.*, 337 F.3d 429, 433 (5th Cir. 2003). When district courts fail to afford that priority to transfer motions, this Court has used its mandamus authority to ensure that those courts do not "frustrate 28 U.S.C. § 1404(a)'s intent" by forcing litigants "to expend resources litigating substantive matters in an inconvenient venue while a motion to transfer lingers unnecessarily on the docket." *In re Google Inc.*, No. 2015-138, 2015 WL 5294800, at *1 (Fed. Cir. July 16, 2015); *see also SK hynix*, 835 F. App'x at 600-01; *TracFone Wireless*, 848 F. App'x at 901.

The district court's scheduling order not only ensures that the district court will oversee all of fact discovery, including resolving any

discovery disputes, but also requires the parties to complete multiple other substantive steps in the Western District of Texas before the court will consider whether this case should be transferred to the Northern District of California.  Claim construction briefing already has been completed; the deadline to add parties will pass; the parties will serve final infringement and invalidity contentions under the local patent rules of the Texas forum; the deadline to amend pleadings will pass; the parties will narrow the asserted claims and prior art (again, according to the Texas court's particular rules and limitations); the district court will resolve any dispute over that narrowing; and the parties will exchange preliminary exhibit and witness lists for trial.  *See* Appx4-5.  All of this will take place before the parties are even permitted to resume briefing on Apple's transfer motion.  In short, the district court's order guarantees that the parties will expend significant resources and the case will substantially progress on the merits, all in a forum that ultimately should not preside over the case.

The district court's clear abuse of discretion compels mandamus review by this Court.  At a minimum, it presents a substantial case on

the merits warranting a brief stay while this Court considers Apple's petition.

## II.   Absent A Stay, Apple Would Be Irreparably Harmed By Participating In Substantive Proceedings In Texas.

Apple will be "irreparably injured absent a stay." *Nken*, 556 U.S. at 426 (quoting *Hilton*, 481 U.S. at 776).  Without a stay, the district court will proceed to substantive review of this case imminently, with claim-construction briefing completed, fact discovery underway, and discovery disputes likely to ripen in the near future.  Pet. 19-22; Appx4-6; Appx284-288.  But if Apple prevails on its mandamus petition, and the district court is required to consider Apple's transfer motion before proceeding further on the merits, it will have erred by taking such substantive steps in the interim.

As this Court has explained, allowing a transfer motion to go unconsidered while a court "press[es] forward with discovery and claim construction issues" can "forc[e] defendants" to spend time and resources litigating the merits of a case "in an inconvenient venue." *TracFone Wireless*, 848 F. App'x at 900 (quoting *Google*, 2015 WL 5294800, at *1).  That is why the Fifth Circuit requires district courts to give transfer motions "top priority."  *Horseshoe Ent.*, 337 F.3d at 433.

16

Allowing this case to march on toward trial in the Western District of Texas risks creating major "inconvenience to witnesses, parties and other[s]," which is "the very harm sought to be avoided by transferring venue." *In re Lloyd's Register N. Am., Inc.*, 780 F.3d 283, 289 (5th Cir. 2015) (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 319 (5th Cir. 2008) (en banc)). Indeed, witness convenience in the Northern District of California is further underscored by the overlap of relevant witnesses between this case and *Scramoge I*, which has been proceeding in the California forum since it was transferred there in May. Appx210-211; Appx77-78.

These harms could not be remedied after the fact. Once the district court proceeds to substantive review of this case, the "prejudice suffered cannot be put back into the bottle." *Volkswagen*, 545 F.3d at 319. The threat of those harms confirms that a stay is warranted. *See TracFone Wireless*, 848 F. App'x at 901 (granting mandamus and ordering district court to stay all proceedings until ruling on transfer motion); *SK hynix*, 835 F. App'x at 601 (partially granting mandamus relief, including a stay of "all proceedings concerning … substantive issues" until the resolution of a transfer motion, as the petitioner had

"no alternative means by which to obtain" such relief); *Google*, 2015 WL 5294800, at *2 (granting mandamus and ordering the district court to decide the transfer motion within 30 days while staying all other proceedings).

## III.  A Brief Stay Would Not Harm Scramoge.

On the other hand, a stay pending resolution of Apple's mandamus petition would not "substantially injure" Scramoge. *Nken*, 556 U.S. at 426 (quoting *Hilton*, 481 U.S. at 776).  Indeed, without a stay, Scramoge (like Apple) would be required to expend time and resources litigating in a forum that likely will not try this case.  And "delay alone does not constitute prejudice sufficient to deny a request for [a] stay." *E-Watch, Inc. v. Lorex Can., Inc.*, No. H-12-3314, 2013 WL 5425298, at *2 (S.D. Tex. Sept. 26, 2013).  In any event, any delay caused by a stay will likely be brief.  Apple filed its mandamus petition quickly (less than two weeks after the district court's scheduling order), and this Court resolves mandamus petitions in an expedited manner. *See, e.g.*, *TracFone Wireless*, 848 F. App'x at 900; *SK hynix*, 835 F. App'x at 600 (Fed. Cir. 2021).  And the trial in this matter is not scheduled to

take place until late October 2023, so there is no apparent reason why a short stay would delay that date. Appx288.

Moreover, any momentary disadvantage to Scramoge from granting a short stay—unlike the harm to Apple from denying it— would be fully redressable. Because Scramoge does not practice the asserted patents, it can be compensated for any delay with money damages should it prevail in this lawsuit. *See In re Morgan Stanley*, 417 F. App'x 947, 950 (Fed. Cir. 2011) (explaining that "the prospective speed with which this case might be brought to trial" is not "of particular significance" where plaintiff does not make or sell any product); *In re WMS Gaming Inc.*, 564 F. App'x 579, 581 (Fed. Cir. 2014) (same). As this Court has explained, a stay should not be denied merely because it "delays realization of … damages" without "diminish[ing]" the ultimate potential recovery. *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1318 (Fed. Cir. 2014).

## IV. The Public Interest Favors A Stay.

Finally, the public interest favors a stay pending resolution of Apple's mandamus petition. *Nken*, 556 U.S. at 426. The Northern District of California has numerous ties to—and thus strong local

interest in—this case, whereas the Western District of Texas has none. Pet. 5-6, 37-38; *see Am. Dredging Co. v. Miller*, 510 U.S. 443, 448 (1994) ("There is a local interest in having localized controversies decided at home."). A stay would protect that interest until this Court has a chance to intervene.

A stay would also advance the "public policy of preserving judicial resources from the risk of reversal." *Weingarten Realty Inv'rs v. Miller*, 661 F.3d 904, 913 (5th Cir. 2011). Apple's mandamus petition has a strong chance of success. *Supra* Part I. That makes it probable that conducting substantive review of the issues in this case in the Western District of Texas would needlessly waste judicial resources.

## CONCLUSION

For the foregoing reasons, Apple respectfully requests that the Court grant this motion and stay the district-court proceedings pending resolution of Apple's mandamus petition.

Respectfully submitted,

*/s/ Melanie L. Bostwick*

Steven D. Moore
KILPATRICK TOWNSEND &
  STOCKTON LLP
Two Embarcadero Center
Suite 1900
San Francisco, CA  94111

Mansi Shah
KILPATRICK TOWNSEND &
  STOCKTON LLP
1302 El Camino Real, Suite 175
Menlo Park, CA  94025

Alton L. Absher III
KILPATRICK TOWNSEND &
  STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC  27101

Melanie L. Bostwick
Jonas Q. Wang
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
1152 15th Street NW
Washington, DC  20005
(202) 339-8400

*Counsel for Petitioner*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 22-164 |
| **Short Case Caption** | In re Apple Inc. |
| **Filing Party/Entity** | Apple Inc. |

> **Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box**. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 09/12/2022

Signature: /s/ Melanie L. Bostwick

Name: Melanie L. Bostwick

FORM 9. Certificate of Interest

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| Apple Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐  Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable        ☐   Additional pages attached

| | | |
|---|---|---|
| Kelly Hart & Hallman LLP | J. Stephen Ravel | Rishi Gupta |
| Andrew W. Rinehart | Amanda N. Brouillette | Kasey E. Koballa |
| Christopher P. Schaffer | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☐   None/Not Applicable        ☐   Additional pages attached

| | | |
|---|---|---|
| In re Apple Inc., No. 22-162 (Fed. Cir.) | In re Apple Inc., No. 22-163 (Fed. Cir.) | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable        ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# LIST OF EXHIBITS

**Exhibit 1:**     Petition for Writ of Mandamus, *In re Apple Inc.*, No. 22-164, Dkt. 2-1 (Fed. Cir. Sept. 8, 2022)

**Exhibit 2:**     Discovery and Scheduling Order, *Scramoge v. Apple Inc.*, No. 6:21-cv-01071-ADA, Dkt. 56 (W.D. Tex. Aug. 26, 2022)

**Exhibit 3:**     Apple's Opposed Motion to Stay Proceeding[s] Pending Mandamus Review, *Scramoge v. Apple Inc.*, No. 6:21-cv-01071-ADA, Dkt. 58 (W.D. Tex. Sept. 8, 2022)

**Exhibit 4:**     Discovery and Scheduling Order, *XR Commc'ns LLC v. Apple, Inc.*, No. 6:21-cv-00620-ADA, Dkt. 72-1 (W.D. Tex. Sept. 9, 2022)

Exhibit 1

Miscellaneous Docket No. ___

### IN THE
# United States Court of Appeals for the Federal Circuit

IN RE APPLE INC.,

*Petitioner.*

On Petition for Writ of Mandamus to the
United States District Court for the
Western District of Texas
No. 6:21-cv-01071-ADA, Hon. Alan D Albright

## APPLE INC.'S PETITION FOR
## WRIT OF MANDAMUS

Steven D. Moore
KILPATRICK TOWNSEND &
   STOCKTON LLP
Two Embarcadero Center
Suite 1900
San Francisco, CA  94111

Mansi Shah
KILPATRICK TOWNSEND &
   STOCKTON LLP
1302 El Camino Real, Suite 175
Menlo Park, CA  94025

Alton L. Absher III
KILPATRICK TOWNSEND &
   STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC  27101

Melanie L. Bostwick
Jonas Q. Wang
ORRICK, HERRINGTON &
   SUTCLIFFE LLP
1152 15th Street NW
Washington, DC  20005
(202) 339-8400

*Counsel for Petitioner*

FORM 9. Certificate of Interest

# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

### CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | |
| **Short Case Caption** | In re Apple Inc. |
| **Filing Party/Entity** | Apple Inc. |

> **Instructions:** Complete each section of the form.  In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.  **Please enter only one item per box; attach additional pages as needed and check the relevant box**.  Counsel must immediately file an amended Certificate of Interest if information changes.  Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 09/08/2022

Signature: /s/ Melanie L. Bostwick

Name: Melanie L. Bostwick

i

FORM 9. Certificate of Interest

| 1. **Represented Entities.**<br>Fed. Cir. R. 47.4(a)(1). | 2. **Real Party in Interest.**<br>Fed. Cir. R. 47.4(a)(2). | 3. **Parent Corporations and Stockholders.**<br>Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Apple Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐    None/Not Applicable          ☐    Additional pages attached

| | | |
|---|---|---|
| Kelly Hart & Hallman LLP | J. Stephen Ravel | Rishi Gupta |
| Andrew W. Rinehart | Amanda N. Brouillette | Kasey E. Koballa |
| Christopher P. Schaffer | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☐    None/Not Applicable          ☐    Additional pages attached

| | | |
|---|---|---|
| In re Apple Inc., No. 22-162 (Fed. Cir.) | In re Apple Inc., No. 22-163 (Fed. Cir.) | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable          ☐    Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ............................................................... i

TABLE OF AUTHORITIES .................................................................. vi

STATEMENT OF RELATED CASES ...................................................... 1

INTRODUCTION ................................................................................. 2

RELIEF SOUGHT ............................................................................... 4

ISSUE PRESENTED ........................................................................... 5

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................ 5

    Scramoge sues Apple for patent infringement in the Western District of Texas despite having no connection to that district ............................................................................................. 5

    Apple moves to transfer the suit to the Northern District of California, and venue discovery proceeds ............................... 7

    The district court sua sponte orders the parties to complete fact discovery and "re-brief" Apple's transfer motion before it will consider whether to transfer venue ............... 14

REASONS FOR ISSUING THE WRIT .................................................. 16

    I.    Apple Has A Clear And Indisputable Right To The Writ .................................................................................... 17

        A.    The district court clearly abused its discretion by violating binding precedent requiring courts to prioritize transfer motions. ........................................ 17

        B.    The district court's stated reasons for its extraordinary order cannot justify its departure from precedent. ........................................... 23

    II.    Apple Has No Other Adequate Means To Obtain Relief ...... 29

    III.    Mandamus Is Appropriate Here Because Apple Has A Strong Case For Transfer And The Equities Heavily Favor Apple. ......................................................... 32

A.    The clearly superior convenience of the Northern District of California makes the court-mandated delay especially unjustified..........................................32

1.    The private-interest factors strongly favor transfer..............................................................33

2.    The public-interest factors also favor transfer...37

B.    The equities heavily favor Apple. ................................38

CONCLUSION ......................................................................42

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Acer Am. Corp.*,
  626 F.3d 1252 (Fed. Cir. 2010) .......................................................... 34

*In re Apple Inc.*,
  979 F.3d 1332 (Fed. Cir. 2020) ............ 18, 20, 21, 30, 31, 34, 38, 39, 40

*In re Apple Inc.*,
  No. 2021-181, 2021 WL 5291804 (Fed. Cir. Nov. 15, 2021) .............. 35

*Cheney v. U.S. Dist. Ct.*,
  542 U.S. 367 (2004) ...................................................................... 16, 32

*Cont'l Grain Co. v. The Barge FBL-585*,
  364 U.S. 19 (1960) ............................................................................. 17

*In re EMC Corp.*,
  501 F. App'x 973 (Fed. Cir. 2013) ................................................ 18, 21

*In re Fusion-IO, Inc.*,
  489 F. App'x 465 (Fed. Cir. 2012) ...................................................... 21

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009) ................................................ 34, 35, 36

*In re Google Inc.*,
  No. 2015-138, 2015 WL 5294800 (Fed. Cir. July
  16, 2015) ........................................................ 19, 20, 21, 22, 23, 30, 39

*In re Hoffman-La Roche, Inc.*,
  587 F.3d 1333 (Fed. Cir. 2009) .......................................................... 35

*In re Horseshoe Ent.*,
  337 F.3d 429 (5th Cir. 2003) ........................................................ 19, 22

*In re Juniper Networks, Inc.*,
  14 F. 4th 1313 (Fed. Cir. 2021) ........................................ 25, 34, 36, 38

*McDonnell Douglas Corp. v. Polin,*
    429 F.2d 30 (3d Cir. 1970) ................................................ 18, 21, 25, 40

*In re Netflix, Inc.,*
    No. 2021-190, 2021 WL 4944826 (Fed. Cir. Oct. 25, 2021)................ 19

*In re Nintendo Co.,*
    544 F. App'x 934 (Fed. Cir. 2013) ................................................ 18, 21

*In re Nintendo Co.,*
    589 F.3d 1194 (Fed. Cir. 2009) ..................................................... 33, 36

