Miscellaneous Docket No. 22-164

### In The
# United States Court of Appeals for the Federal Circuit

IN RE APPLE INC.,

*Petitioner.*

On Petition for Writ of Mandamus to the
United States District Court for the
Western District of Texas
No. 6:21-cv-01071-ADA, Hon. Alan D Albright

## APPLE INC.'S REPLY IN SUPPORT OF
## PETITION FOR WRIT OF MANDAMUS

Steven D. Moore
KILPATRICK TOWNSEND &
  STOCKTON LLP
Two Embarcadero Center
Suite 1900
San Francisco, CA  94111

Mansi Shah
KILPATRICK TOWNSEND &
  STOCKTON LLP
1302 El Camino Real, Suite 175
Menlo Park, CA  94025

Alton L. Absher III
KILPATRICK TOWNSEND &
  STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC  27101

Melanie L. Bostwick
Jonas Q. Wang
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
1152 15th Street NW
Washington, DC  20005
(202) 339-8400

*Counsel for Petitioner*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................ii

INTRODUCTION ..............................................................................1

ARGUMENT ....................................................................................2

    I.    The District Court's Clear Abuse Of Discretion
Warrants Mandamus Relief..................................................2

        A.    The district court clearly abused its discretion by
violating binding precedent. ........................................2

        B.    Scramoge's criticisms of Apple's conduct are
unfounded.....................................................................5

    II.    Apple Has No Other Adequate Means To Obtain Relief......15

    III.    Mandamus Is Appropriate Under The Circumstances. .......18

CONCLUSION ...............................................................................20

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Apple Inc.,*
  979 F.3d 1332 (Fed. Cir. 2020) ........................................................... 4

*Arigna Tech. Ltd. v. Samsung Elecs. Co.,*
  No. 6:21-CV-00943-ADA, 2022 WL 2835862 (W.D. Tex.
  July 20, 2022) ................................................................................... 13

*Cheney v. U.S. Dist. Ct.,*
  542 U.S. 367 (2004) .................................................................... 16, 17

*In re Google Inc.,*
  No. 2015-138, 2015 WL 5294800 (Fed. Cir. July 16, 2015) ..... 4, 15, 20

*In re Horseshoe Ent.,*
  337 F.3d 429 (5th Cir. 2003) ............................................................... 5

*In re Netflix, Inc.,*
  No. 2021-190, 2021 WL 4944826 (Fed. Cir. Oct. 25, 2021) .................. 4

*In re Nintendo Co.,*
  544 F. App'x 934 (Fed. Cir. 2013) ........................................................ 4

*In re Pruett,*
  133 F.3d 275 (4th Cir. 1997) .............................................................. 17

*In re SK hynix Inc.,*
  835 F. App'x 600 (Fed. Cir. 2021) ................................................. 4, 19

*In re TracFone Wireless, Inc.,*
  848 F. App'x 899 (Fed. Cir. 2021) ............................................... 15, 20

*In re TS Tech USA Corp.,*
  551 F.3d 1315 (Fed. Cir. 2008) .......................................................... 17

*In re Volkswagen of Am., Inc.,*
  545 F.3d 304 (5th Cir. 2008) ....................................................... 15, 19

## Statutes

28 U.S.C. § 1404(a) ........................................................ 5, 11, 18

## Rules and Regulations

Fed. R. Civ. P. 30(b)(6) .............................................................. 8

## Other Authorities

Apple Motion for Intra-District Transfer, *Identity Sec. LLC
    v. Apple Inc.*, No. 6:21-cv-00460-ADA, Dkt. 27 (W.D. Tex.
    Sept. 10, 2021) ..................................................................... 11

Apple Motion for Intra-District Transfer, *RFCyber Corp. v.
    Apple Inc.*, No. 6:21-cv-00916-ADA-DTG, Dkt. 93  (W.D.
    Tex. Aug. 16, 2022) .............................................................. 11