*In re Samsung Elecs. Co.,*
    2 F.4th 1371 (Fed. Cir. 2021)........................................................ 36, 38

*In re SK hynix Inc.,*
    835 F. App'x 600 (Fed. Cir. 2021) .............................. 19, 20, 22, 30, 31

*In re TracFone Wireless, Inc.,*
    848 F. App'x 899 (Fed. Cir. 2021) ......................................... 19, 22, 31

*Van Dusen v. Barrack,*
    376 U.S. 612 (1964).................................................................... 30, 39

*In re Volkswagen of Am., Inc.,*
    545 F.3d 304 (5th Cir. 2008)................................ 16, 32, 33, 37, 39, 41

*In re Wyeth,*
    406 F. App'x 475 (Fed. Cir. 2010) ...................................................... 18

## Statutes

28 U.S.C. § 1404(a)...........................................2, 3, 19, 20, 30, 32, 37, 39

## Rules and Regulations

Fed. R. Civ. P. 30(b)(6) .................................................................................. 8

## Other Authorities

Apple's Response to Petition for Rehearing En Banc, *In re
    Apple Inc.*, No. 20-135, Dkt. 70 (Fed. Cir. Dec. 29, 2020) .................. 28

Discovery and Scheduling Order, *Aire Tech. Ltd. v. Apple Inc.*, 6:21-cv-01101-ADA, Dkt. No. 54 (W.D. Tex. Aug. 22, 2022) ............................................................................... 16

Discovery and Scheduling Order, *XR Commc'ns LLC v. Apple, Inc.*, No. 6:21-cv-00620-ADA, Dkt. No. 68 (W.D. Tex. Aug. 25, 2022) .............................................................. 16

Discovery and Scheduling Order, *XR Commc'ns v. Asustek Comput. Inc.*, No. 6:21-cv-00622-ADA, Dkt. 55 (W.D. Tex. Aug. 25, 2022) .................................................................. 16

Joint Stipulation of Dismissal, *Koss Corp. v. Apple Inc.*, No. 6:20-cv-00665-ADA, Dkt. 303 (W.D. Tex. July 23, 2022) .................. 26

Order of Dismissal, *Koss Corp. v. Apple Inc.*, No. 6:20-cv-00665-ADA, Dkt. 304 (W.D. Tex. July 23, 2022) ................................ 26

# STATEMENT OF RELATED CASES

No other appeal in or from the same proceeding the Waco Division of the Western District of Texas was previously before this or any other appellate court.

Apple is aware of two cases that may directly affect or be directly affected by the Court's resolution of this mandamus petition. Those cases involve similar facts as this one, and the district court entered substantively identical orders to the one at issue in this petition. Apple previously filed petitions for a writ of mandamus in each of those cases; those petitions are pending before this Court as *In re Apple Inc.*, No. 22-162 (Fed. Cir.), and *In re Apple Inc.*, No. 22-163 (Fed. Cir.).

## INTRODUCTION

This Court has held that motions to transfer venue under 28 U.S.C. § 1404(a) must be decided promptly, at the outset of litigation, before the case has progressed substantially on the merits. Indeed, the purpose of § 1404(a) transfer is to ensure that litigation takes place in a convenient forum with some meaningful connection to the dispute. Delaying a transfer ruling beyond decisions that affect the substantive issues in the litigation undermines that purpose by forcing litigants and a district court to spend time and resources proceeding in a forum that may not ultimately try the case. Thus, this Court has granted mandamus relief to order district courts to decide a transfer motion that has lingered on the docket while the case matures into substantive steps like discovery, claim construction, and other merits matters.

Here, without ruling on Apple's fully briefed transfer motion, the district court affirmatively ordered the parties to complete fact discovery and otherwise press forward on the merits, after which they must "renew" briefing on the transfer issue. Only then will the district court take up transfer. At that point, eleven months will have passed since Apple first filed its transfer motion—and since the transfer of

another case involving the same parties and similar accused features to the Northern District of California. The parties will not only have completed fact discovery (with the district court resolving all discovery disputes), they will also have served final infringement and invalidity contentions, narrowed the asserted claims and prior art, and even exchanged their preliminary exhibit and witness lists for trial—all in a forum that this district court has already determined to be inconvenient in a case involving the same parties and a nearly identical § 1404(a) analysis.

The district court entered the same scheduling order in two other cases, in which Apple has already sought this Court's mandamus review. *See In re Apple Inc.*, No. 22-162 (Fed. Cir. Sept. 1, 2022); *In re Apple Inc.*, No. 22-163 (Fed. Cir. Sept. 6, 2022). Here, as in those cases, mandamus relief is warranted. Indeed, the district court's substantial change in the schedule, and its violation of precedent, is even more perplexing in this case. Unlike in Apple's two co-pending mandamus petitions, neither party sought to supplement the venue record here. The district court had even denied an unopposed request for a two-day extension on Apple's transfer reply, citing the impending *Markman*

3

hearing.  Yet in its unprompted scheduling order issued just two weeks later, the court postponed the *Markman* hearing for nearly a year.

The impetus for that about-face was plaintiff Scramoge's motion to strike certain evidence from Apple's transfer reply.  But that evidence was responsive to new assertions by Scramoge in its transfer opposition brief.  Moreover, Scramoge did not seek a delay in the resolution of transfer, and there was no basis to impose it.  Indeed, that delay is particularly problematic here, since the parties' related litigation will continue proceeding in the Northern District of California while this case proceeds in parallel, at least for the time being, in Texas.

Mandamus is urgently needed to address the district court's unlawful scheduling order, which has now been entered in at least four cases—three of them involving Apple.  The Court should grant mandamus to ensure that transfer motions receive the priority they deserve.

## RELIEF SOUGHT

Apple respectfully requests that the Court issue a writ of mandamus directing the district court to vacate its scheduling order,

promptly rule on Apple's pending transfer motion, and stay all district-court proceedings on the merits until transfer has been resolved.

## ISSUE PRESENTED

Whether Apple is entitled to a writ of mandamus to correct the district court's clear abuse of discretion in requiring the parties to complete full fact discovery and otherwise move the litigation forward on the merits for another eight months before the district court will consider whether to transfer this case.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### *Scramoge sues Apple for patent infringement in the Western District of Texas despite having no connection to that district*

Scramoge is an Irish patent-holding company headquartered in Dublin.  Appx16-17.  Scramoge has no ties to the Western District of Texas.  *See* Appx52; Appx58.

Nonetheless, in June and October 2021, Scramoge filed two patent lawsuits against Apple in the Waco Division of the Western District of Texas.  *See* Appx16-28; Appx53; Appx173-183.  In the first, *Scramoge Technology Ltd. v. Apple Inc.*, No. 6:21-cv-00579-ADA (W.D. Tex. June 7, 2021) (*Scramoge I*), Scramoge accused various models of Apple's iPhone and AirPods products of infringing its patents covering aspects

of wireless charging technology. Appx228. Because there was no meaningful connection to the Western District of Texas, Apple filed a motion to transfer on November 12, 2021. Appx184-206. The district court granted Apple's motion on May 17, 2022, and transferred the case to the Northern District of California. Appx228-252.

In the second suit—the case giving rise to this appeal—*Scramoge Technology Ltd. v. Apple Inc.*, No. 6:21-cv-01071-ADA (W.D. Tex. Oct. 14, 2021) (*Scramoge II*), Scramoge accused various models of Apple's MagSafe Chargers and Apple Watch products of infringing its patents by virtue of their wireless inductive charging features. Appx16; Appx18-20; Appx24-25. As with *Scramoge I*, nothing about this litigation has any meaningful connection to Texas, much less the Waco Division of the Western District of Texas. Apple's research, design, development, marketing, and finance operations for the accused features primarily take place in the Northern District of California, where Apple is headquartered. Appx75; Appx77. Apple's likely trial witnesses are in California, including Apple employees who can explain the accused features to the jury and Apple engineers who participated in or are knowledgeable about the research, design, and development of

6

the accused features.  Appx76-78; Appx80-81.  Indeed, two of the Apple

employees identified as likely trial witnesses in this case were

previously identified in Apple's successful motion to transfer in

*Scramoge I*—and the overlap of likely trial witnesses in *Scramoge I* and

*II* is unsurprising, since the accused features in both cases concern

wireless charging.  Appx210-211; Appx77-78.  Additionally, Apple has

identified five prior art references in this case, for which the inventor or

assignees are located in the Northern District of California.  Appx108.

### Apple moves to transfer the suit to the Northern District of California, and venue discovery proceeds

Because this case lacks any connection to the Western District of

Texas, on May 11, 2022, Apple filed a motion to transfer the case to the

Northern District of California.  *See* Appx47-73.  Venue discovery

started shortly thereafter.  *See* Appx33.

Apple's transfer motion explained that relevant documents and

likely witnesses are located in the Northern District of California,

where the accused technology was developed, and that neither

Scramoge nor this litigation has any connection to the Western District

of Texas.  Appx53-58.  The Northern District of California is where

Apple is headquartered, where Apple's management and primary

research and development facilities are located, where Apple's primary operation, marketing, sales, and finance decisions take place, and where more than 35,000 Apple employees work, including nearly all of Apple's engineers who are knowledgeable about the accused features. Appx75-81. In contrast, Apple is unaware of any relevant documents or anticipated Apple witnesses in the Western District of Texas. Appx80. In support of its transfer motion, Apple relied on the declaration of Mark Rollins, a finance manager at Apple, to establish certain facts, such as the relevance, role, and locations of witnesses and their teams, as well as the relevance and locations of various categories of documents. Appx54-57. Mr. Rollins provided this information on behalf of Apple as a corporation—akin to a Rule 30(b)(6) deponent. *See* Appx75.

In its opposition to Apple's transfer motion, Scramoge made little attempt to show any connection to, or convenience in, the Texas forum it chose. Instead, Scramoge principally attacked the credibility of Apple and its corporate declarant, Mr. Rollins. Scramoge's attacks relied heavily on an order the same district court entered in *Scramoge I* just days after Apple filed its transfer motion in this case. In the *Scramoge*

8

*I* order, the district court granted Apple's motion to transfer to the Northern District of California. Appx228-252. In doing so, the district court sua sponte ruled on the "credibility" of Mr. Rollins, who had provided a similar declaration this case. Appx228; Appx230-236.

Apple has elsewhere demonstrated that the district court's ruling in *Scramoge I* identified no misstatements or other credibility deficiencies in the testimony given by Mr. Rollins. *See* Appx253-262 (Apple's motion to seal portions of the *Scramoge I* transfer order); Appx264-281 (Apple's motion to vacate portions of the *Scramoge I* transfer order). Instead, the district court faulted Mr. Rollins for doing exactly what corporate witnesses are obligated to do: gathering information from individuals within Apple and relaying that information on behalf of the company. *See generally* Appx228-252.

Seeking to capitalize on the *Scramoge I* order, however, Scramoge requested in its transfer opposition in this case that the district court draw adverse inferences against Apple in light of Apple's reliance on a corporate declaration provided by Mr. Rollins. Appx92-95. Scramoge also raised a number of new factual speculations regarding the location of (i) potential third-party witnesses employed by Apple suppliers Texas

Instruments and STMicroelectronics and (ii) a handful of Austin-based Apple employees that Scramoge asserted had relevant knowledge. Appx92; Appx95-100.

To rebut Scramoge's misplaced reliance on the *Scramoge I* order and to correct Scramoge's newly raised factual assertions and arguments, Apple acted promptly to investigate and obtain declarations from Apple employees whom Scramoge put at issue in its opposition. Appx118-120; Appx124-126.  For example, in its motion to transfer and in Mr. Rollins's declaration, Apple explained that Rohan Dayal, who is a Hardware Development Manager in the Wireless Charging Technology Group responsible for the wireless charging circuitry for the Apple Watch, does not work in the Western District of Texas, and that his workplace is instead located in the Northern District of California. Appx77.  Apple also provided evidence regarding the responsibilities of Mr. Dayal and his team and the location of relevant team members— including the fact that none are in Texas.  Appx77-78.  In its opposition, Scramoge raised a number of unfounded suppositions, including that "Mr. Rollins's investigation was incomplete" regarding the venue convenience for witnesses like Mr. Dayal.  Appx97.  Accordingly, in

reply, instead of submitting a second declaration from Mr. Rollins,
Apple obtained a declaration directly from Mr. Dayal confirming Mr.
Rollins's attestations that the Northern District of California was a
more convenient venue. Among other things, and contrary to
Scramoge's arguments, Mr. Dayal averred that his "workplace is in the
Northern District of California," that he does "not work in the Western
District of Texas," and that the "design and development work on the
Accused Features takes place in Apple's physical labs located in
Cupertino, California." Appx119.

Apple also provided declarations from additional Apple employees
whom Scramoge had first identified in its transfer opposition, asserting
that Apple had "inexplicably omit[ted] mention of" them. Appx98. But
those employees, Apple explained, "have no relevance to this case."
Appx110-111. Each of these new witness declarations likewise relied on
the declarant's personal knowledge. Appx114-126. In other words,
each piece of Apple's reply evidence directly responded to an argument
or factual assertion Scramoge put at issue in its opposition. Because
Scramoge introduced a number of arguments and evidentiary issues in

its opposition that it had not previously raised during venue discovery,
Apple could not have anticipated those issues in its opening motion.

On August 17, 2022, Apple served these additional declarations on
Scramoge and filed them as exhibits to Apple's reply brief in support of
its transfer motion.[1]  Appx113.  Apple's reply explained how the
declarations were directly responsive to arguments and assertions that
Scramoge had raised for the first time in its transfer opposition. Apple
further explained that, during the three months of venue discovery,
Scramoge had declined to take the deposition of Mr. Rollins or any
witness identified in his declaration.  Appx163.

Scramoge responded to Apple's transfer reply by insisting that
this "new" evidence was improper, and stating its intention to move to
strike under the view that it lacked an opportunity to respond to
Apple's reply.  Appx134-135; Appx152.  Apple demonstrated how all of

---

[1] Limited to five pages and 14 days to respond to Scramoge's 20-page
opposition, which had exhibits numbering nearly 300 pages, Apple
sought a one-week extension of time and five additional pages to reply.
Appx142-145.  Scramoge agreed to a two-day, two-page extension.
Appx144-145.  But the district court allowed only the two additional
pages and denied any additional time, citing the upcoming *Markman*
hearing that it later postponed, Appx142, inhibiting a full airing of the
record and legal arguments.

the evidence was proper rebuttal, but nonetheless offered Scramoge the opportunity to file a sur-reply. Appx164.

Scramoge, however, did not take Apple up on its offer. Instead, Scramoge moved to strike what it alleged to be improper evidence in Apple's transfer reply brief. Appx130. Scramoge asserted that Apple had "unilateral[ly] deci[ded] to inject new Apple evidence," in "contraven[tion of] the Court's procedures for deciding transfer and claim construction in fair, orderly, and expedient fashion." Appx130. But Scramoge did not identify a single piece of evidence Apple provided in its reply that did not directly respond to an argument Scramoge introduced for the first time in its opposition. Appx163; Appx108-109. And notably absent from Scramoge's motion to strike was any request for additional venue discovery, let alone any delay in resolving transfer. *See* Appx127-138.