Apple Motion for Intra-District Transfer, *SpaceTime3D, Inc.
    v. Apple Inc.*, No. 6:22-cv-00149-ADA, Dkt. 34 (W.D. Tex.
    July 18, 2022)........................................................................ 11

# INTRODUCTION

Apple's petition demonstrated that the district court here committed the same clear abuse of discretion that this Court has previously cured through the exercise of its mandamus authority. Indeed, unlike in the Court's prior cases, the district court here did not merely neglect a fully briefed transfer motion. It affirmatively ordered the parties to spend another eight months completing fact discovery on the merits, taking numerous other substantive steps to prepare this case for trial, and then re-briefing the transfer issue, at which point—nearly a full year after Apple's transfer motion was filed—the district court will consider transfer.

Scramoge's opposition confirms that neither party asked for or wanted this result. And Scramoge offers no defense of the district court's order; instead, it misplaces blame on Apple. Scramoge first blames Apple for the court-ordered delay, because Apple's transfer reply cited evidence that was not cited in the transfer motion. Scramoge cannot dispute, however, that this information was directly responsive to Scramoge's transfer opposition. Scramoge also criticizes Apple for not asking Scramoge to jointly move the district court to retract its

scheduling order before seeking this Court's mandamus intervention. But the district court already disregarded the parties' positions when it issued the order on its own initiative, and Scramoge does not have the authority to change the district court's order. Finally, Scramoge's complaints about Apple's transfer declarant are baseless. What's more, they reveal what Scramoge really wants: the ability to make unfounded allegations in opposing transfer, and to prevent Apple from demonstrating that those assertions are untrue.

Nothing in Scramoge's opposition undermines Apple's showing that the district court committed a clear abuse of discretion that is remediable solely, and properly, through a writ of mandamus. The Court should grant Apple's petition.

## ARGUMENT

## I.    The District Court's Clear Abuse Of Discretion Warrants Mandamus Relief.

### A.    The district court clearly abused its discretion by violating binding precedent.

Apple's petition demonstrated that the district court clearly abused its discretion—giving Apple a clear and indisputable right to mandamus relief. Pet. 17-29. The district court's scheduling order ensures that fact discovery will be complete, many other substantive

steps will be taken in the litigation, and nearly a year will have passed since the filing of Apple's transfer motion before that motion will be fully re-briefed and the district court will resolve it.  Pet. 21-23. Scramoge does not dispute Apple's showing.

Scramoge insists that there was no abuse of discretion because the order concerned "mundane discovery issues" and "housekeeping matters."  Opp. 1.  But this mischaracterizes the nature of the district court's scheduling order.  The order ensures that the district court will oversee several substantive stages of the case, including all of fact discovery, before it will consider Apple's transfer motion—and defers that consideration a full eleven months after Apple moved for transfer. Taking the opposite tack, Scramoge also asserts that "[t]his is an unusual case that does not hew closely to precedent."  Opp. 9.  But the unusual nature of the district court's order cuts against Scramoge's position.  As Apple demonstrated, precedent requires a district court to resolve a transfer motion without lengthy delays and before proceeding with precisely the kind of substantive tasks that the district court's order here contemplates.  *See* Pet. 17-21.  Nor was the district court's discovery and scheduling order in this case a one-off.  In the span of a

week, the district court entered nearly identical orders in at least three
other patent infringement cases (two against Apple) with pending
motions to transfer venue.  *See* Pet. 16 (collecting cases).  Each of these
orders requires the parties to complete fact discovery and additional
briefing, again over the course of several months, before the district
court will consider whether to transfer venue.