In opposing Scramoge's motion to strike, Apple again demonstrated that the evidence Scramoge sought to strike responded directly to arguments raised by Scramoge in its response. Appx166. This included Scramoge's unfounded speculation as to the location of potential witnesses, along with unverified and cherry-picked LinkedIn

profiles of Apple employees provided in the voluminous exhibits attached to Scramoge's opposition—all of which necessitated an evidentiary response.  Appx163; Appx167.

### *The district court sua sponte orders the parties to complete fact discovery and "re-brief" Apple's transfer motion before it will consider whether to transfer venue*

On August 26, 2022, the district court granted in part Scramoge's motion to strike.  Appx1-3.  The district court ruled that, "in lieu of striking" Apple's evidence and argument, it would "give Scramoge" "an opportunity to investigate and respond to the new facts and arguments" in Apple's reply.  Appx1; Appx3.  In doing so, however, the district court also postponed ruling on Apple's transfer motion—which at that point was fully briefed—until after the completion of fact discovery on the merits.  The district court stated that "[f]ull fact discovery will allow the parties to provide the Court with the best evidence for ruling on a motion to transfer."  Appx2.  Although neither party had asked for a revised schedule, the district court sua sponte issued a new discovery and scheduling order, which requires the parties to "re-brief the motion to transfer … after the parties conduct fact discovery and determine which witnesses and evidence they intend to call at trial."  Appx2.

The order provides for 30 weeks of fact discovery, to be followed by six weeks of additional briefing on the transfer motion. Appx6-7. In other words, the district court ordered the parties to engage in more than *eight months* of fact discovery and briefing before it will even consider whether to transfer venue. During this time, the parties also will be required to take other substantive steps in the litigation, all according to the district court's particular rules and limitations (even if those rules differ from the ones in force in the ultimate transferee forum). These include: litigating discovery disputes; adding parties before the district court's deadline passes; serving final infringement and invalidity contentions; amending pleadings; narrowing the asserted claims and prior art; litigating any dispute over that narrowing; and exchanging preliminary exhibit and witness lists for trial. *See* Appx4-6.

Moreover, although the order states that the district court "finds it prudent to have the parties … re-brief the motion to transfer," Appx2, it does not allow Apple to file a new motion to transfer accounting for any additional information gleaned in months of discovery. It instead allows Scramoge to file a new opposition and Apple to file a new reply, and permits Scramoge to file a sur-reply for the first time. Appx6-7.

While unusual, the discovery and scheduling order in this case is not a one-off.  Indeed, in the span of a week, the district court has entered nearly identical orders in at least three other patent-infringement cases (two against Apple) with pending motions to transfer venue.  *See, e.g.*, *XR Commc'ns LLC v. Apple, Inc.*, No. 6:21-cv-00620-ADA, Dkt. No. 68 (W.D. Tex. Aug. 25, 2022), Appx384-386; *XR Commc'ns v. Asustek Comput. Inc.*, No. 6:21-cv-00622-ADA, Dkt. 55 (W.D. Tex. Aug. 25, 2022), Appx388-390; *Aire Tech. Ltd. v. Apple Inc.*, 6:21-cv-01101-ADA, Dkt. No. 54 (W.D. Tex. Aug. 22, 2022), Appx282-288.  Each of these orders requires the parties to complete fact discovery and additional briefing, again over the course of more than several months, before the district court will consider whether to transfer venue.

## REASONS FOR ISSUING THE WRIT

A petitioner seeking mandamus relief must (1) show a "clear and indisputable" right to the writ; (2) have "no other adequate means to attain the relief [it] desires"; and (3) demonstrate that "the writ is appropriate under the circumstances."  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (en banc) (*Volkswagen II*) (quoting

*Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380-81 (2004)). All three requirements are met here. First, mandamus is necessary to correct the district court's clear abuse of discretion in deferring resolution of Apple's transfer motion until fact discovery is complete and the case has progressed substantially on the merits. The Fifth Circuit and this Court have made clear that such delay is unlawful and warrants mandamus relief. Second, there is no other form of relief that would allow Apple to vindicate its right to seek transfer before the significant inconvenience of proceeding in the original forum occurs. Finally, the unreasonableness of the measure the district court took, and the strong merits of Apple's transfer motion, make mandamus eminently appropriate here.

## I.    Apple Has A Clear And Indisputable Right To The Writ.

### A.    The district court clearly abused its discretion by violating binding precedent requiring courts to prioritize transfer motions.

A request for transfer is a threshold matter that a district court must address at the outset of litigation. The transfer statute is designed "to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Cont'l Grain Co. v. The Barge*

17

*FBL-585*, 364 U.S. 19, 27 (1960).  But that goal is "thwarted" when defendants must participate in protracted litigation before transfer is resolved.  *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013).  Indeed, "[t]o undertake a consideration of the merits of the action is to assume, even temporarily, that there will be no transfer before the transfer issue is decided." *McDonnell Douglas Corp. v. Polin*, 429 F.2d 30, 30 (3d Cir. 1970).  For that reason, this Court has stressed "the importance of addressing motions to transfer at the outset of litigation." *EMC*, 501 F. App'x at 975; *see also In re Apple Inc.*, 979 F.3d 1332, 1338 (Fed. Cir. 2020) (faulting district court for "barrel[ing] ahead on the merits in significant respects," including overseeing discovery disputes and claim construction, before issuing a transfer decision); *In re Nintendo Co.*, 544 F. App'x 934, 941 (Fed. Cir. 2013) ("[A] trial court must first address whether it is a proper and convenient venue before addressing any substantive portion of the case.").  Just as defendants must file transfer motions promptly, *see In re Wyeth*, 406 F. App'x 475, 477 (Fed. Cir. 2010), district courts must rule on them promptly, *see Apple*, 979 F.3d at 1337-38.

The Fifth Circuit has likewise decreed that transfer motions must take "top priority" in litigation. *In re Horseshoe Ent.*, 337 F.3d 429, 433 (5th Cir. 2003). When district courts fail to afford that priority to transfer motions, this Court has repeatedly used its mandamus authority to ensure that those courts do not "frustrate 28 U.S.C. § 1404(a)'s intent" by forcing litigants "to expend resources litigating substantive matters in an inconvenient venue while a motion to transfer lingers unnecessarily on the docket." *In re Google Inc.*, No. 2015-138, 2015 WL 5294800, at *1 (Fed. Cir. July 16, 2015); *see also In re SK hynix Inc.*, 835 F. App'x 600, 600-01 (Fed. Cir. 2021); *In re TracFone Wireless, Inc.*, 848 F. App'x 899, 901 (Fed. Cir. 2021); *cf. In re Netflix, Inc.*, No. 2021-190, 2021 WL 4944826, at *1 (Fed. Cir. Oct. 25, 2021) ("Delays in resolving transfer motions, coupled with ongoing discovery, claim construction, and other proceedings, frustrate the purpose of § 1404(a).") (denying mandamus because magistrate had ruled on venue motion after petition was filed).

The district court's scheduling order here is directly contrary to this precedent. While it defers the *Markman* hearing and claim-construction order "until the Court resolves the transfer motion,"

Appx6, those are only "two of the most important and time-intensive substantive tasks a district court undertakes," *Apple*, 979 F.3d at 1338. They are not the *only* important substantive tasks. The scheduling order here guarantees that the district court will undertake many other important substantive steps in this case before determining whether it is the venue where trial will ultimately take place.

Most notably, the order ensures that the district court will oversee all of fact discovery, including resolving any discovery disputes. But this Court has specifically identified these steps as ones that should await a transfer decision. *See id.* (faulting district court for holding "a discovery hearing and issu[ing] a corresponding discovery order"); *SK hynix*, 835 F. App'x at 600-01 (faulting district court for "order[ing] the parties to engage in extensive discovery"; staying "all discovery" until transfer was resolved); *Google*, 2015 WL 5294800, at *1 (faulting district court for "proceeding through to the close of discovery" and conducting "a hearing related to several discovery disputes").

Moreover, this Court has repeatedly endorsed the Third Circuit's precedent holding that "it is not proper to postpone consideration of the application for transfer under § 1404(a) until discovery on the merits is

completed, since it is irrelevant to the determination of the preliminary question of transfer." *McDonnell Douglas*, 429 F.2d at 30-31.[2]  The district court's order here does exactly what the Third Circuit deemed improper.  *Id.* at 31 (vacating order that required all merits discovery to be completed before district court would resolve transfer motion).

In addition, the order ensures that the parties must complete multiple other substantive steps in the Western District of Texas before the district court will even consider whether this case should be transferred to the Northern District of California.  Claim construction briefing already has been completed; the deadline to add parties will pass; the parties will serve final infringement and invalidity contentions under the local patent rules of the Texas forum; the deadline to amend pleadings will pass; the parties will narrow the asserted claims and prior art (again, according to the Texas court's particular rules and limitations); the district court will resolve any dispute over that narrowing; and the parties will exchange preliminary exhibit and witness lists for trial.  *See* Appx4-5.  All of this will take

---

[2] *See Apple*, 979 F.3d at 1337; *Google*, 2015 WL 5294800, at *1; *Nintendo*, 544 F. App'x at 941; *EMC*, 501 F. App'x at 975 n.1; *In re Fusion-IO, Inc.*, 489 F. App'x 465, 466 (Fed. Cir. 2012).

place before the parties are even permitted to resume briefing on Apple's transfer motion.  In short, the district court's order guarantees that the parties will expend significant resources and the case will substantially progress on the merits, all in a forum that ultimately should not preside over the case.

Furthermore, this substantive progress will take significant time. Apple filed its motion to transfer in May 2022.  Appx47-73.  Under the district court's scheduling order, that motion will not be fully briefed until nearly a year later, when Scramoge files a sur-reply in April 2023. *See* Appx7 (setting sur-reply deadline for 36 weeks after originally scheduled *Markman* hearing in August 2022).  That is a significantly longer delay than the type this Court has previously found to be unacceptable in the transfer context and to warrant mandamus relief. *See Google*, 2015 WL 5294800, at *1 (delay of 8 months from filing of motion); *TracFone Wireless*, 848 F. App'x at 900 (same); *SK hynix*, 835 F. App'x at 600-01 (same); *cf. Horseshoe Ent.*, 337 F.3d at 433 (Fifth Circuit faulting district court for "wait[ing] some 13 months" to rule on transfer).

A district court is not allowed to perpetuate this kind of delay by merely letting a transfer motion linger on its docket. *Google*, 2015 WL 5294800, at \*1. It certainly cannot be allowed to achieve the same delay by ordering it to occur.

### B. The district court's stated reasons for its extraordinary order cannot justify its departure from precedent.

The district court did not address any of this precedent in issuing its scheduling order. Nor did it attempt to reconcile its built-in delay with the repeated admonishments of this Court and the Fifth Circuit to resolve transfer motions before proceeding with the merits, including merits discovery. And the district court's stated reasons for entering this scheduling order do not justify the clear violation of precedent.

**1.** The district court entered this order in the course of granting in part Scramoge's motion to strike. The district court stated that, "[i]n fairness, if one party raises new evidence or arguments in a motion, the Court will give the other party a fair opportunity to respond." Appx1. But giving Scramoge that opportunity would require, at most, a sur-reply, as Apple suggested. Appx172. It does not, as the district court

ordered, require the parties to entirely "re-brief" the transfer motion following full fact discovery.  Appx2.

Furthermore, the district court's stated reason for its order is unsupported by the record of proceedings.  Apple's reply did not raise "new evidence or arguments."  Apple's reply declarations either covered information that was already in Scramoge's possession (because they confirmed information provided in Apple's transfer motion) or responded to new assertions Scramoge had introduced in its transfer opposition.  Appx105-111.  Any new information provided in the declarations—which simply explained that the Apple and third-party employees Scramoge speculated could be relevant did not in fact work on the accused features—was a direct result of the factual conjectures Scramoge raised for the first time in its opposition. Appx105; Appx108-109.

Notably, Scramoge did not ask for the "opportunity" the district court provided.  During the three months of venue discovery, Scramoge declined to take the deposition of Mr. Rollins or any witnesses Apple listed as relevant.  Appx163.  Even if Scramoge had expressed a need to depose any witnesses—or to take any other venue-related discovery—

after receiving Apple's transfer reply, there is no reason why a short

continuance would not have sufficed, instead of the extreme option the

district court chose.[3]

**2.** The district court's second rationale fares no better. The

district court opined that, in its experience, "speculation and

incomplete[] discovery often plagues early transfer motions." Appx2. It

asserted that "transfer-driven speculation about the witnesses and

evidence fails to align with reality," and that parties end up relying on

different witnesses and evidence at trial "from what they identify in

their transfer briefs." Appx2. Notably, the district court did not cite

any examples of this supposed mismatch. Nor did it attempt to square

its position with the authority making clear that, despite the fact that

litigation will evolve over time, merits discovery "is irrelevant to the

determination of the preliminary question of transfer." *McDonnell*

*Douglas*, 429 F.2d at 30-31; *see also In re Juniper Networks, Inc.*, 14 F.

4th 1313, 1319 (Fed. Cir. 2021) (rejecting "the district court's categorical

---

[3] The district court noted Apple's representation "[i]n other similarly situated cases" that "it would not oppose a continuance." Appx2. That representation related to a "short continuance," Appx397, not an eight-month delay.

assumption that defendants are likely to call few if any of the proposed party witnesses or prior-art witnesses that are identified for purposes of supporting transfer motions").

Regardless, the real-world evidence tells a different story from what the district court suggested. In fact, the district court had available to it a recent example showing exactly the opposite of what it described. A patent case involving Apple, in which the district court had previously denied interdistrict transfer, recently settled just days before trial was set to begin. *See Koss Corp. v. Apple Inc.*, No. 6:20-cv-00665-ADA, Dkts. 303-304 (W.D. Tex. July 23, 2022). At the transfer stage, Apple identified 13 California-based Apple employees who would be likely trial witnesses, with none in Texas. Appx294-296. Koss, in contrast, argued that two relevant non-party witnesses were in Texas; that two Austin-based Apple employees were also likely witnesses; and that information it found on the Internet contradicted Apple's sworn testimony. Appx337-340. Despite Apple's showing that its Austin-based employees had no relevant information, the district court relied in part on Koss's unsupported speculation in denying transfer. Appx347-375.

The parties' witness lists, filed with the pretrial order shortly before trial was set to begin, bear out Apple's predictions at the transfer stage. Apple's "will-call" trial list included only four Apple employees: Each was a California-based witness identified in Apple's original transfer motion. *Compare* Appx314-326 *with* Appx382 (identifying David Shaw, Aarti Kumar, Ariane Cotte, and Linda Frager as will-call trial witnesses). Apple's "may-call" list also included two Apple employees—again, each was a California-based witness identified in Apple's original transfer motion. *Compare* Appx314-326 *with* Appx383 (identifying Jeffrey Lasker and Baptiste Paquier as may-call trial witnesses). Plainly, Apple's transfer motion did not "identify witnesses and evidence based on location rather than relevance," as the district court charged here. Appx2. Rather, Apple undertook a good-faith investigation to identify the witnesses who would likely be relevant— and Apple's predictions were correct.