Scramoge suggests that the scheduling order is permissible
because it ensures that the *Markman* hearing will not take place, and a
claim-construction order will not issue, until transfer is resolved.  *See*
Opp. 10.  But here too, Apple already explained that this is incorrect.
This Court has repeatedly identified the completion of fact discovery
and supervision of discovery disputes, for example, as tasks that should
take place after transfer is resolved.  *See* Pet. 17-23; *In re Netflix, Inc.*,
No. 2021-190, 2021 WL 4944826, at *1 (Fed. Cir. Oct. 25, 2021); *In re
SK hynix Inc.*, 835 F. App'x 600, 600-01 (Fed. Cir. 2021); *In re Apple
Inc.*, 979 F.3d 1332, 1338 (Fed. Cir. 2020); *In re Google Inc.*, No. 2015-
138, 2015 WL 5294800, at *1 (Fed. Cir. July 16, 2015); *In re Nintendo
Co.*, 544 F. App'x 934, 941 (Fed. Cir. 2013).

Scramoge does not acknowledge these statements or attempt to reconcile them with the scheduling order here. And Scramoge's apparent defense of the district court's order would lead to absurd results. If *Markman* were the only substantive step that mattered, a district court could simply delay the *Markman* hearing (and the resolution of transfer) as long as it wished, saving it for the literal eve of trial. This would obviously defeat the purpose of § 1404(a), which is to prevent parties from having to litigate in inconvenient forums. Deferring transfer decisions until the final stages of litigation, as the district court did here, all but guarantees the inconvenience that § 1404(a) aims to avoid. That is why the Fifth Circuit requires district courts to give "top priority" to transfer motions and avoid lengthy delays in resolving them. *In re Horseshoe Ent.*, 337 F.3d 429, 433 (5th Cir. 2003). Scramoge does not even cite *Horseshoe*. It certainly does not explain how waiting nearly a year to decide a transfer motion is affording the issue "top priority." *See* Pet. 19-23.

### B.   Scramoge's criticisms of Apple's conduct are unfounded.

Instead of addressing the clear legal defect in the scheduling order, Scramoge focuses its efforts on blaming Apple for the district

court's decision. Like the district court, Scramoge attributes the change in schedule to Apple's transfer reply brief and purported insufficiencies in Apple's venue discovery responses. Opp. 1-5. But as Apple explained, "the reply declarations largely supplied the same information already in Scramoge's possession," and any new information was "directly responsive to the unfounded speculations Scramoge raised for the first time in its response, instead of during the venue discovery process." Pet. 40-41; *see also* Pet. 11-13.

Scramoge doesn't show otherwise. It states that Apple's reply contained "new assertions," citing its own motion to strike. Opp. 5 (citing Appx131-132). But Scramoge ignores the detailed chart provided in Apple's response to that motion, demonstrating how each piece of evidence was responsive to a contention first raised by Scramoge. Appx164-166. In the parties' meet-and-confer exchanges, in its district court briefing, and in its brief to this Court, Scramoge has yet to identify a single piece of evidence Apple provided in its reply that did not directly respond to an argument Scramoge introduced for the first time in its opposition. That is because it cannot.

Instead, Scramoge persists in the approach that it concedes was its sole venue strategy in this case: attacking the credibility of Mark Rollins, an Apple employee who provided a declaration on behalf of the corporation to support Apple's transfer motion but whom Scramoge has twice declined to depose. As Scramoge notes, in employing the strategy of seeking adverse inferences, it was "following the guidance of the District Court." Opp. 4. The "guidance" Scramoge refers to is the district court's prior "credibility" determination in the *Scramoge I* order. *Id.* But as Apple has demonstrated, the district court has yet to identify any misstatements or other credibility deficiencies in Mr. Rollins's testimony. Pet. 9 (citing other briefing). Nonetheless, the district court has described its purpose for criticizing Mr. Rollins on the public record "so that other courts and administrative agencies can similarly discount [his] credibility." Appx236 n.3. And the district court has invited plaintiffs to take Scramoge's approach, including by expressing its "inclin[ation]" to "make adverse inferences against Apple." Dkt. 8, Order at 13; *see also* Appx230-236.