But the Koss side of the story is even more telling. Koss's trial witness lists did not include either of the Austin-based Apple employees whom Koss had featured in opposing transfer. *Compare* Appx327-345

*with* Appx377-378.[4]  Nor did Koss list the Texas-based third-party individual who had worked on Koss's own accused products, despite relying heavily on him at the transfer stage.  *Compare* Appx327-345 *with* Appx377-378 (Hytham Alihassan identified at transfer but not at trial).[5]  But Koss did indicate its intent to call *nine* of the California-based Apple employees that *Apple* had identified at the transfer stage—listing a tenth as a "may-call" witness—despite vigorously opposing the idea that many California-based Apple witnesses would be forced to travel for trial.  *Compare* Appx377-378 *with* Appx327-345.

In other words, just as Apple predicted more than a year before trial, a significant number of Apple employees would be required to travel from their homes in Northern California to Waco, Texas, to participate in this trial.  And this is not unusual: as Apple has previously explained, its witnesses in patent trials—in any venue—overwhelmingly come from Northern California.  *See In re Apple Inc.*,

---

[4] Koss did indicate its intent to call an Austin-based Apple employee who supports Apple Care functions, but only by playing a portion of his deposition.  Appx327-328.

[5] The other Austin-based non-party witness Koss had cited to oppose transfer was listed as one of 25 "may-call" witnesses—with only 10 hours of trial time available to Koss.  *See* Appx327-328.

No. 20-135, Dkt. 70, at 20 (Fed. Cir. Dec. 29, 2020) (noting that 87% of the 71 Apple employees who had testified live in patent trials since 2013 came from Northern California, with none coming from Texas).[6]

In short, to the extent the district court is concerned that parties are engaging in "transfer-driven speculation" that "fails to align with reality," experience demonstrates that the most reliable information is provided by a party's sworn testimony and assertions that are tested through the venue-discovery process, not by geography-driven speculation.

## II.    Apple Has No Other Adequate Means To Obtain Relief.

Mandamus is the only way for Apple to obtain relief here. Without this Court's intervention, the district court will not consider the transfer motion for more than eight additional months while forcing Apple to litigate the merits of this case. No appeal from final judgment could remedy the inconvenience and expense of litigating for almost a year in a venue with no connection to this dispute.

---

[6] According to Apple's records, this statistic for patent trials through August 2022 is now approximately 92% from Northern California, and none from Texas.

Time and again, this Court has explained that transfer motions "should unquestionably take top priority" in a case. *Apple*, 979 F.3d at 1337; *supra* 19. This Court has also made clear that mandamus relief is appropriate to resolve "a lengthy delay in ruling on a request for [transfer]," which "can amount to a denial of the right to have that request meaningfully considered." *Google*, 2015 WL 5294800, at *1. Such delays "frustrate … § 1404(a)'s intent to 'prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Id.* (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).

In other words, a party whose transfer motion sits on the docket for months gathering dust suffers the same harm—unfixable on appeal—as a party whose transfer motion is improperly denied. Both face the hassle and expense of litigating in an inconvenient venue that has little-to-no connection to the dispute. Compare *id.* at *2 (granting mandamus and ordering the district court to decide the transfer motion within 30 days while staying all other proceedings), and *SK hynix*, 835 F. App'x at 601 (the district court's "refusal to give priority to deciding the transfer issues demonstrates that SK hynix has no alternative

means by which to obtain [relief]"), *with Apple*, 979 F.3d at 1337 ("the possibility of an appeal in the transferee forum following a final judgment … is not an adequate alternative" (citation omitted)).

Here, absent this Court's intervention, and despite a fully briefed transfer motion and a related case proceeding in the Northern District of California, Apple will spend more than eight additional months litigating "[f]ull fact discovery," Appx2, in a district court that almost certainly will not rule on the merits of the case, *see infra* Part III.A (explaining the especially strong case for transfer here). And even if the district court ultimately grants Apple's motion to transfer this case, Apple cannot recover the time and resources that it will have spent litigating fact discovery and moving forward on the merits in the Western District of Texas. Eight months is an "egregious delay" that demonstrates "blatant disregard for precedent," and Apple "has no alternative means" besides mandamus to avoid that delay. *SK hynix*, 835 F. App'x at 600-01; *see TracFone Wireless*, 848 F. App'x at 900-01.

## III.  Mandamus Is Appropriate Here Because Apple Has A Strong Case For Transfer And The Equities Heavily Favor Apple.

Given the clear merits of Apple's underlying transfer motion, the equities surrounding the district court's sua sponte scheduling order, and the stark incongruity of this case remaining in the Western District of Texas while *Scramoge I* proceeds in the Northern District of California, mandamus is especially "appropriate under the circumstances" here.  *See Volkswagen II*, 545 F.3d at 311 (quoting *Cheney*, 542 U.S. at 381).  The district court's approach fundamentally undermines the purpose of § 1404(a) while giving Scramoge a mulligan after it twice chose not to seek any depositions from Apple.  Only a writ of mandamus directing the district court to promptly rule on Apple's pending transfer motion can prevent this harm.

### A.    The clearly superior convenience of the Northern District of California makes the court-mandated delay especially unjustified.

As explained above (at 17), the purpose of resolving a § 1404(a) motion is to prevent the parties from having to expend resources litigating in an inconvenient venue—and one that may not ultimately be the setting for trial.  Here, as Apple's fully briefed transfer motion in

this case and the successful motion to transfer in *Scramoge I*

demonstrate, this case has no connection to the Western District of

Texas, while the evidence, witnesses, third parties, and local interest

are overwhelmingly concentrated in the Northern District of California.

In short, this case involves the type of "stark contrast in relevance,

convenience, and fairness between the two venues" that compels

transfer. *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009).

Mandamus is therefore warranted to ensure that Apple is not forced to

litigate in a clearly inconvenient forum for another eight months before

its transfer motion is decided.

## 1. The private-interest factors strongly favor transfer.

The private-interest factors include: (1) "the relative ease of access

to sources of proof"; (2) "the availability of compulsory process to secure

the attendance of witnesses"; (3) "the cost of attendance for willing

witnesses"; and (4) "all other practical problems that make trial of a

case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at

315. These factors strongly favor transfer here.

*Sources of Proof.* The sources-of-proof factor "relates to the ease of

access to non-witness evidence, such as documents and other physical

evidence." *Apple*, 979 F.3d at 1339. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer," and therefore the location of the defendant's documentation tends to be the more convenient venue. *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). Here, the majority of Apple's relevant documents and business records are either in or more easily accessed from the Northern District of California, where Apple is headquartered. Appx54-58; Appx75; Appx77.

Meanwhile, there appear to be no sources of proof in or more easily accessed from the Western District of Texas. Scramoge, an Irish company, has no operations in that district. And despite ten weeks of venue discovery, Scramoge has otherwise identified no sources of proof in Texas. Scramoge's opposition on this factor depended almost entirely on leveling baseless attacks against Mr. Rollins's credibility. Appx89-95. This factor thus weighs heavily in favor of transfer. *See, e.g.*, *Juniper Networks*, 14 F.4th at 1321; *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010).

*Availability of Compulsory Process.* The availability of compulsory process weighs heavily in favor of transfer because there appears to be

"a substantial number of witnesses within the subpoena power of the Northern District of California and no witness who can be compelled to appear in the [Western] District of Texas." *Genentech*, 566 F.3d at 1345; *see also In re Hoffman-La Roche, Inc.*, 587 F.3d 1333, 1337-38 (Fed. Cir. 2009).  Apple has identified highly relevant third-party witnesses who could be compelled to appear in the Northern District of California, including at least five prior-art references, for which the inventor or assignees are located in the Northern District of California. Appx63-64.

By contrast, there do not appear to be any relevant third-party witnesses who would be subject to compulsory process in the Western District of Texas.  Scramoge's assertion otherwise ignored the record evidence and cited only third-party employees who do not work with the relevant team at Apple and thus have no information relevant to this litigation.  Appx108-109; Appx122.  The compulsory process factor thus weighs strongly in favor of transfer.  *See In re Apple Inc.*, No. 2021-181, 2021 WL 5291804, at *3 (Fed. Cir. Nov. 15, 2021).

*Witness Convenience.*  As this Court has explained, "the relative convenience for and cost of attendance of witnesses between the two

forums is 'probably the single most important factor in [the] transfer analysis.'" *Juniper Networks*, 14 F.4th at 1318 (quoting *Genentech*, 566 F.3d at 1343); *see also Nintendo*, 589 F.3d at 1198-99.  And here, that most important factor appears to weigh entirely in favor of transfer. *See, e.g.*, *Juniper Networks*, 14 F.4th at 1319; *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1379 (Fed. Cir. 2021).

Apple provided sworn testimony specifically identifying its technical and likely trial witnesses, including Apple engineers familiar with the accused technology and Apple employees knowledgeable about Apple's financial records, marketing initiatives, and patent licensing. All are in the Northern District of California, and no relevant team members are in Texas.  *See* Appx54-57; Appx64-68; Appx77-81. Witness convenience in the Northern District of California is further underscored by the overlap of relevant witnesses between this case and *Scramoge I*, which has been proceeding in the California forum since it was transferred there in May.  Appx210-211; Appx77-78.

Scramoge's opposition strategy was to scour LinkedIn for the profiles of Texas-based Apple employees.  Appx109-110.  Scramoge did not identify any of these individuals during venue discovery.  Appx163.

Nor did Scramoge seek to depose any of these witnesses, or any other Apple witness, to find out if they actually had relevant information. And they do not, as Apple's transfer reply and its response to Scramoge's motion to strike thoroughly demonstrated.  Appx104-112; Appx162-169.

### 2.    The public-interest factors also favor transfer.

The § 1404(a) public-interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Volkswagen II*, 545 F.3d at 315 (alteration in original).  Here, each of the public-interest factors that is not neutral favors transfer.

*Local Interests*.  Because of its "significant connections" with "the events that gave rise to [the] suit," the Northern District of California has a strong local interest.  *Apple*, 979 F.3d at 1344-45; *see also Juniper Networks*, 14 F.4th at 1319-20.  And since Scramoge has no known connections to the Western District of Texas, the local interest factor

strongly favors transfer. *Apple*, 979 F.3d at 1345. Scramoge's only response was to insist that certain unrelated, third-party employees from STM and TI that it had identified, despite having no demonstrated relevance, made the Western District of Texas the locus of local interest. Appx100-101.

*Court Congestion.* The relative congestion of the two courts—the Western District of Texas and Northern District of California—has at worst a neutral effect on the transfer analysis. This Court has repeatedly "noted that the Western District of Texas and the Northern District of California show no significant differences in caseload or time-to-trial statistics." *Juniper Networks*, 14 F.4th at 1322; *see also, e.g.*, *Samsung*, 2 F.4th at 1380-81. Scramoge's opposition ignored this precedent in arguing otherwise. Appx100.

## B.    The equities heavily favor Apple.

The simple fact that the district court ignored clear precedent and guaranteed months of delay before it will address Apple's transfer motion is enough to warrant mandamus relief. "[A] court must exercise its discretion within the bounds set by relevant statutes and relevant, binding precedents," and "mandamus is entirely appropriate to review

for an abuse of discretion that clearly exceeds the bounds of judicial discretion." *Volkswagen II*, 545 F.3d at 310.  But here, mandamus is especially warranted in view of how the district court's order came about and the effects it will have if permitted to stand.

To start, the district court's sua sponte scheduling order fundamentally undermines § 1404(a)'s purpose: "to 'prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Google*, 2015 WL 5294800, at *1 (quoting *Van Dusen*, 376 U.S. at 616).  Section 1404(a) serves that purpose only when district courts give transfer motions "top priority." *Apple*, 979 F.3d at 1337.  Here, if the district court's order stands, the parties will have done almost everything short of preparing for the pretrial conference before the district court rules on the transfer motion. *Supra* 20-21.

Likewise, the district court will have expended considerable resources familiarizing itself with the case to, among other things, resolve disputes over discovery and the asserted claims and prior art. *Id.*  But judicial efficiency requires that the "district court should not burden itself with the merits of the action until [the transfer motion] is

decided." *McDonnell Douglas*, 429 F.2d at 30.  If Apple's motion is

ultimately granted—as it should be, *see* Part III.A—another district

judge will receive a brand-new case that is well into litigation, in which

many issues have been resolved, and in which trial preparation is

underway according to another court's rules and preferences.  There is

no reason to burden a judge with that outcome.

There is particularly no reason to do so when no party has asked

for that result.  The district court denied Apple's unopposed request for

a two-day extension for its reply, citing the upcoming *Markman*

hearing—the same hearing that it rescheduled in its sua sponte

scheduling order for nearly a year later, a postponement neither party

requested.  And in moving to strike supposedly "new" evidence in

Apple's reply, Scramoge did not ask for more time to test the facts

contained in the new declarations.  On the contrary, the reply

declarations largely supplied the same information already in

Scramoge's possession, and which Scramoge had elected not to test

through the venue-discovery process, and what additional new

information was provided in the declarations were directly responsive to

the unfounded speculations Scramoge raised for the first time in its

response, instead of during the venue discovery process.  Scramoge does not seem to be interested in taking any additional steps to ensure "an accurate identification of the witnesses, parties, and evidence relevant to this case," Appx1.  Instead, like Koss and many other patent plaintiffs before it, Scramoge has asked the district court to resolve transfer by weighing Apple's sworn evidence against Scramoge's unsupported characterizations of Apple employees.  *Supra* 13, 26. There is no reason to delay the transfer analysis while litigation continues in an inconvenient forum.

Finally, "writs of mandamus are supervisory in nature and are particularly appropriate when the issues also have an importance beyond the immediate case." *Volkswagen II*, 545 F.3d at 319.  That is true here.  In the span of just a week, the district court issued the same merits-before-transfer scheduling order in at least four separate patent-infringement cases, including this one.  *Supra* 16.  This Court should weigh in before the district court adopts that unlawful scheduling order as its standard practice.

## CONCLUSION

The Court should issue a writ of mandamus directing the district court to vacate its scheduling order, rule on Apple's pending transfer motion, and stay all proceedings on the merits until transfer has been resolved.

Respectfully submitted,

*/s/ Melanie L. Bostwick*

| | |
|---|---|
| Steven D. Moore | Melanie L. Bostwick |
| KILPATRICK TOWNSEND & | Jonas Q. Wang |
|   STOCKTON LLP | ORRICK, HERRINGTON & |
| Two Embarcadero Center |   SUTCLIFFE LLP |
| Suite 1900 | 1152 15th Street NW |
| San Francisco, CA  94111 | Washington, DC  20005 |
| | (202) 339-8400 |
| Mansi Shah | |
| KILPATRICK TOWNSEND & | |
|   STOCKTON LLP | |
| 1302 El Camino Real, Suite 175 | |
| Menlo Park, CA  94025 | |
| | |
| Alton L. Absher III | |
| KILPATRICK TOWNSEND & | |
|   STOCKTON LLP | |
| 1001 West Fourth Street | |
| Winston-Salem, NC  27101 | |

*Counsel for Petitioner*

42

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the

Clerk of the Court for the United States Court of Appeals for the

Federal Circuit by using the appellate CM/ECF system on September 8,

2022.