Respectfully, the district court has no valid basis to discount the credibility or competence of Mr. Rollins, a witness whom the district

court has never examined or seen testify and whose declarations are frequently—as in this case—not even tested by the plaintiffs who attack them yet decline to depose Mr. Rollins or any other Apple employee. The district court has criticized Mr. Rollins for doing the exact things that Rule 30(b)(6) witnesses are required to do: work with the corporation's attorneys to gather relevant information from knowledgeable individuals and corporate records, and present that information on behalf of the company. *See, e.g.*, Appx234-235 (criticizing Mr. Rollins for presenting "information … a financial manager would typically not know," "us[ing] the Bluebook format to cite documents," and being an "attorney-prepared" witness). Of course, the district court has recently confirmed that it has no objection to this practice in general; it objects only to Mr. Rollins's specific declarations. Dkt. 8, Order at 7-9.

But the district court's stated reasons for its objections are not well-founded. The district court asserts, for example, that Mr. Rollins "explains complex technologies despite not being qualified as an expert." Dkt. 8, Order at 10. Mr. Rollins does no such thing. He is offering testimony on behalf of Apple—which does understand its own

technology—and he relays information provided by the specific subject-matter experts in the technology the plaintiff is accusing in each case. In his declaration here, for example, Mr. Rollins explained his understanding, from Scramoge's complaint, that Scramoge was accusing "wireless inductive charging." Appx76. Mr. Rollins then relayed the information he obtained from (1) a Hardware Development Manager in Apple's Wireless Charging Technology Group; (2) a Senior Manager of Hardware Development in the same group; (3) an iPhone Hardware System Integration Manager; (4) an Austin-based Apple employee who works on wireless technology unrelated to the accused features; (5) an Engineering Project Manager, also based in Austin and first identified by Scramoge in *Scramoge Technology Ltd. v. Apple Inc.*, No. 6:21-cv-00579-ADA (W.D. Tex. June 7, 2021) (*Scramoge I*), who does not work on the accused features; (6) a Line Manager in the Apple Watch Product Marketing Group; and (7) a Legal Counsel knowledgeable about intellectual property licensing. Appx77-81.

Neither Scramoge nor the district court has identified any inaccurate information provided in Mr. Rollins's declarations in this or any other case. And indeed, the reply evidence that Scramoge

challenges here includes some of these same individuals confirming that Mr. Rollins's statements were correct and that Scramoge's attempts to contradict his declaration were incorrect. *See* Appx118-120; Appx124-126.

The district court's other charges against Mr. Rollins are similarly unfounded. The district court openly speculates, for example, that Mr. Rollins "appears to do little investigation," that he "serves as a mouthpiece for attorney argument," and that certain "evidence may exist but is not known to Mr. Rollins because he failed to investigate it." Dkt. 8, Order at 10, 12. Again, the district court is making these statements about a witness who has not been subject to any cross-examination, through deposition or otherwise, and whose statements have not been disproven by any evidence.

The district court appears to believe that they must be inaccurate because Mr. Rollins's investigations often do not identify any potential witnesses at Apple's Austin campuses. Dkt. 8, Order at 13 ("Across the numerous cases that he provided a declaration in, [Mr. Rollins] has yet to explain what Apple's thousands of employees work on in Austin."). But when Austin-based employees are relevant, Mr. Rollins identifies

10

them in his investigation—and when the § 1404(a) factors support it, Apple seeks only intradistrict transfer to Austin, not interdistrict transfer to California. *See, e.g.*, Dkt. 93, *RFCyber Corp. v. Apple Inc.*, No. 6:21-cv-00916-ADA-DTG (W.D. Tex. Aug. 16, 2022); Dkt. 34, *SpaceTime3D, Inc. v. Apple Inc.*, No. 6:22-cv-00149-ADA (W.D. Tex. July 18, 2022); Dkt. 27, *Identity Sec. LLC v. Apple Inc.*, No. 6:21-cv-00460-ADA (W.D. Tex. Sept. 10, 2021). The fact that the overwhelming amount of technological and financial work on Apple products accused of patent infringement is conducted at Apple's California headquarters is not a reason to discount the credibility of Mr. Rollins or declare him "incompetent," as the district court has done. Dkt. 8, Order at 13. Nor is Mr. Rollins's credibility undermined by the fact that plaintiffs seeking to maintain venue in the Western District of Texas frequently scour the Internet to attempt to link their cases to Apple's Austin operations. *See* Dkt. 8, Order at 10 ("When Mr. Rollins mentions people in Austin, those people are frequently first identified by opposing parties."). In this case, as in others, Apple has demonstrated in reply that these individuals are not in fact connected to the accused technology. *See* Appx115; Appx117.