A copy of the foregoing was served upon the following counsel of

record and the district court via email and FedEx:

> Andrea L. Fair
> WARD, SMITH & HILL, PLLC
> PO Box 1231
> Longview, TX 75606
> Tel: (903) 757-6400
> andrea@wsfirm.com
>
> Brett E. Cooper
> Seth R. Hasenour
> Drew B. Hollander
> BC Law Group, P.C.
> 200 Madison Avenue, 24th Floor
> New York, NY 10016
> Telephone: (516) 359-9668
> bcooper@b-clg.com
> shasenour@b-clg.com
> dhollander@b-clg.com
>
> Hon. Alan D Albright
> United States District Court for the Western District of Texas
> 800 Franklin Avenue, Room 301,
> Waco, Texas 76701
> Telephone: (254) 750-1501

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ Melanie L. Bostwick*
Melanie L. Bostwick
*Counsel for Petitioner*

# CERTIFICATE OF COMPLIANCE

The petition complies with the type-volume limitation of Fed. R. App. P. 21(d)(1) because this petition contains 7722 words.

This petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this petition has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in Century Schoolbook 14-point font.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ Melanie L. Bostwick*
Melanie L. Bostwick
*Counsel for Petitioner*

Exhibit 2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | | |
|---|---|---|
| **SCRAMOGE TECHNOLOGY LTD.,** | § | |
| *Plaintiff,* | § | |
| | § | |
| *v.* | § | **CIVIL NO. 6:21-CV-1071-ADA** |
| | § | |
| **APPLE INC.** | § | |
| *Defendant.* | § | |

## DISCOVERY AND SCHEDULING ORDER

Before the Court is Scramoge Technology LTD.'s ("Plaintiff") motion to strike improper new evidence in Apple Inc.'s ("Defendant") transfer reply brief. ECF No. 53. On August 24, Plaintiff filed its motion to strike parts of Apple's transfer reply brief, ECF No. 50, filed on August 17. The Markman hearing is set for August 30, 2022. After considering the motion and opposition, the Court hereby **GRANTS-IN-PART** Plaintiff's motion to strike.

A party may move to transfer a case for "the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404. As part of this inquiry, Courts look to the locations of the parties, the witnesses, and the evidence, among other factors. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).

The Court intends to make a fair, evidenced-based ruling on Defendant's pending motion to transfer, ECF No. 38, based on an accurate identification of the witnesses, parties, and evidence relevant to this case. Supplementing the record furthers this goal. In fairness, if one party raises new evidence or arguments in a motion, the Court will give the other party a fair opportunity to respond. Thus, the Court permits both parties to provide supplemental evidence and arguments. The Court will give Scramoge an opportunity to investigate and respond to the new facts and arguments that Apple raised for the first time on reply.

Full fact discovery will allow the parties to provide the Court with the best evidence for ruling on a motion to transfer. In this Court's experience, speculation and incompletely discovery often plagues early transfer motions. Before fact discovery, parties have not yet identified the relevant prior art to assert at trial, the relevant witnesses, the relevant third parties, or the relevant evidence. Thus, in early motions to transfer, the *Volkswagen* factors drive parties to identify witnesses and evidence based on location rather than relevance. Too frequently, such transfer-driven speculation about the witnesses and evidence fails to align with reality. At trial, the parties end up calling different witnesses, asserting different prior art, and presenting different evidence from what they identify in their transfer briefs. Requiring venue discovery to precede fact discovery also frequently leads to unnecessary discovery disputes about whether certain discovery requests fall into one bucket or the other. Indeed, the parties now present a needless venue discovery dispute to the Court regarding whether or not Apple adequately and timely disclosed its evidence and arguments or unfairly withheld them until after Scramoge filed its opposition brief. Apple should have provided all of its venue evidence and arguments during discovery; this evidence that will come out during fact discovery anyway.

Thus, the Court finds it prudent to have the parties to re-brief the motion to transfer in accordance with the appended schedule after the parties conduct fact discovery and determine which witnesses and evidence they intend to call at trial. In other similarly situated cases, Apple has repeatedly assured this Court that it would not oppose a continuance when Apple presented new evidence, and that a continuance would not affect the overall trajectory of this case because fact discovery should commence regardless of whether a continuance is or is not granted.

**IT IS HEREBY ORDERED** that:

1) Scramoge's motion-to-strike is **GRANTED-IN-PART**. The Court will, in lieu of striking Apple's new evidence and arguments, give Scramoge a full and fair opportunity to respond to the new evidence and arguments.

2) Full fact discovery is now open.

3) All other scheduled deadlines are vacated.

4) The parties shall meet and confer to file a joint motion to enter a scheduling order for replacement briefing based on the appended schedule within two weeks.

SIGNED this 26th day of August, 2022.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

## APPENDIX A – EXEMPLARY SCHEDULE

| Deadline | Item |
|---|---|
| 8 weeks after receiving or waiving service of complaint or 3 weeks after the CMC, whichever is later. | Deadline to file a motion for inter-district transfer. After this deadline, movants must seek leave of Court and show good cause for the delay. |
| 7 days before CMC | Plaintiff serves preliminary[1] infringement contentions in the form of a chart setting forth where in the accused product(s) each element of the asserted claim(s) are found. Plaintiff shall also identify the earliest priority date (*i.e.* the earliest date of invention) for each asserted claim and produce:  (1) all documents evidencing conception and reduction to practice for each claimed invention, and (2) a copy of the file history for each patent in suit. |
| 2 weeks after CMC | The Parties shall file a motion to enter an agreed Scheduling Order. If the parties cannot agree, the parties shall submit a separate Joint Motion for entry of Scheduling Order briefly setting forth their respective positions on items where they cannot agree. Absent agreement of the parties, the Plaintiff shall be responsible for the timely submission of this and other Joint filings. |
| 7 weeks after CMC | Defendant serves preliminary invalidity contentions in the form of (1) a chart setting forth where in the prior art references each element of the asserted claim(s) are found, (2) an identification of any limitations the Defendant contends are indefinite or lack written description under section 112, and (3) an identification of any claims the Defendant contends are directed to ineligible subject matter under section 101. Defendant shall also produce (1) all prior art referenced in the invalidity contentions, and (2) technical documents, including software where applicable, sufficient to show the operation of the accused product(s). |
| 9 weeks after CMC | Parties exchange claim terms for construction. |

---

[1] The parties may amend preliminary infringement contentions and preliminary invalidity contentions without leave of court so long as counsel certifies that it undertook reasonable efforts to prepare its preliminary contentions and the amendment is based on material identified after those preliminary contentions were served and should do so seasonably upon identifying any such material. Any amendment to add patent claims requires leave of court so that the Court can address any scheduling issues.

| 11 weeks after CMC | Parties exchange proposed claim constructions. |
|---|---|
| 12 weeks after CMC | Parties disclose extrinsic evidence. The parties shall disclose any extrinsic evidence, including the identity of any expert witness they may rely upon with respect to claim construction or indefiniteness. With respect to any expert identified, the parties shall identify the scope of the topics for the witness's expected testimony.[2]  With respect to items of extrinsic evidence, the parties shall identify each such item by production number or produce a copy of any such item if not previously produced. |
| 13 weeks after CMC | Deadline to meet and confer to narrow terms in dispute and exchange revised list of terms/constructions. |
| 14 weeks after CMC | Defendant files Opening claim construction brief, including any arguments that any claim terms are indefinite. |
| 17 weeks after CMC | Plaintiff files Responsive claim construction brief. |
| 19 weeks after CMC | Defendant files Reply claim construction brief. |
| 19 weeks after CMC | Parties to jointly email  the law clerks (*see* OGP at 1) to confirm their *Markman* date and to notify if any venue or jurisdictional motions remain unripe for resolution. |
| 21 weeks after CMC | Plaintiff files a Sur-Reply claim construction brief. |
| 3 business days after submission of sur-reply | Parties submit Joint Claim Construction Statement and email the law clerks an editable copy.<br><br>*See* General Issues Note #7 regarding providing copies of the briefing to the Court and the technical advisor (if appointed). |
| 22 weeks after CMC (but at least 10 days before *Markman* hearing) | Parties submit optional technical tutorials to the Court and technical advisor (if appointed). |
| 23 weeks after CMC (or as soon as practicable)[3]<br><br>---DELAYED--- | *Markman* Hearing at 9:00 a.m. This date is a placeholder and the Court may adjust this date as the *Markman* hearing approaches. |

---

[2] Any party may utilize a rebuttal expert in response to a brief where expert testimony is relied upon by the other party.
[3] All deadlines hereafter follow the original *Markman* hearing date and do not change if the Court delays the *Markman* hearing.

| | The Markman hearing is delayed until the Court resolves the transfer motion. |
|---|---|
| 1 business day after *Markman* hearing | Fact Discovery opens; deadline to serve Initial Disclosures per Rule 26(a). |
| 6 weeks after *Markman* hearing | Deadline to add parties. |
| 8 weeks after *Markman* hearing | Deadline to serve Final Infringement and Invalidity Contentions. After this date, leave of Court is required for any amendment to infringement or invalidity contentions. This deadline does not relieve the parties of their obligation to seasonably amend if new information is identified after initial contentions. |
| 16 weeks after *Markman* hearing | Deadline to amend pleadings. A motion is not required unless the amendment adds patents or patent claims. (Note: This includes amendments in response to a 12(c) motion.) |
| **26 weeks after *Markman*** | **Deadline for the first of two meet and confers to discuss significantly narrowing the number of claims asserted and prior art references at issue to triable limits (10 hours of trial per side).** |
| **29 weeks after *Markman*** | **Deadline for the second of two meet and confers to discuss significantly narrowing the number of claims asserted and prior art references at issue to triable limits. Unless the parties agree to the narrowing, they are ordered to contact the Court's law clerk to arrange a teleconference with the Court to resolve the disputed issues.** |
| 30 weeks after *Markman* hearing | Close of Fact Discovery. <br><br> **Parties shall exchange preliminary exhibit lists and witness lists.  The preliminary exhibit lists and witness lists may be freely amended in good faith so long as the amendments do not amount to transfer motion gamesmanship.** |
| **32 weeks after *Markman*** | **Deadline for Plaintiff's replacement transfer opposition brief (15 pages).** |
| **34 weeks after *Markman*** | **Deadline for Defendant's replacement transfer reply brief (15 pages).** |

| 36 weeks after *Markman* | Deadline for Defendant's replacement transfer sur-reply brief (10 pages). |
|---|---|
| **40 weeks after *Markman hearing*** | Markman hearing delayed to this date. |
| **42** weeks after *Markman* hearing | Opening Expert Reports. |
| **45** weeks after *Markman* hearing | Rebuttal Expert Reports. |
| **48** weeks after *Markman* hearing | Close of Expert Discovery. |
| **50** weeks after *Markman* hearing | Dispositive motion deadline and *Daubert* motion deadline.<br><br>See General Issues Note #7 regarding providing copies of the briefing to the Court and the technical advisor (if appointed). |
| **52** weeks after *Markman* hearing | Serve Pretrial Disclosures (jury instructions, exhibits lists, witness lists, discovery and deposition designations). |
| **54** weeks after *Markman* hearing | Serve objections to pretrial disclosures/rebuttal disclosures. |
| **55**  weeks after *Markman* hearing | Serve objections to rebuttal disclosures; file Motions *in limine.* |
| **56** weeks after *Markman* hearing | File Joint Pretrial Order and Pretrial Submissions (jury instructions,  **final** exhibits lists,  **final** witness lists, discovery and deposition designations); file oppositions to motions *in limine* |
| **57** weeks after *Markman* hearing | File Notice of Request for Daily Transcript or Real Time Reporting. If a daily transcript or real time reporting of court proceedings is requested for trial, the party or parties making said request shall file a notice with the Court and email the Court Reporter, Kristie Davis at kmdaviscsr@yahoo.com<br><br>Deadline to meet and confer regarding remaining objections and disputes on motions *in limine.* |
| 8 weeks before trial | Parties to jointly email the Court's law clerk (*See* OGP at 1) to confirm their pretrial conference and trial dates. |

| 3 business days before Final Pretrial Conference. | File joint notice identifying remaining objections to pretrial disclosures and disputes on motions *in limine*. |
| --- | --- |
| **59** weeks after *Markman* hearing (or as soon as practicable) | Final Pretrial Conference. Held in person unless otherwise requested. |
| **60** weeks after *Markman* hearing (or as soon as practicable)[4] | Jury Selection/Trial. |

---

[4] If the actual trial date materially differs from the Court's default schedule, the Court will consider reasonable amendments to the case schedule post-*Markman* that are consistent with the Court's default deadlines in light of the actual trial date.

Exhibit 3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| SCRAMOGE TECHNOLOGY LTD., | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 6:21-cv-01071-ADA |
| v. | § | |
| | § | |
| APPLE INC., | § | |
| | § | **DEMAND FOR JURY TRIAL** |
| Defendant. | § | |

## APPLE INC.'S OPPOSED MOTION TO STAY PROCEEDING PENDING MANDAMUS REVIEW

Defendant Apple, Inc. ("Apple") respectfully moves the Court for a stay of all proceedings in this Court pending the resolution of Apple's Petition for Writ of Mandamus to the Court of Appeals for the Federal Circuit, filed September 8, 2022 (the "Petition"). A copy of the Petition (without Exhibits) is attached here as Exhibit A.

## I.    INTRODUCTION

The Discovery and Scheduling Order (the "Order"), DE 56, violates Fifth and Federal Circuit precedent instructing district courts to give top priority to transfer motions and to address them at the outset of litigation, before addressing any substantive portion of the case. The Order postpones the transfer decision until after fact discovery, the deadline to add parties, the final contention deadline, the pleading amendment deadline, two rounds of compulsory claim/prior art combination narrowing, and the commencement of pretrial disclosure exchanges. This *sua sponte* schedule amendment violates the Federal Circuit's command that trial courts may not frustrate 28 U.S.C. § 1404 (a)'s purpose by forcing the parties here "to expend resources litigating substantive matters in an inconvenient venue while a motion to transfer lingers unnecessarily on the docket." *In re Google Inc.*, No. 2015-138, 2015 WL 5294800, at \*1 (Fed. Cir. 2015). The Federal Circuit has made clear that a district court's significant delay in ruling on a transfer motion merits mandamus relief.

Apple respectfully submits that the Petition raises at least a "substantial case on the merits," which weighs in favor of a stay. *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 513 (Fed. Cir. 1990). All other traditional factors also weigh in favor of a stay at this time. Thus, a short and immediate stay of litigation during mandamus review is warranted. *See id.*; *Team Worldwide Corp. v. Wal-Mart Stores, Inc.*, No. 2:17-CV-00235-JRG, 2018 WL 2722051, at \*2 (E.D. Tex. June 6, 2018) (applying the traditional stay factors in the mandamus context).

## II.    APPLICABLE LAW

District courts possess an inherent power to manage their own docket, including the power to stay proceedings. *Clinton v. Jones*, 520 U.S. 681, 706 (1997). District courts traditionally look to four factors in determining whether a stay is appropriate when an order is

subject to appellate review: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009); *see also Team Worldwide*, 2018 WL 2722051, at *2.