In sum, the district court has no basis to discount the credibility or competence of Mr. Rollins. It certainly has no basis to broadly declare him to be an "unreliable" witness who "lacks credibility" and submits "misleading" and "crafty" declarations. Dkt. 8, Order at 8-11; Appx230-236.

In all events, it is not Apple's fault that Scramoge chose to rely on requests for "adverse inferences" rather than testing Apple's venue evidence through discovery. Opp. 4. Indeed, it is Scramoge, not Apple, who "chose to disengage from the venue discovery process" by making no effort to probe the information Apple supplied during venue discovery. *Contra* Opp. 10.[1] For example, despite now complaining about Apple's interrogatory responses and accusing Apple of "stonewalling," Opp. 1-2, Scramoge did not seek to compel more detailed answers during discovery, *see* Dkt. 8 at 1-2. Scramoge first complained

---

[1] Scramoge also faults Apple for not "serv[ing] any venue discovery requests on Scramoge," Opp. 3, but it is not clear why Apple would have needed to do so, as Scramoge's venue allegations were based exclusively on *Apple's* purported connections to the Western District of Texas, *see* Appx17-18. Scramoge is an Irish patent-holding company headquartered in Dublin, with no ties to the Western District of Texas. Pet. 5; Appx16-17, Appx52; Appx58. And despite ten weeks of venue discovery, Scramoge has otherwise identified no sources of proof in Texas. *See* Pet. 34.

about Apple's responses in its transfer opposition, asking the district court to "disregard" Apple's evidence.  Appx91.  And though Scramoge now claims its decision to file a motion to strike "was based in part on the lack of time," Opp. 12, Scramoge did not ask for more time to test the facts contained in Apple's reply declarations, and indeed its motion to strike resulted in further delay, Pet. 40; *infra* 15-16.

Scramoge also chose to seek adverse inferences against Mr. Rollins instead of testing his assertions through a deposition, which Scramoge never requested in this case.  Pet. 9.  Scramoge defends that decision by citing events in a different case, Opp. 3 (citing *Arigna Tech. Ltd. v. Samsung Elecs. Co.*, No. 6:21-CV-00943-ADA, 2022 WL 2835862, at *1 (W.D. Tex. July 20, 2022)), but that explanation does not withstand scrutiny.  In *Arigna*, Apple postponed the deposition of Mr. Rollins pending a mutual resolution of the parties' ongoing discovery disputes; Apple did not "cancel[]" this deposition, Opp. 3, and it was Arigna (not Apple) that sought to extend the venue discovery deadline. Moreover, there was ample time between the events in the *Arigna* case (May 27) and the close of venue discovery here (August 3) for Scramoge to notice and conduct a deposition of Mr. Rollins if it chose.  It simply

never asked. Scramoge's attempt to blame Apple also rings hollow in light of the fact that, well before the events in *Arigna*, Scramoge also declined to depose Mr. Rollins in the parties' related litigation, *Scramoge I*. *See* Appx257-258; Appx270. In fact, in that case, Scramoge requested but then withdrew its request to depose Mr. Rollins before venue discovery closed in March 2022; Scramoge certainly cannot attribute its deposition strategy to events that took place more than two months later.