Even where a district court does not agree that the appeal is "likely to succeed on the merits," the Federal Circuit has held that this factor is relaxed "'where [the] movant . . . can nonetheless demonstrate a *substantial case* on the merits,' *provided* the other factors militate in movant's favor." *Standard Havens*, 897 F.2d at 513; *see, e.g.*, *In re Deutsche Bank Tr. Co. Americas*, 605 F.3d 1373, 1377 (Fed. Cir. 2010) (Federal Circuit granted stay pending resolution of mandamus proceeding). Similarly, the Fifth Circuit holds that although each part of the test must be met, a "movant need not always show a 'probability' of success on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of equities weighs heavily in favor of granting the stay." *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981); *see also Campaign for S. Equality v. Bryant*, 773 F.3d 55, 57 (5th Cir. 2014) (same).

Applying this standard, other district courts in Texas have granted stays of proceedings in patent cases pending the Federal Circuit's resolution of a petition for writ of mandamus. *See, e.g.*, Order for Stay, *Raytheon Co. v. Cray, Inc.*, No. 2:15-CV-01554-JRG (E.D. Tex. July 18, 2017), ECF No. 315; *Queens Univ. at Kingston v. Samsung Elecs. Co.*, No. 2:14-cv-43-JRG-RSP, 2015 WL 10936048 (E.D. Tex. Aug. 28, 2015).

## III. ARGUMENT

### A. Apple has presented a substantial case on the merits of its appeal.

A stay is appropriate where the movant can "demonstrate a *substantial case* on the

- 2 -

merits," provided the other factors militate in the movant's favor. *Standard Havens*, 897 F.2d at 513; *see also Ruiz*, 650 F.2d at 565 ("If a movant were required in every case to establish that the appeal would probably be successful, the Rule would not require as it does a prior presentation to the district judge whose order is being appealed.") That standard is satisfied here.

Both the Federal Circuit and Fifth Circuit have held that a request for transfer is a threshold matter that a district court must address at the outset of litigation. *E.g.*, *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013) (non-precedential) (noting the "the importance of addressing motions to transfer at the outset of litigation"); *In re Nintendo Co.*, 544 F. App'x 934, 941 (Fed. Cir. 2013) ("[A] trial court must first address whether it is a proper and convenient venue before addressing any substantive portion of the case."); *In re Horseshoe Ent.*, 337 F.3d 429, 433 (5th Cir. 2003) (stating that disposition of transfer motion "should have taken a top priority" in the litigation). The transfer statute is designed "to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 27 (1960). But that goal is "thwarted" when defendants must participate in protracted litigation before transfer is resolved. *EMC*, 501 F. App'x at 976; *see also In re Apple*, 979 F.3d 1332, 1339 (Fed. Cir. 2020) (faulting district court for "barrel[ing] ahead on the merits in significant respects," including overseeing discovery disputes and claim construction, before issuing a transfer decision). Indeed, the Federal Circuit has repeatedly endorsed the Third Circuit's precedent holding that "it is not proper to postpone consideration of the application for transfer under § 1404(a) until discovery on the merits is completed, since it is irrelevant to the determination of the preliminary question of transfer." *McDonnell Douglas Corp. v. Polin*, 429 F.2d 30, 30-31 (3d Cir. 1970)

(vacating order that required all merits discovery to be completed before district court would resolve transfer motion).[1]

When district courts fail to afford that priority to transfer motions, the Federal Circuit has used its mandamus authority to ensure that those courts do not "frustrate 28 U.S.C. § 1404(a)'s intent" by forcing litigants "to expend resources litigating substantive matters in an inconvenient venue while a motion to transfer lingers unnecessarily on the docket." *Google*, 2015 WL 5294800, at *1; *see also In re SK hynix Inc.*, 835 F. App'x 600, 600-01 (Fed. Cir. 2021) (non-precedential); *In re TracFone Wireless, Inc.*, 848 F. App'x 899, 901 (Fed. Cir. 2021) (non-precedential); *cf. In re Netflix, Inc.*, No. 2021-190, 2021 WL 4944826, at *1 (Fed. Cir. Oct. 25, 2021) ("Delays in resolving transfer motions, coupled with ongoing discovery, claim construction, and other proceedings, frustrate the purpose of § 1404(a).") (denying mandamus because magistrate had ruled on venue motion after petition was filed).

The Order is directly contrary to the foregoing precedent. While it defers the *Markman* hearing and claim-construction order "until the Court resolves the transfer motion," DE 56 at 6, the scheduling order here guarantees that the Court and parties will undertake many other important substantive steps in this case before the Court determines whether the Western District is the venue where trial will ultimately take place. Most notably, the Order ensures that this Court will oversee all of fact discovery, including resolving any discovery disputes pursuant to its own procedures for resolving discovery disputes. *See*, OGP Version 4.1 at 3–5. But the Federal Circuit has specifically identified these steps as ones that should await a transfer decision. *See Apple*, 979 F.3d at 1338 (faulting district court for holding "a discovery hearing and issu[ing] a corresponding

---

[1] *See Apple*, 979 F.3d at 1337; *Google*, 2015 WL 5294800, at *1; *Nintendo*, 544 F. App'x at 941; *EMC*, 501 F. App'x at 975 n.1; *In re Fusion-IO, Inc.*, 489 F. App'x 465, 466 (Fed. Cir. 2012) (non-precedential).

discovery order"); *SK hynix*, 835 F. App'x at 600-01 (staying "all discovery" until transfer was resolved and faulting district court for "order[ing] the parties to engage in extensive discovery"); *Google*, 2015 WL 5294800, at *1 (faulting district court for "proceeding through to the close of fact discovery" and conducting "a hearing related to several discovery disputes").

In addition, the Order ensures that the parties must complete multiple other substantive steps here in the Western District of Texas before this Court will consider whether this case should be transferred to the Northern District of California. In particular, the parties must comply with deadlines to: add parties; serve final infringement and invalidity contentions under this Court's Standing Orders; amend pleadings; narrow the asserted claims and prior art according to this Court's Standing Orders (any disputes over which this Court will resolve); and exchange preliminary exhibit and witness lists for trial. All of this will take place before the parties are even permitted to resume briefing on Apple's transfer motion. In short, the Order guarantees that the parties will expend significant resources and the case will substantially progress on the merits, all in a forum that ultimately may not preside over the case.

Furthermore, this substantive progress will take significant time. Apple filed its motion to transfer in May 2022. Under this Court's scheduling order, that motion will not be fully briefed until a full year later, when Apple files a sur-reply in May 2023. *See* DE 56 at 7 (setting sur-reply deadline for 36 weeks after originally scheduled *Markman* hearing in August 2022). That is a significantly longer delay than the type the Federal Circuit has previously found to be unacceptable in the transfer context and to warrant mandamus relief. *See Google*, 2015 WL 5294800, at *1 (delay of 8 months from filing of motion); *TracFone*, 848 F. App'x at 900 (same); *SK hynix*, 835 F. App'x at 600-01 (same); *cf. Horseshoe Ent.*, 337 F.3d at 433 (Fifth Circuit faulting district court for "wait[ing] some 13 months" to rule on transfer).

**B.**     **The remaining factors militate in Apple's favor.**

This Court next must consider whether the other three factors "militate in [the] movant's favor." *Standard Havens*, 897 F.2d at 513. Those factors are: (1) whether the movant will suffer irreparable harm absent a stay; (2) whether the non-movant will suffer injury if the stay is granted; and (3) whether a stay serves the public interest. *Nken*, 556 U.S. at 434. Here, each weighs in favor of granting a stay.

Apple will be "irreparably injured absent a stay." *Id.* at 426. Absent a stay, this case will likely proceed to substantive issues within days, and for the next eight months. But if Apple prevails on its mandamus petition, and this Court is ordered to consider Apple's transfer motion now, this Court will have erred in addressing substantive issues. And the parties will have been forced to spend time and resources litigating in an inconvenient venue that ultimately might not try this case. *See TracFone Wireless*, 848 F. App'x at 900. These harms could not be remedied after the fact. Once this Court proceeds to substantive review of this case, the "prejudice suffered cannot be put back in[to] the bottle." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 319 (5th Cir. 2008) (en banc). The threat of those harms confirms that a stay is warranted. *See SK hynix*, 835 F. App'x at 601 (partially granting mandamus relief, including a stay of "all proceedings concerning . . . substantive issues" until the resolution of a transfer motion, as the petitioner had "no alternative means by which to obtain" such relief).

Unlike the costs imposed on Apple, any injury caused to Scramoge by a short stay of this case could be adequately compensated through ordinary damages principles. The delay is expected to be short; the Federal Circuit has recently resolved similar mandamus petitions within two weeks. *See, e.g.*, *TracFone*, 848 F. App'x at 899 (mandamus granted six days after petition was filed); *SK hynix Inc.*, 835 F. App'x at 600–01 (mandamus granted ten days after

petition was filed). Such a stay would not affect Scramoge's claims or potential relief in any way because Scramoge does not produce or sell any products and it does not compete with Apple. *See Cellular Commc'ns Equip., LLC v. Samsung Elecs. Co.*, No. 6:14-CV-759, 2015 WL 11143485, at *2 (E.D. Tex. Dec. 16, 2015) ("When a patentee seeks exclusively monetary damages, as opposed to a preliminary injunction or other relief, 'mere delay in collecting those damages does not constitute undue prejudice.'") (quoting *Crossroads Sys., Inc. v. Dot Hill Sys. Corp.*, No. 13-CA-1025, 2015 WL 3773014, at *2 (W.D. Tex. June 16, 2015)).

Finally, there is "a general public policy of preserving judicial resources from the risk of reversal." *Weingarten Realty Invs. v. Miller*, 661 F.3d 904, 913 (5th Cir. 2011). Such a policy favors staying district court proceedings where, as here, an important question is presented on appeal, the district court's order could be overturned, and the movant has presented a substantial case on the merits.

## IV. CONCLUSION

For the foregoing reasons, this Court should grant the motion to stay pending resolution of the Petition and order an immediate stay of all deadlines, activities, and proceedings in this case.

Dated: September 8, 2022

Respectfully submitted,

*/s/ J. Stephen Ravel*
J. Stephen Ravel
Texas State Bar No. 16584975
**Kelly Hart & Hallman LLP**
303 Colorado, Suite 2000
Austin, Texas 78701
Tel: (512) 495-6429
Email: steve.ravel@kellyhart.com

*Attorneys for Defendant, Apple Inc.*

Steven D. Moore (admitted in W.D. Tex.)
Rishi Gupta (*pro hac vice*)
**Kilpatrick Townsend & Stockton LLP**
Two Embarcadero Center Suite 1900
San Francisco, CA USA 94111
Tel: (415) 576-0200
Fax: (415) 576-0300
Email: smoore@kilpatricktownsend.com
Email: rgupta@kilpatricktownsend.com

Alton L. Absher III (admitted in W.D. Tex.)
Andrew W. Rinehart (*pro hac vice*)
**Kilpatrick Townsend & Stockton LLP**
1001 West Fourth Street
Winston-Salem, NC 27101-2400
Tel: (336) 607-7300
Fax: (336) 607-7500
Email: aabsher@kilpatricktownsend.com
Email: arinehart@kilpatricktownsend.com

Mansi H. Shah (*pro hac vice*)
**Kilpatrick Townsend & Stockton LLP**
1080 Marsh Road
Menlo Park, CA 94025
Tel: (650)752-2445
Fax: (650) 618-8641
Email: mansi.shah@kilpatricktownsend.com

Amanda N. Brouillette (*pro hac vice*)
**Kilpatrick Townsend & Stockton LLP**
1100 Peachtree Street NE, Suite 2800
Atlanta, GA 30309
Tel: (404) 685-6775
Fax: (404) 541-3335
Email: abrouillette@kilpatricktownsend.com

Kasey E. Koballa (*pro hac vice*)
**Kilpatrick Townsend & Stockton LLP**
4208 Six Forks Road Suite 1400
Raleigh, NC 27609
Tel: (919) 420-1712
Fax: (202).315-3024
Email: kkoballa@kilpatricktownsend.com

Christopher P. Schaffer (*pro hac vice*)
**Kilpatrick Townsend & Stockton LLP**
12255 El Camino Real, Suite 250
San Diego, CA 92130
Tel: (858) 350-6161
Fax: (858) 408-3428
Email:  cschaffer@kilpatricktownsend.com

## <u>CERTIFICATE OF CONFERENCE</u>

The undersigned certifies counsel have conferred. Plaintiff opposes the relief sought.

Accordingly, the Motion is presented to the Court for resolution.

*/s/ J. Stephen Ravel*
J. Stephen Ravel

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record are being served with a copy of the foregoing

document via the Court's CM/ECF system on September 8, 2022.

*/s/ J. Stephen Ravel*
J. Stephen Ravel

Exhibit 4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| XR COMMUNICATIONS d/b/a<br>VIVATO TECHNOLOGIES,<br>*Plaintiff,*<br><br>*v.*<br><br>APPLE INC.<br>*Defendant.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **CIVIL NO. 6:21-CV-00620-ADA** |

## <u>DISCOVERY AND SCHEDULING ORDER</u>

This Order hereby vacates its earlier Discovery and Scheduling Order, ECF No. 68, and

substitutes this Discovery and Scheduling Order to set the more organized schedule attached in

Appendix A used in other cases.

**A. General Organization of the Court's Default Schedule**

The Court's default schedule is generally organized into the following stages: pleadings,

optional transfer briefing, initial contentions, early *Markman*, fact discovery, expert discovery,

substantive motions, pretrial conference, and trial. *See, generally*, Standing Order Governing

Proceedings in Patent Cases 4.1 ("OGP").

At the initial contentions stage, parties exchange their initial infringement and invalidity

theories. Unlike many other courts, this Court holds and early *Markman* hearing and defers fact

discovery until after the *Markman* hearing. OGP at 13. This Court does so to protect defendants

from frivolous plaintiffs who seek settlements based not on merit but based on the burden of fact

discovery, a tactic referred to "patent-trolling." Hence, the Court's default schedule defers fact

discovery until after the *Markman* hearing so that parties can cost-effectively reach the first merit

milestone in a case. *Greenthread, LLC v. Intel Corp.*, No. 6:22-CV-00105-ADA, 2022 WL

4004781, at *5 (W.D. Tex. Sept. 1, 2022).

1

After the *Markman* hearing, the default schedule provides for fact discovery, followed by expert discovery. After discovery, substantive motions are due. With few exceptions such as venue and jurisdictional motions, the Court hears and rules on all substantive, merit-based motions at the pretrial conference, which usually occurs about a week before trial. Statistically, the vast majority of cases will settle before the pretrial conference or trial. This procedure allows the Court to effectively manage its docket and avoid case congestion.

**B. History of the Court's Transfer Motion Procedures**

On November 20, 2020, the Federal Circuit ruled that "a *Markman* hearing and claim construction order are two of the most important and time-intensive substantive tasks a district court undertakes in a patent case." *In re Apple Inc.*, 979 F.3d 1332, 1338 (Fed. Cir. Nov. 9, 2020). Less than three months later, the Federal Circuit ordered, "the district court must stay all proceedings concerning the substantive issues in the case until such time that it has issued a ruling on the transfer motion." *In re SK hynix Inc.*, 835 F. App'x 600, 601 (Fed. Cir. Feb. 1, 2021).