Given Scramoge's conduct, the inescapable conclusion is that its actual goal was to disengage from the venue discovery process; make unfounded allegations in opposing transfer; and object to any effort by Apple to disprove those allegations with evidence. Scramoge's strategy utterly defeats the purpose of the "orderly, efficient" approach to transfer that it purports to defend. Opp. 1.

In short, Scramoge's attempts to blame Apple for the district court's order fall flat, and nothing in its response justifies the district court's sua sponte revision of the parties' venue discovery and transfer briefing schedule. Far from brokering a "compromise," Opp. 11, the district court's order reflected a drastic revision of the transfer motion

14

schedule that neither party requested.  The district court's order is a

clear abuse of discretion.  Scramoge offers no reason to withhold

mandamus relief for that error.

## II.    Apple Has No Other Adequate Means To Obtain Relief.

Apple demonstrated that it has no adequate alternative to

mandamus.  Without this Court's intervention, Apple will suffer the

"unnecessary inconvenience and expense" of litigating in an

inconvenient forum for another eight months.  Pet. 29-31 (quoting

*Google*, 2015 WL 5294800, at *1).  A direct appeal after final judgment

cannot remedy that harm, and an interlocutory appeal is not available

for transfer matters.  *See* Pet. 29-31; *In re Volkswagen of Am., Inc.*, 545

F.3d 304, 318-19 (5th Cir. 2008) (en banc).  And this Court has granted

mandamus relief to address similar delays in resolving transfer

motions.  *E.g.*, *In re TracFone Wireless, Inc.*, 848 F. App'x 899, 900-01

(Fed. Cir. 2021).

Scramoge does not contest any of that precedent.  Instead, it

argues that Apple has "an alternate path for relief": asking Scramoge to

agree that the district court should "promptly decide[]" the transfer

motion.  Opp. 11-12.  Though Scramoge now states its "non-opposition

to the District Court's prompt ruling on the transfer motion," Opp. 12,
Scramoge fails to acknowledge that it caused the delay below—which it
could have avoided by withdrawing its baseless motion to strike.  In any
event, Scramoge's novel theory for "alternate" relief has two fatal flaws.

First, a writ of mandamus is directed to a district court, not the
opposing party.  *See Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380 (2004).
And the district court chose this schedule despite the fact that no party
asked for it.  Pet. 14.  Scramoge cites no authority for the proposition
that the opposing party's agreement to a result over which it has no
control provides an "adequate" alternative to mandamus.  Moreover,
just last week the district court in this very case issued a second order
recommitting to its position that the parties must complete "[f]ull fact
discovery … to provide the Court with the best evidence for ruling on a
motion to transfer."  *See* Dkt. 8, Order at 4.  There is no reason to
believe that Scramoge's non-opposition to a prompt transfer ruling
would change the district court's mind.

Second, Scramoge misunderstands the "no other adequate means"
prong as requiring that the mandamus petitioner lacks even the
theoretical "possibility of relief" through any other channel.  Opp. 12.

But that is not the law. A party need not "exhaust every possible avenue of relief at the district court before seeking mandamus relief." *In re TS Tech USA Corp.*, 551 F.3d 1315, 1322 (Fed. Cir. 2008) (collecting cases). Thus, for example, a party can obtain mandamus relief without first seeking reconsideration. *See id.*; *see also In re Pruett*, 133 F.3d 275, 280 (4th Cir. 1997) (granting mandamus where the party "contest[ing] the ex parte discovery orders" could have, among other things, sought reconsideration or refused to comply with the orders and then appealed any resulting contempt order).

In short, this second prong of the mandamus standard is satisfied as long as "the writ will not be used as a substitute for the regular appeals process." *Cheney*, 542 U.S. at 380-81. Here, Scramoge does not even attempt to show that Apple's petition substitutes for a regular appeal. And Scramoge's suggestions of futile efforts that Apple might pursue cannot overcome Apple's showing that mandamus provides the only adequate way for Apple to avoid eight more months of litigating the merits of this case in an inconvenient venue. Pet. 29-31.