To comply, this Court immediately began delaying its *Markman* hearings until it issued orders on pending inter-district transfer motions. *See, e.g.*, Order Resetting Markman Hearing, *paSafeShare LLC v. Microsoft Corp.*, 6:20-cv-00397-ADA, (W.D. Tex. Feb. 9, 2021) ECF No. 40 (rescheduling *Markman* hearings in view of pending transfer motion). The OGP has a standing order to this effect. OGP at 5–6. The OGP also allowed for limited "venue discovery" before the *Markman* hearing. *Id.* at 5.

Parties then began abusing this process under an earlier version of the OGP. Defendants strategically waited to file their transfer motions to delay the case. After the permitted venue discovery, transfer motion briefing would not ripen by the *Markman* hearing, preventing this Court from issuing timely rulings. *See, e.g.,* Apple Inc.'s Status Report, *Scramoge Tech. Ltd. v. Apple*

*Inc.*, 6:21-cv-00579-ADA (W.D. Tex. Feb. 8, 2022) ECF No. 54 ("the motion will not be fully briefed and ready for resolution any earlier than March 14, 2022. The Markman hearing in this case is set for March 8, 2022"). This delay tactic employed by defendants forced the Court to unnecessarily reschedule the *Markman* hearings at the great inconvenience of all parties. To curb this abuse, the latest OGP requires transfer motions to be filed earlier and opens fact discovery after the originally scheduled *Markman* date, regardless of whether the *Markman* hearing is delayed. OGP at 6.

      The venue dispute process should work as follows. So that this Court can prioritize transfer motions early in a case in accordance with the Federal Circuit's order, defendants may file a motion to transfer venue early in the case, along with evidence and declarations. OGP at 5–6; *In re SK hynix Inc.*, 835 F. App'x at 601. Venue discovery then automatically opens. OGP at 5. Plaintiffs will serve venue discovery requests and depose witnesses. Defendants provide the requested discovery. Then, plaintiffs file their opposition supported by evidence uncovered during venue discovery. Defendants then file their reply. This allows the Court to make a fair, evidence-based ruling. However, both plaintiffs and defendants have repeatedly frustrated the Court by failing to present the Court the evidence needed to make a fair ruling.

## C. The General Need for a Revised Schedule

      A party may move to transfer a case for "the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404. As part of this inquiry, Courts look to the locations of the parties, the witnesses, and the evidence, among other factors. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).

      The Court intends to make a fair, evidenced-based ruling on Defendant's pending motion to transfer, ECF No. 22, based on an accurate identification of the witnesses, parties, and evidence

relevant to this case. Supplementing the record furthers this goal. In fairness, if one party raises new evidence or arguments in a motion, the Court will give the other party a fair opportunity to respond. Thus, the Court permits both parties to provide supplemental evidence and arguments. The Court will give Plaintiff an opportunity to investigate and respond to the new facts and arguments that Apple wishes to supplement.

Full fact discovery will allow the parties to provide the Court with the best evidence for ruling on a motion to transfer. In this Court's experience, speculation and incomplete discovery often plagues early transfer motions. Before fact discovery, parties have not yet identified the relevant prior art to assert at trial, the relevant witnesses, the relevant third parties, or the relevant evidence. Thus, in early motions to transfer, the *Volkswagen* factors drive parties to identify witnesses and evidence based on location rather than relevance. Too frequently, such transfer-driven speculation about the witnesses and evidence fails to align with reality. At trial, the parties end up calling different witnesses, asserting different prior art, and presenting different evidence from what they identify in their transfer briefs. Requiring venue discovery to precede fact discovery also frequently leads to unnecessary disputes about whether certain discovery requests fall into one bucket or the other. *See, e.g.,* Discovery Order, *LPP Combustion, LLC v. General Electric Co.*, 6:21-CV-1343-ADA-DTG (W.D. Tex. May 13, 2022) ECF No. 34 (ruling on venue discovery dispute). These types of disputes waste judicial resources—fact discovery will eventually open and parties will have to turn over the evidence anyway, so disputing about whether a request qualifies as "venue" discovery at most delays the production.

Indeed, the parties now present a needless venue discovery dispute to the Court regarding whether or not Apple adequately and timely disclosed its evidence and arguments or unfairly withheld them until after Plaintiff filed its opposition brief. ECF No. 55. Apple should have

provided all its venue evidence and arguments during venue discovery; this evidence that will come out during fact discovery anyway.

Thus, the Court finds it prudent to have the parties to re-brief the motion to transfer in accordance with the appended schedule after the parties conduct fact discovery and determine which witnesses and evidence they intend to call at trial. In other similarly situated cases, Apple has assured this Court that it would not oppose a continuance when Apple presented new evidence, and that a continuance would not affect the overall trajectory of this case because fact discovery would commence regardless of whether a continuance is or is not granted.

## D. Effects of the Revised Schedule

The scheduling order in Appendix A moves the completion of transfer motion briefing and the *Markman* hearing until after the conclusion of fact discovery so that the parties can fully uncover and identify all relevant parties and evidence instead of speculating about the same.

The parties are now required to narrow their asserted claims and prior art during the discovery period. By narrowing the asserted prior art, the parties can determine which, if any, prior art witnesses will actually attend trial rather than speculate about it. Defendants routinely repeatedly abused the transfer factors by serving "cherry picked" initial invalidity contentions happen to include a disproportionate amount of prior art listing inventors who reside in the destination venue. *See Fintiv, Inc. v. Apple Inc.*, No. 6:18-CV-00372-ADA, 2019 WL 4743678, at *5 (W.D. Tex. Sept. 13, 2019) ("Fintiv accuses Apple of 'cherry-picking' prior art witnesses"). The Federal Circuit found it error to disregard prior art witnesses, even though they are statistically unlikely to testify at trial. *In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *3 (Fed. Cir. Aug. 2, 2021). At this point, the Court is unable to peek into the future and accurately see which witnesses will attend trial. Thus, to stop such cherry-picking gamesmanship and to give the Court

the facts needed to make a fair ruling, the Court is deferring its decision on this factor until the parties have narrowed down their prior art contentions and identified the few prior artists who will actually testify at trial.

Based on the same reasoning, the revised schedule requires the parties to exchange preliminary witness lists at the close of discovery. The preliminary witness lists may be freely amended in good faith so long as the amendments do not amount to transfer motion gamesmanship. This benefits everyone by preventing the parties from speculating that certain witnesses have relevant information based on keywords in Linked-In profiles, news articles, third-party reports, and other possibly inaccurate hearsay.

Based on the same reasoning, the revised schedule requires the parties to exchange preliminary exhibit lists at the close of discovery.  The preliminary exhibit lists may be freely amended in good faith so long as the amendments do not amount to transfer motion gamesmanship. This Court has been plagued by transfer motions where parties guess at the volume of evidence or fail to identify any evidence, preventing the Court from accurately determining which venue is most convenient. Instead, parties routinely suggest that any evidence will be found alongside custodians—thereby improperly double counting the location of witnesses in the transfer factors. Here, the parties are disputing whether Apple's manufacturer in Austin has the same quantity of evidence as ███████ in California. ECF No. 29 at 4. Proceeding to fact discovery and allowing the parties to serve their discovery requests will yield an accurate answer.

After the close of fact discovery, Plaintiff may file an opposition brief based on the facts uncovered during discovery. Then, Defendant can file its reply brief, also including any evidence uncovered during discovery. Plaintiff may then file a short sur-reply that responds to any new evidence or argument Defendant raises on reply.

With a better evidentiary record after full fact discovery, the Court will then rule on the transfer motion. Thereafter, the Court will hold the *Markman* hearing. As mandated by the Federal Circuit, the *Markman* hearing will occur after the Court issues its transfer opinion. *In re SK hynix Inc.*, 835 F. App'x at 601. Expert reports and substantive motions are not due until even later in the case. Per its usual practice, Court intends to hear and rule on any substantive motions at the pretrial conference that will not take place until about a week before trial.

The revised schedule has the unfortunate effect of delaying the *Markman* hearing, which prevents defendants from quickly reaching the first merit milestone in a patent case. But when a defendant files a motion to transfer knowing that the OGP automatically imposes the burden of venue discovery, the defendant values transfer more than cost-effectively reaching the *Markman* hearing as the Court originally intended.

**E. Historically, Apple has evaded venue discovery and supplied questionable evidence.**

As a trial court, this Court handles many motions to transfer and is well-positioned to assess the comparable credibility of parties and their witnesses. The Court expects parties to respond fully to venue discovery requests and expects 30(b)(6) declarants to adequately investigate and prepare for their deposition topics. When the Court has all relevant facts and evidence, it can rule on a transfer motion. The Court compares the discovery and evidence provided by comparable high-tech defendants to show how forthcoming they appear:

Meta (formerly Facebook) has demonstrated exceptional candor before this Court. Meta routinely relies on declarations by Mr. Nicholas Wong to support transfer motions. This Court found "the Declaration of Nicholas Wong to be credible and convincing. Mr. Wong carefully investigated the underlying facts that form the basis of his knowledge, identified the basis of his knowledge, made mostly clear and unqualified statements of fact, made statements consistent with

Defendants' thoroughly prepared interrogatory responses, avoided making uninformed statements, avoided testifying about topics that he lacks knowledge of, and mostly avoids using vague and crafty language." *VoIP-Pal.com, Inc. v. Meta Platforms, Inc.*, No. 6:21-CV-00665-ADA, 2022 WL 2110696, at *3 (W.D. Tex. May 31, 2022) (hereinafter "Meta Case"). In support of its motion, Meta supplied the Court with an interrogatory response identifying the name, location, team name, and employment title of every employee in every group that the plaintiff contended was relevant to the case. Meta Case at ECF No. 40-11 (sealed interrogatory response). Whatever investigation Meta did, it was thorough—Meta found the relevant employees scattered in Texas, California, and in other states. Meta had nothing to hide, and no opposing evidence contradicted Meta's representations to this Court. This Court transferred the case based on Meta's candor and thorough discovery response. Meta Case at *3.

Google routinely relies on Mr. Rope as a venue declarant. In a recent case, he filed a declaration supporting a motion to transfer by Google, and the opposing party challenged Mr. Rope's credibility. *Motion Offense, LLC v. Google LLC*, No. 6:21-CV-00514-ADA, 2022 WL 3723303, at *2 (W.D. Tex. Aug. 29, 2022) (hereinafter "Google Case"). The Court found his declaration acceptable but limited to certain products and types of employees. *Id.* "He conducted a multi-day investigation, interviewed more than twenty individuals, and attempted to answer his deposition questions directly rather than evasively. Although Mr. Rope received some information from counsel and routinely received warnings not to divulge information from counsel, he nonetheless conducted an independent investigation. His investigation uncovered evidence that weighs against transfer, such as the witness . . . in Austin." *Id.* (internal citations omitted). Mr. Rope has time to investigate the facts because he performs these types of investigations for Google as his full-time job. *Id.* The opposing party ultimately presented evidence of numerous types of

employees who worked on other accused products that Mr. Rope never identified, but this did not contradict Mr. Rope's testimony because Mr. Rope made clear that his declaration was limited only to certain products and to certain types of employees. *Id.*

Apple has a history of evading its discovery obligations. In response to an interrogatory for details about the location of its servers, Apple responded "the details regarding Apple's servers are wholly irrelevant to the issue of the convenience of venue under 28 U.S.C. § 1404(a), especially given Apple has already represented that electronic documents concerning the Apple Products reside on local servers located or accessible in or around NDCA." *Scramoge Tech. Ltd. v. Apple Inc.*, No. 6:21-CV-00579-ADA (W.D. Tex. Mar. 22, 2022) ECF No. 67 at 4. The location of Apple's servers directly relates to the transfer factor about the convenience of evidence. When compared to forthcoming defendants like Meta, the Court is left to wonder why Apple is hiding such basic, relevant information.

The Court explained its concerns with Apple's repeated use of Mr. Rollins as an unreliable venue declarant in the Scramoge Case. *Scramoge Tech. Ltd. v. Apple Inc.*, No. 6:21-CV-00579-ADA, 2022 WL 1667561, at *2–4 (W.D. Tex. May 25, 2022) ("Scramoge Case"). At that time, Scramoge was the only plaintiff to seriously challenge Mr. Rollins's credibility. *Id.* at n.3.[1] Absent opposition, the Court would routinely take Mr. Rollins at his word, and the Court will still selectively take him at his word when he gives plain, unqualified, informed statements of fact.

To summarize the problems with Mr. Rollins, he appears to do little investigation into the facts as a 30(b)(6) witness and instead serves as a mouthpiece for attorney argument. He works as a full-time finance manager for Apple but somehow investigates more patent cases than full-time

---

[1] Apple routinely seals the declarations of Mr. Rollins, so it is difficult for the public to access them.

9

experts. *Id.* at *2–3 (collecting just a fraction of Mr. Rollins's declarations to show the unreasonable quantity). He explains complex technologies despite not being qualified as an expert. *Id.* He only vaguely describes what he does to prepare as a 30(b)(6) witness, leaving the Court to assume that he merely reviews attorney-fed information instead of conducting a reasonable investigation. *Id.* The Court has noticed the pattern of Mr. Rollins plainly declaring unqualified facts that support transfer, but when he gives facts about topics that might weigh against transfer, his statements suddenly become limited to his personal knowledge, suggesting that Mr. Rollins does not do an equally confident investigation into facts that weigh against transfer. *E.g., id.* at *3–4; *see also* Scramoge Case, ECF No. 81 at 6.

As a result of this Court's opinion in the Scramoge Case, Apple sought to supplement Mr. Rollins's declarations in several pending cases, including the present case. *See, e.g.,* ECF No. 55.

## F. Deficiencies in the evidence prevent the Court from making an informed decision in this case

In this case, the declaration and testimony by Mark Rollins is unreliable evidence because it shares the deficiencies noted above. He is evasive in deposition. ECF No. 29-2 at 43:5–46:6. Rather than performing a reasonable investigation on deposition topics, Mr. Rollins again received selectively fed information from Apple's counsel. ECF No. 26 at 6 (quoting deposition excerpts). Unlike Mr. Rope who spent many days talking to over twenty individuals, Mr. Rollins did not feel the need to undertake an investigation of similar scope and did not talk to anyone in Apple's 7,000-employee Austin campus as part of his investigation. *Id.* at 7.

Given his full-time job as a financial manager at Apple, Mr. Rollins lacks the time to properly investigate the accused products in this case. ECF No. 23-1 ¶¶ 1, 5. Mr. Rope needed to investigate at least 50 different products, including numerous makes and models of the Apple TV;

iPhones 12, 11, 8, 7, 6; iPad generations 1-5; iPad minis 2-4; and MacBook Pros and MacBook Airs from 2016 to 2020. *Id.* at 5. To find the witnesses and evidence related to these 50 products, Mr. Rollins spoke to just five people at Apple. ECF No. 23-1 ¶¶ 7, 9, 10, 13, 14. For comparison, Mr. Rope spoke with over twenty people when investigating just four Google products. Google Case, ECF No. 35-1 ¶ 5. The Court appreciates that a supplier may supply the WiFi chip(s) shared across the accused products, but it is still unlikely that just five people at Apple can reliably inform Mr. Rollins about all the witnesses and evidence related to over fifty products. ECF No. 55-4 ¶ 6.