## III.  Mandamus Is Appropriate Under The Circumstances.

Scramoge largely does not respond to Apple's showing that mandamus is particularly appropriate in the circumstances of this case. Indeed, Scramoge agrees with Apple that transfer should be resolved promptly, and not under the extended scheduling order that the district court issued sua sponte.  Opp. 12.  As Apple explained, there is "particularly no reason" to enforce that schedule "when no party has asked for that result."  Pet. 40.

It is also particularly unwarranted to delay transfer and force the parties to continue litigating in a forum that Apple has shown to be clearly inconvenient.  Apple's petition demonstrated that the § 1404(a) factors overwhelmingly favor transfer, including because the district court already transferred *Scramoge I*.  Pet. 32-38.  Scramoge responds in a sentence, arguing that its transfer response demonstrated that all non-neutral § 1404(a) factors "pointed towards" the Western District of Texas.  Opp. 4.  Yet Scramoge provides no rebuttal to Apple's analysis demonstrating that Scramoge's arguments against transfer are meritless—particularly since *Scramoge I* has already been transferred. *See* Pet. 32-38.

Instead, Scramoge argues that, if this Court grants Apple's mandamus petition and directs the district court to promptly decide the transfer motion, this Court should "also provide for the relief sought in Scramoge's motion to strike Apple's improper reply evidence and the adverse inferences requested in Scramoge's transfer response." Opp. 10. Scramoge, however, fails to demonstrate any basis for this drive-by request for its own mandamus relief. As explained, Apple did not supply improper or untimely evidence. *See supra* 6. That Scramoge did not get its preferred relief from the district court does not entitle it to mandamus relief from this Court without making the requisite showing. *See Volkswagen*, 545 F.3d at 311 (mandamus factors).

Regardless, the district court should resolve the merits of transfer promptly, as precedent requires and as both parties prefer. And it should do so while staying further progress on the substantive merits of the litigation, as Apple requested. Scramoge complains that Apple's petition "fails to explain why a stay would be warranted." Opp. 9. But that is the relief this Court has routinely ordered in similar circumstances, to prevent a district court from continuing to proceed on the merits of a case before resolving a fully briefed transfer motion. *See*

*TracFone*, 848 F. App'x at 901 (ordering the district court "to issue its ruling on the motion to transfer within 30 days" and further ordering that "all proceedings in the case are stayed until further notice"); *SK hynix*, 835 F. App'x at 601 ("the district court must stay all proceedings concerning the substantive issues in the case until such time that it has issued a ruling on the transfer motion capable of providing meaningful appellate review"); *Google*, 2015 WL 5294800, at *2 (ordering district court to issue a transfer ruling within 30 days "and stay all other proceedings pending final resolution of the transfer motion"). Scramoge offers no reason why a similar order would be inappropriate here.

## CONCLUSION

The Court should grant Apple's petition.

September 19, 2022

Respectfully submitted,

/s/ Melanie L. Bostwick

Steven D. Moore
KILPATRICK TOWNSEND &
    STOCKTON LLP
Two Embarcadero Center
Suite 1900
San Francisco, CA  94111

Mansi Shah
KILPATRICK TOWNSEND &
    STOCKTON LLP
1302 El Camino Real, Suite 175
Menlo Park, CA  94025

Alton L. Absher III
KILPATRICK TOWNSEND &
    STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC  27101

Melanie L. Bostwick
Jonas Q. Wang
ORRICK, HERRINGTON &
    SUTCLIFFE LLP
1152 15th Street NW
Washington, DC  20005
(202) 339-8400

*Counsel for Petitioner*

# CERTIFICATE OF COMPLIANCE

The reply complies with the type-volume limitation of Fed. Cir. R. 21(b) because this reply contains 3844 words.

This reply complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this reply has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in Century Schoolbook 14-point font.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ Melanie L. Bostwick*
Melanie L. Bostwick
*Counsel for Petitioner*