Mr. Rollins's declaration again employs his usual crafty and qualifying language, such as "*To my knowledge*, Apple does not have any *unique* working files or documents *relevant* to this case located in the WDTX." *Id.* ¶ 6 (emphasis added). This type of language suggests that Mr. Rollins knows about redundant evidence in the WDTX or that such evidence may exist but is not known to Mr. Rollins because he failed to investigate it. Also embedded in this statement is Mr. Rollins's determination of what is "relevant to this case." *Id.* Mr. Rollins isn't even sure of what "RF" is and how it relates to WiFi. ECF No. 29-2 at 90:14-17 ("I'm not an engineer, my understanding is RF, I think, relates to radiofrequency and I'm not 100 percent sure if radiofrequency is – includes, for example, WiFi."). Mr. Rollins is wholly unqualified to be making determinations of technological relevance in a patent case where the claims cover an antenna, transceiver, and processor configured to process wireless signals in a very particular way. ECF No. 1-1 at 32:33-60.

As a result of relying on a financial manager who doesn't know the difference between RF and WiFi to perform Apple's investigation of "relevant" evidence and witnesses in this complex patent case, the party opposing Apple's transfer motion has again found evidence that contradicts the personal understanding of Mr. Rollins. Mr. Rollins's personal understanding is that "all of

Apple's United States-based engineers who participated in or are knowledgeable about the research, design, development or integration of the WiFi technology within the Accused WiFi Products work in California and none work in Texas." ECF No. 23-1. But back in October of 2021, Apple was hiring a wireless module engineer to drive RF module and component vendor meetings for its Austin, Texas location. ECF No. 29-4. It is undisputed that one of the accused products, the Mac Pro, is manufactured in Austin. ECF No. 29 at 4 (citing deposition testimony). It remains unclear how Mr. Rollins determined that Apple's 7,000 employees in Austin do not work on integrating the WiFi chip for manufacturing without even speaking anyone in Austin.

By failing to identify *any* relevant people in Texas, Mr. Rollins perpetuates the Court's concern that Apple is somehow crafting an overly narrow definitions of relevant technology or otherwise avoiding its discovery obligations. The Court has no concern if an investigation finds no one in Texas in an individual case—the concern arises only when companies with a large presence in Texas repeatedly tell the Court that its employees don't work on entire lines of products without ever explaining what those employees work on. For comparison, comparable tech companies like Meta and Google will, upon thoroughly investigating a major product, routinely find *some* people or evidence in Texas. *See, e.g.* Meta Case at ECF No. 40-11 (sealed interrogatory response identifying employees in Texas, California, and elsewhere). Even if the bulk of a team works at a company's headquarters in California, it is exceedingly likely in the modern, post-COVID era that some employee works remotely from Texas or in its neighboring states, especially in cases involving big tech companies. By diligent investigation, Meta and Google routinely find these individuals and identify them during discovery. Mr. Rollins rarely does.

Apple has a campus of about 7,000 employees in Austin. ECF No. 29 at 7. Apple would have the Court believe that none of those employees in Austin relate to this case where the accused

products cover 50 different Apple products, including numerous makes and models of the Apple TV; iPhones 12, 11, 8, 7, 6; iPad generations 1-5; iPad minis 2-4; and MacBook Pros and MacBook Airs from 2016 to 2020. Mr. Rollins did not talk any Texas Apple employees and, across the numerous cases that he provided a declaration in, has yet to explain what Apple's 7,000 employees work on in Austin. In case after case, Apple argues that no one in Austin works on whatever Apple product happens to be accused, ultimately giving the Court the cumulative, puzzling, and unbelievable impression that there are no Apple products left for these 7,000 employees to work on.

### G. The revised schedule is fairest for everyone

The Court is left with the decision of how to rule on Apple's venue motion when Apple's primary venue declaration about the "relevant" employees and evidence comes from a declarant doesn't know the difference between WiFi and RF and hasn't spoken to a single person in Texas. The Court will not allow a defendant to benefit from delaying the case schedule and extend venue discovery by using an incompetent witness. At the same time, the Court is reluctant to strike Mr. Rollins's declaration without giving Apple a chance to fix the issues. The Court wants the parties to specifically identify the relevant evidence and witnesses rather than speculate about them.

The fairest process for everyone is to proceed according to the amended schedule attached as Appendix A. By completing discovery, the parties can present the Court with the relevant evidence and witnesses instead of the parties' speculations about relevant evidence and witnesses. Otherwise, the Court would be inclined to assume that Apple is being evasive and make adverse inferences against Apple. Apple has been harmed by this Court's inaccurate determinations in the past. *See, e.g.*, *Koss Corp. v. Apple Inc.*, No. 6-20-CV-00665-ADA, 2021 WL 5316453, at *6 (W.D. Tex. Apr. 22, 2021) (inaccurately determining the relevance of a witness against Apple's

favor because the Court lacked the benefit of the parties' witness lists). Under the amended schedule, both parties will have a fair opportunity to file new replacement briefs, present new evidence, and make new arguments.

Reopening venue discovery would waste resources because at this point, reopened venue discovery is likely to substantially overlap with fact discovery. The parties will be asking each other to turn over the actual evidence and depose witnesses about their knowledge and relevance to support the transfer factor analysis.

**H. CONCLUSION**

Apple's venue declarant has provided such unreliable evidence that the Court cannot accurately rule on the motion to transfer. The Court finds it prudent to have the parties engage in additional discovery before re-briefing the motion to transfer in accordance with the appended schedule. **IT IS HEREBY ORDERED** that:

1) Full fact discovery is now open.

2) The Court's earlier Discovery and Scheduling Order, ECF No. 68 is **VACATED**.

3) Apple's Motion for Leave, ECF No. 55, is **GRANTED-IN-PART**. Apple may file any new arguments and evidence in accordance with the new schedule.

4) Apple's Motion to Stay, ECF No. 70, pending review of a vacated decision is **MOOT**.

5) All other scheduled deadlines are vacated.

6) The parties shall meet and confer to file a joint motion to enter a scheduling order for replacement briefing based on the appended schedule within two weeks.

SIGNED this 9th day of September, 2022.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

## APPENDIX A – EXEMPLARY SCHEDULE

| Deadline | Item |
|---|---|
| 8 weeks after receiving or waiving service of complaint or 3 weeks after the CMC, whichever is later. | Deadline to file a motion for inter-district transfer. After this deadline, movants must seek leave of Court and show good cause for the delay. |
| 7 days before CMC | Plaintiff serves preliminary[2] infringement contentions in the form of a chart setting forth where in the accused product(s) each element of the asserted claim(s) are found. Plaintiff shall also identify the earliest priority date (*i.e.* the earliest date of invention) for each asserted claim and produce: (1) all documents evidencing conception and reduction to practice for each claimed invention, and (2) a copy of the file history for each patent in suit. |
| 2 weeks after CMC | The Parties shall file a motion to enter an agreed Scheduling Order. If the parties cannot agree, the parties shall submit a separate Joint Motion for entry of Scheduling Order briefly setting forth their respective positions on items where they cannot agree. Absent agreement of the parties, the Plaintiff shall be responsible for the timely submission of this and other Joint filings. |
| 7 weeks after CMC | Defendant serves preliminary invalidity contentions in the form of (1) a chart setting forth where in the prior art references each element of the asserted claim(s) are found, (2) an identification of any limitations the Defendant contends are indefinite or lack written description under section 112, and (3) an identification of any claims the Defendant contends are directed to ineligible subject matter under section 101. Defendant shall also produce (1) all prior art referenced in the invalidity contentions, and (2) technical documents, including software where applicable, sufficient to show the operation of the accused product(s). |
| 9 weeks after CMC | Parties exchange claim terms for construction. |

---

[2] The parties may amend preliminary infringement contentions and preliminary invalidity contentions without leave of court so long as counsel certifies that it undertook reasonable efforts to prepare its preliminary contentions and the amendment is based on material identified after those preliminary contentions were served and should do so seasonably upon identifying any such material. Any amendment to add patent claims requires leave of court so that the Court can address any scheduling issues.

| 11 weeks after CMC | Parties exchange proposed claim constructions. |
|---|---|
| 12 weeks after CMC | Parties disclose extrinsic evidence. The parties shall disclose any extrinsic evidence, including the identity of any expert witness they may rely upon with respect to claim construction or indefiniteness. With respect to any expert identified, the parties shall identify the scope of the topics for the witness's expected testimony.[3]  With respect to items of extrinsic evidence, the parties shall identify each such item by production number or produce a copy of any such item if not previously produced. |
| 13 weeks after CMC | Deadline to meet and confer to narrow terms in dispute and exchange revised list of terms/constructions. |
| 14 weeks after CMC | Defendant files Opening claim construction brief, including any arguments that any claim terms are indefinite. |
| 17 weeks after CMC | Plaintiff files Responsive claim construction brief. |
| 19 weeks after CMC | Defendant files Reply claim construction brief. |
| 19 weeks after CMC | Parties to jointly email  the law clerks (*see* OGP at 1) to confirm their *Markman* date and to notify if any venue or jurisdictional motions remain unripe for resolution. |
| 21 weeks after CMC | Plaintiff files a Sur-Reply claim construction brief. |
| 3 business days after submission of sur-reply | Parties submit Joint Claim Construction Statement and email the law clerks an editable copy.<br><br>*See* General Issues Note #7 regarding providing copies of the briefing to the Court and the technical advisor (if appointed). |
| 22 weeks after CMC (but at least 10 days before *Markman* hearing) | Parties submit optional technical tutorials to the Court and technical advisor (if appointed). |
| 23 weeks after CMC (or as soon as practicable)[4]<br><br>---DELAYED--- | *Markman* Hearing at 9:00 a.m. This date is a placeholder and the Court may adjust this date as the *Markman* hearing approaches. |

---

[3] Any party may utilize a rebuttal expert in response to a brief where expert testimony is relied upon by the other party.
[4] All deadlines hereafter follow the original *Markman* hearing date and do not change if the Court delays the *Markman* hearing.

| | The Markman hearing is delayed until the Court resolves the transfer motion. |
|---|---|
| 1 business day after *Markman* hearing | Fact Discovery opens; deadline to serve Initial Disclosures per Rule 26(a). |
| 6 weeks after *Markman* hearing | Deadline to add parties. |
| 8 weeks after *Markman* hearing | Deadline to serve Final Infringement and Invalidity Contentions. After this date, leave of Court is required for any amendment to infringement or invalidity contentions. This deadline does not relieve the parties of their obligation to seasonably amend if new information is identified after initial contentions. |
| 16 weeks after *Markman* hearing | Deadline to amend pleadings. A motion is not required unless the amendment adds patents or patent claims. (Note: This includes amendments in response to a 12(c) motion.) |
| **26 weeks after *Markman*** | **Deadline for the first of two meet and confers to discuss significantly narrowing the number of claims asserted and prior art references at issue to triable limits (10 hours of trial per side).** |
| **29 weeks after *Markman*** | **Deadline for the second of two meet and confers to discuss significantly narrowing the number of claims asserted and prior art references at issue to triable limits. Unless the parties agree to the narrowing, they are ordered to contact the Court's law clerk to arrange a teleconference with the Court to resolve the disputed issues.** |
| 30 weeks after *Markman* hearing | Close of Fact Discovery. **Parties shall exchange preliminary exhibit lists and witness lists. The preliminary exhibit lists and witness lists may be freely amended in good faith so long as the amendments do not amount to transfer motion gamesmanship.** |
| **32 weeks after *Markman*** | **Deadline for Plaintiff's replacement transfer opposition brief (15 pages).** |
| **34 weeks after *Markman*** | **Deadline for Defendant's replacement transfer reply brief (15 pages).** |

| 36 weeks after *Markman* | Deadline for Plaintiff's replacement transfer sur-reply brief (10 pages). |
|---|---|
| **40 weeks after *Markman* hearing** | **Markman hearing delayed to this date.** |
| **42** weeks after *Markman* hearing | Opening Expert Reports. |
| **45** weeks after *Markman* hearing | Rebuttal Expert Reports. |
| **48** weeks after *Markman* hearing | Close of Expert Discovery. |
| **50** weeks after *Markman* hearing | Dispositive motion deadline and *Daubert* motion deadline. See General Issues Note #7 regarding providing copies of the briefing to the Court and the technical advisor (if appointed). |
| **52** weeks after *Markman* hearing | Serve Pretrial Disclosures (jury instructions, exhibits lists, witness lists, discovery and deposition designations). |
| **54** weeks after *Markman* hearing | Serve objections to pretrial disclosures/rebuttal disclosures. |
| **55** weeks after *Markman* hearing | Serve objections to rebuttal disclosures; file Motions *in limine.* |
| **56** weeks after *Markman* hearing | File Joint Pretrial Order and Pretrial Submissions (jury instructions, **final** exhibits lists, **final** witness lists, discovery and deposition designations); file oppositions to motions *in limine* |
| **57** weeks after *Markman* hearing | File Notice of Request for Daily Transcript or Real Time Reporting. If a daily transcript or real time reporting of court proceedings is requested for trial, the party or parties making said request shall file a notice with the Court and email the Court Reporter, Kristie Davis at kmdaviscsr@yahoo.com Deadline to meet and confer regarding remaining objections and disputes on motions *in limine*. |
| 8 weeks before trial | Parties to jointly email the Court's law clerk (*See* OGP at 1) to confirm their pretrial conference and trial dates. |

| 3 business days before Final Pretrial Conference. | File joint notice identifying remaining objections to pretrial disclosures and disputes on motions *in limine*. |
|---|---|
| **59** weeks after *Markman* hearing (or as soon as practicable) | Final Pretrial Conference. Held in person unless otherwise requested. |
| **60** weeks after *Markman* hearing (or as soon as practicable)[5] | Jury Selection/Trial. |

---

[5] If the actual trial date materially differs from the Court's default schedule, the Court will consider reasonable amendments to the case schedule post-*Markman* that are consistent with the Court's default deadlines in light of the actual trial date.

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the

Clerk of the Court for the United States Court of Appeals for the

Federal Circuit by using the appellate CM/ECF system on September

12, 2022.

A copy of the foregoing was served upon the following counsel of

record and the district court via FedEx:

> Andrea L. Fair
> WARD, SMITH & HILL, PLLC
> PO Box 1231
> Longview, TX 75606
> Tel: (903) 757-6400
> andrea@wsfirm.com
>
> Brett E. Cooper
> Seth R. Hasenour
> Drew B. Hollander
> BC Law Group, P.C.
> 200 Madison Avenue, 24th Floor
> New York, NY 10016
> Telephone: (516) 359-9668
> bcooper@b-clg.com
> shasenour@b-clg.com
> dhollander@b-clg.com
>
> Hon. Alan D Albright
> United States District Court for the Western District of Texas
> 800 Franklin Avenue, Room 301,
> Waco, Texas 76701
> Telephone: (254) 750-1501

Orrick, Herrington & Sutcliffe LLP

*/s/ Melanie L. Bostwick*
Melanie L. Bostwick
*Counsel for Petitioner*

# CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A). The motion is printed in Century Schoolbook 14-point font, and it contains 3886 words, excluding the items listed in Federal Rule of Appellate Procedure 27(a)(2)(B).

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ Melanie L. Bostwick*

Melanie L. Bostwick
*Counsel for Petitioner*